# Exhibit 13

Declaration of Eric Rassbach

# UCLA
# Discrimination Prevention Office
# And
# Title IX Office

## Procedures For Handling Allegations Of Discrimination, Harassment, Or Retaliation

Version 1.0
*released* 2016.12.06



TABLE OF CONTENTS

I. PURPOSE ................................................................................................1
II. SCOPE ....................................................................................................1
III. PROHIBITED CONDUCT ........................................................................ 4
IV. APPLICABILITY ..................................................................................... 6
V. ACADEMIC FREEDOM AND FREEDOM OF SPEECH........................... 6
VI. DEFINITIONS ......................................................................................... 6
VII. REPORTING PROHIBITED CONDUCT....................................................7
   A. PROCESS FOR REPORTING ..................................................................... 7
   B. RESPONSIBLE EMPLOYEE REPORTING.................................................... 8
   C. SPECIAL PROTECTION OF THOSE REPORTING SEXUAL VIOLENCE OR SEXUAL HARASSMENT ........................................................................................ 8
   D. CONFIDENTIALITY ................................................................................ 9
VIII. INITIAL RESPONSE AND ASSESSMENT .......................................... 9
   A. REQUIRED NOTIFICATIONS.................................................................... 9
   B. INITIAL ASSESSMENT ..........................................................................10
   C. INTERIM MEASURES ...........................................................................10
   D. CLOSING A MATTER WITHOUT FORMAL INVESTIGATION........................10
IX. OVERVIEW OF RESOLUTION PROCESSES ........................................ 11
   A. ALTERNATIVE RESOLUTION ................................................................ 11
   B. FORMAL INVESTIGATION.....................................................................12
      1. SELECTION OF INVESTIGATOR.........................................................12
      2. NOTICE OF INVESTIGATION ............................................................12
      3. LENGTH OF INVESTIGATION............................................................12
      4. INVESTIGATION PROCEDURES ........................................................13
         a. Interviews ................................................................................ 13
         b. Participation............................................................................. 13
         c. Documents ............................................................................... 13
         d. Prior or Subsequent Conduct .................................................. 13
         e. Relevance................................................................................. 13
      5. INVESTIGATION REPORT .................................................................14
      6. NOTICE AND USE OF THE INVESTIGATION REPORT ..............................14

# UCLA
## DISCRIMINATION PREVENTION OFFICE and TITLE IX OFFICE

## PROCEDURES FOR HANDLING ALLEGATIONS OF DISCRIMINATION, HARASSMENT, OR RETALIATION

## I. Purpose

The University of California, Los Angeles (UCLA) is committed to creating a community where everyone can work and learn together in an equitable and inclusive environment, free of discrimination, harassment, and retaliation. Accordingly, discrimination, harassment, and retaliation are prohibited under various system-wide and campus policies, such as:

- [University of California (UC) Nondiscrimination and Affirmative Action Policy Regarding Academic and Staff Employment](#);

- [UC Policy on Sexual Violence and Sexual Harassment](#);

- [Faculty Code of Conduct (APM 015)](#);

- [University Policy on Faculty Conduct and The Administration of Discipline (APM 016)](#);

- [University Policy Regarding Academic Appointment (APM 035)](#);

- [UC Personnel Policies for Staff Members—PPSM-12: Nondiscrimination in Employment](#); and

- [Policies Applying to Campus Activities, Organizations and Students (PACAOS) 20.00](#).

On July 1, 2015, the Office of Equity, Diversity and Inclusion (EDI) was created with multiple missions, including prompt response to, and professional investigation of, reports of discrimination, harassment, and retaliation. Residing within EDI are two independent units that handle such reports: the Discrimination Prevention Office (DPO) and the Title IX (T9) Office. This document (the "Procedures") describes the procedures used by the T9 Office when responding to allegations against faculty or staff or by DPO when responding to allegations against faculty. In certain circumstances described below, the DPO will investigate allegations against a staff or student.

## II. Scope

Given UCLA's size, scope, and decentralization, the DPO and T9 Office are not the sole University entities that respond to reports of discrimination, harassment, and retaliation.

Responsibility and authority to investigate often depend on the allegation and the person or entity accused of that conduct.

### Title IX

A complaint involving gender discrimination, including sexual violence and sexual harassment, as well as discrimination or harassment based on sexual orientation and gender identity, is handled by the T9 Office, regardless of the Respondent.

### Disability

A complaint involving disability discrimination is handled by the ADA & 504 Compliance Office or Employee Disability Management Services.

### Other Prohibited Discrimination

A complaint involving *any other form of prohibited discrimination* is handled by one of the following offices depending on the Respondent:

- If the Respondent is a faculty member, the complaint is handled by the DPO.
- If the Respondent is a staff member, the complaint is generally handled by Staff Diversity & Compliance ("SD&C").
- If the Respondent is a student, the complaint is generally handled by the Dean of Students.

> *If a matter is reasonably likely to have a substantial negative impact on UCLA's campus climate on matters of equity, diversity, and inclusion, the DPO may investigate the matter, regardless of the Respondent.*

The following table summarizes which office has responsibility to respond.

| Nature of Complaint | | Office |
|---|---|---|
| Discrimination on the basis of sex, sexual orientation, gender, gender expression, gender identity, transgender status, pregnancy sexual violence, sexual harassment, some denial of family and medical care leave | Against faculty Respondents | T9 Office |
| | Against staff Respondents | T9 Office |
| | Against student Respondents | T9 Office |
| Discrimination on the basis of race, color, national origin, religion, genetic information, ancestry, marital status, age, citizenship, military and veteran status | Against faculty Respondents | DPO |
| | Against staff Respondents | (generally) SD&C |
| | Against student Respondents | (generally) Dean of Students |
| Discrimination based on disability or any disability-related complaint | | ADA & 504 Compliance Office |

Members of the UCLA community may also contact the UCLA Office of Ombuds Services for assistance in resolving conflicts, disputes, or complaints on an informal and confidential basis: (310) 825-7627.

This document outlines the procedures used by the T9 Office and DPO (collectively, "Responding Office") when the Responding Office receives a report that an individual, individuals, or entity has violated University policy by engaging in Prohibited Conduct. As described below, many such cases will lead to a Formal Investigation, in which the Responding Office investigates to determine, by a preponderance of the evidence, what occurred and whether the Respondent violated University policy. The Responding Office's findings are generally produced in an Investigation Report.

This document does *not* describe or govern the procedures used by the DPO or T9 Office for Climate Assessments. It does *not* describe or govern the procedures used by other units such as Staff Diversity & Compliance, the Dean of Students, or the ADA & 504 Compliance Office. Furthermore, within the T9 Office's ambit of gender discrimination, a separate set of procedures

apply to *student* violations of the UC-wide Sexual Violence and Sexual Harassment Policy. *See* [Student Conduct Procedures](#).

In sum, this document only applies to the following:

- T9 Office investigations of faculty and staff Respondents
- DPO investigations

These Procedures should be read in conjunction with all applicable UC policies. Any conflicts between UC policy and these Procedures should be resolved in favor of UC policy.

## III. Prohibited Conduct

All members of the University community, including students, faculty, supervisors and coworkers, as well as third parties are prohibited by University policies from engaging in the Prohibited Conduct described below. These Procedures are intended to be consistent with state and federal law and apply to prohibitions of discrimination or harassment on any other basis protected by applicable federal, state, and local laws. These Procedures are also intended to be consistent with the provisions of applicable University policies, which may define Prohibited Conduct more broadly than state and federal law.

**1. Discrimination**

It is the policy of the University not to engage in discrimination, including harassment, of any individual or group of people on the basis of or for reasons of race, color, national origin, ethnic origin, ancestry, marital status, religion, sex, gender, gender expression, gender identity, transgender status, pregnancy, physical or mental disability, medical condition (cancer-related or genetic characteristics), genetic information (including family medical history), marital status, age, sexual orientation, citizenship or service in the uniformed services. Such discrimination is prohibited by various systemwide and campus-level policies, including but not limited to: the [University of California (UC) Nondiscrimination and Affirmative Action Policy Regarding Academic and Staff Employment](#), [APM 015](#), [APM 035](#), [PPSM 12](#), and [PACAOS 20](#).

**2. Harassment**

Harassment is unwelcome conduct, on any of the bases set forth in the definition of Discrimination above, including verbal, nonverbal, or physical conduct, that explicitly or implicitly affects a person's employment or education, interferes with a person's work or educational performance, or creates an environment such that a reasonable person would find the conduct intimidating, hostile, or offensive.

**3. Sexual Harassment**

Sexual Harassment is a form of gender discrimination, defined in the [UC Policy on Sexual Violence and Sexual Harassment](#) ("SVSH Policy") as:

> unwelcome sexual advances, unwelcome requests for sexual favors, and other unwelcome verbal, nonverbal or physical conduct of a sexual nature when:

> i. Quid Pro Quo: a person's submission to such conduct is implicitly or explicitly made the basis for employment decisions, academic evaluation, grades or advancement, or other decisions affecting participation in a University program;
>
> <u>or</u>
>
> ii. Hostile Environment: such conduct is sufficiently severe or pervasive that it unreasonably denies, adversely limits, or interferes with a person's participation in or benefit from the education, employment or other programs and services of the University and creates an environment that a reasonable person would find to be intimidating or offensive.

### 4. Sexual Violence

Sexual Violence is a form of gender discrimination, which includes "Sexual Assault," "Relationship Violence," and "Stalking," as those terms are defined in the [SVSH Policy](#).

### 5. Retaliation

Retaliation includes threats, intimidation, reprisals, and/or adverse employment or educational actions against a person based on their report of discrimination or harassment under these Procedures, or participation in the investigation, report, remedial, or disciplinary processes arising from these Procedures. Retaliation against someone for reporting or participating in an investigation and related processes constitutes Prohibited Conduct.

Retaliation is prohibited in the [University of California (UC) Nondiscrimination and Affirmative Action Policy Regarding Academic and Staff Employment](#), [APM 035](#), and [PPSM 12](#) as follows:

> [The University] prohibits retaliation against any employee or person seeking employment for bringing a complaint of discrimination or harassment pursuant to this policy. This policy also prohibits retaliation against a person who assists someone with a complaint of discrimination or harassment, or participates in any manner in an investigation or resolution of a complaint of discrimination or harassment. Retaliation includes threats, intimidation, reprisals[,] and/or adverse actions related to employment.

The SVSH Policy defines prohibited retaliation as follows:

> Retaliation includes threats, intimidation, reprisals, and/or adverse employment or educational actions against a person based on their report of Prohibited Conduct or participation in the investigation, report, remedial, or disciplinary processes provided for in this *Policy*.

Individuals are encouraged to report perceived acts of Prohibited Conduct to the appropriate Responding Office. The Responding Office does not make findings on whether any laws have been violated. However, the Responding Office may use federal or state law, regulations, or guidance in interpreting University policy.

## IV. Applicability

These Procedures apply to Prohibited Conduct alleged to have occurred on University property (such as offices, grounds, and residence halls) or in connection with University activities, programs, or events. In addition, the University may apply these Procedures to conduct that occurs online or off-campus where that conduct (i) affects the University learning or working environment; or (ii) would pose a threat to the safety or security of any member(s) of the University community.

## V. Academic Freedom And Freedom Of Speech

These Procedures fully recognize and promote the University's commitment to academic freedom and freedom of speech, as described in the SVSH Policy:

> The faculty and other academic appointees, staff, and students of UCLA enjoy significant free speech protections guaranteed by the First Amendment of the United States Constitution and Article I, Section I of the California Constitution. This policy is intended to protect members of the UCLA community from discrimination, not to regulate protected speech. This policy shall be implemented in a manner that recognizes the importance of rights to freedom of speech and expression.
>
> The University also has a compelling interest in free inquiry and the collective search for knowledge and thus recognizes principles of academic freedom as a special area of protected speech. Consistent with these principles, no provision of this policy shall be interpreted to prohibit conduct that is legitimately related to the course content, teaching methods, scholarship, or public commentary of an individual faculty member or the educational, political, artistic, or literary expression of students in classrooms and public forums.
>
> However, freedom of speech and academic freedom are not limitless and do not protect speech or expressive conduct that violates federal or state anti-discrimination laws.

## VI. Definitions

1. **Advisor**

An "Advisor" is any individual accompanying a Complainant or Respondent throughout the investigation and resolution process. The Advisor may be any person, including an advocate, attorney, friend, or relative who is not a party or witness or potential witness involved in the investigation and resolution process. Upon request, the Complainant or Respondent may be accompanied by an Advisor at any meeting or proceeding that is part of the investigation and resolution process. While the Advisor may provide support, guidance, and advice to the

Complainant or Respondent whom the Advisor is accompanying, the Advisor may not speak on behalf of a Complainant or Respondent, or otherwise actively participate in, or disrupt any meetings or proceeding. If the Advisor is disruptive, the investigator may exercise his or her discretion to ask the Advisor to leave or to terminate the interview or meeting because of the disruption.

### 2. Complainant

A "Complainant" is any person—including UCLA students, staff, faculty members, or individuals outside UCLA—who files a report of Prohibited Conduct, except that a person who files a report in the capacity of a Responsible Employee under the SVSH Policy shall not be deemed a Complainant. The University may also consider the alleged victim of Prohibited Conduct to be a Complainant whether or not that person makes a report or participates in the investigation and resolution process outlined in these Procedures. A Complainant who is not the alleged victim of Prohibited Conduct shall also be known as a third-party Complainant.

### 3. Days

"Days" means University business days. It does not include Saturdays, Sundays, or days on which the campus is closed.

### 4. Preponderance of the Evidence

"Preponderance of the evidence" is the standard applied in all stages of investigations under these Procedures, including the determination of whether Prohibited Conduct occurred. This means that the totality of the evidence demonstrates that it is *more likely than not* that the alleged conduct occurred in violation of the applicable policy.

### 5. Respondent

A "Respondent" is the person or entity accused of Prohibited Conduct.

# VII. REPORTING PROHIBITED CONDUCT

## A. PROCESS FOR REPORTING

The University encourages anyone who experiences or becomes aware of Prohibited Conduct to report the matter immediately to the University.

For matters involving Prohibited Conduct based on sex, sexual orientation, gender, gender expression, gender identity, transgender status, pregnancy, including sexual harassment and sexual violence, contact the Title IX Coordinator in the T9 Office.

- 2241 Murphy Hall (regular office hours);
- titleix@conet.ucla.edu (email);
- (310) 206-3417 (telephone).

For matters involving Prohibited Conduct based on race, color, national origin, religion, genetic information, ancestry, marital status, age, citizenship, or military and veteran status, contact the DPO Coordinator, in the DPO.

- 2255 Murphy Hall (regular office hours);
- [dpo@conet.ucla.edu](mailto:dpo@conet.ucla.edu) (email);
- (310) 794-1232 (telephone).

In accordance with the [University of California (UC) Nondiscrimination and Affirmative Action Policy Regarding Academic and Staff Employment](#) and [SVSH Policy](#), supervisors are instructed to inform the DPO or T9 Office of any allegations of Prohibited Conduct. Employees are not required to report complaints to their direct supervisor; instead, they can directly contact the Offices listed above.

## B. Responsible Employee Reporting

Although all members of the community are encouraged to report Prohibited Conduct, there are specific obligations placed on "responsible employees" regarding sexual violence and sexual harassment. As provided in the SVSH Policy, any University employee who is not officially designated as a Confidential Resource (as specifically defined by the SVSH or other University Policy) and who receives, in the course of employment, information that a *student* (undergraduate, graduate, or professional) has suffered sexual violence, sexual harassment, or other prohibited behavior under the SVSH Policy, shall promptly notify the Title IX Coordinator or designee. This requirement applies to Resident Assistants, Graduate Teaching Assistants, and all other student employees, when disclosures are made to any of them in their capacities as employees.

In addition, the following who, in the course of employment, receive a report of Prohibited Conduct under the SVSH Policy from *any other person* affiliated with the University (not only students) shall notify the Title IX Officer or designee:

- Campus Police
- Human Resource Administrators, Academic Personnel, and Title IX Professionals
- Managers and Supervisors including Deans, Department Chairs, and Directors of Organized Research Units (ORU)
- Faculty members.

## C. Special Protection Of Those Reporting Sexual Violence Or Sexual Harassment

To encourage reporting of sexual violence or sexual harassment, neither a Complainant nor witness of sexual violence will generally be subject to disciplinary sanctions for a violation of University conduct policy at or near the time of the incident, unless the violation placed the health or safety of another person at risk, involved academic dishonesty, or was otherwise egregious. For

example, a person who witnessed or experienced sexual violence while illegally consuming alcohol or other drugs will not be subject to discipline for the alcohol or drug consumption that is discovered as a result of reporting the sexual violence.

### D. Confidentiality

The University will protect the privacy of individuals involved in a report of Prohibited Conduct to the extent required by law and by University policy and procedures. The University may ask witnesses or parties to maintain confidentiality of a pending investigation to protect witnesses or parties from retaliation, to prevent witnesses from colluding, to prevent the destruction of evidence, and to prevent the intentional withholding of evidence.

Although complete confidentiality can never be guaranteed, the Responding Office will share information as reasonably necessary to conduct a fair and thorough investigation or to resolve a complaint using Alternative Resolution. An investigation may involve interviews with many people to inquire if they have relevant evidence, and extremely sensitive information may be gathered. While such information is considered confidential, University policy or the law may require the disclosure of certain information during or following an investigation. For example, the University may be required to share information that is disclosed during an investigation to comply with a judicial order or subpoena.

Finally, the results of an investigation, including the Investigation Report itself, will be shared with University decision makers empowered to provide relief or initiate any disciplinary process. In addition, a redacted copy of the Investigation Report will be made available to both Complainant and Respondent upon request; however, in the case of third-party Complainants, the information provided may be limited to information relevant to and/or affecting the third-party Complainant. Although each party will be cautioned strongly about the Investigation Report's sensitivity and potential civil liability that could arise from disclosing the Report or its contents more broadly, the Office cannot and does not demand that the parties keep the Report strictly confidential. That said, the Responding Office informs the parties that any sharing of the redacted Report or its contents should not constitute or contribute to retaliation, which remains Prohibited Conduct.

## VIII. Initial Response And Assessment

### A. Required Notifications

Complainants shall be informed about:

- these Procedures;
- the limited confidentiality of Investigation Reports;
- admonitions against retaliation;
- resources available to the campus community and, if applicable, other options for reporting (e.g., police);

- the range of possible outcomes of the report, including health and safety measures, remedies, and disciplinary actions that may be taken against the Respondent, and information about the procedures leading to such outcomes; and
- applicable procedures for institutional disciplinary action.

If the report of Prohibited Conduct results in a "Formal Investigation," after the conclusion of the investigation, the Complainant and Respondent will be simultaneously informed in writing of:

- the outcome of the investigation and its rationale;
- next steps and any available appeal rights and procedures, if applicable; and
- how to obtain a copy of the Investigation Report, which will be redacted as necessary.

Such information shall be provided to third-party Complainants only at the discretion of the Responding Office.

## B. Initial Assessment

Upon receipt of a report of Prohibited Conduct, the Responding Office will conduct an "Initial Assessment." The purpose of an Initial Assessment is to clarify the Complainant's allegations and to determine whether the report, on its face, plausibly alleges an act of Prohibited Conduct within the Responding Office's authority to investigate. In the course of making that Initial Assessment, the Responding Office may inform the Complainant of campus and community resources and other reporting options. In addition, the Responding Office may consider and adopt interim measures outlined below. The Initial Assessment may include sending the Complainant a complaint form, investigation fact sheet or notice letter, and/or may include an intake interview with the Complainant.

## C. Interim Measures

In the course of an Initial Assessment, the Responding Office may assess the health and safety of the Complainant and the campus community, and consider interim measures to limit the effects of the alleged Prohibited Conduct and protect the Complainant or other individuals from retaliation pending any investigation. These measures may include, but are not limited to, separating the parties, limiting contact between the parties, or making alternative working or academic arrangements. A Respondent's failure to comply with interim measures may be considered a separate violation of University policies. Whenever interim measures are implemented, the goal is to minimize the impact on the Complainant. A decision about interim measures does not, however, constitute evidence or a finding of a policy violation.

## D. Closing A Matter Without Formal Investigation

Following an Initial Assessment, if the Responding Office determines that the report or complaint does not adequately allege Prohibited Conduct, the matter may be closed without further action.

# IX. Overview Of Resolution Processes

Reports of Prohibited Conduct may be addressed through "Alternative Resolution," "Formal Investigation," or a separate employee or other grievance or complaint process.

## A. Alternative Resolution

After an Initial Assessment of the facts, but before a Formal Investigation has begun, and, if useful, in consultation with others (e.g., Chairs, Deans, Equity Advisors, Program Directors, and senior administrators), the Responding Office may initiate an Alternative Resolution. Alternative Resolution may, without limitation, include:

- mediation (except in matters of sexual violence);
- separating the parties;
- safety measures;
- referring the parties to counseling;
- a settlement agreement;
- targeted preventive educational and training programs;
- follow-up review to ensure the resolution has been implemented effectively; and
- outcome letter.

Alternative Resolution may be especially useful when a report is made anonymously or by a third-party Complainant, when a Formal Investigation is not likely to lead to a satisfactory outcome, when both parties prefer an informal process, or in matters involving less serious misconduct.

If the Complainant requests that no Formal Investigation occur, the Responding Office shall credit this request but shall also consider whether the allegations nonetheless require a Formal Investigation to mitigate potential risks to the campus community. The Responding Office may consider, among other things:

- the seriousness of the alleged Prohibited Conduct;
- the effect on the campus community;
- the University's ability to gather information, including statements of witnesses;
- whether the conduct may be part of a pattern of ongoing conduct or is likely to recur; and
- the Respondent's rights to receive information about the report.

If a Formal Investigation is conducted where the Complainant requests anonymity, the Responding Office will attempt to keep the Complainant's identity confidential and/or will inform the Complainant that such confidentiality cannot be strictly maintained. Further, the Responding Office will inform the Complainant who wishes to remain anonymous that its ability to engage in a thorough investigation as well as to provide remedies may be limited.

The Complainant and Respondent may request a Formal Investigation at any time before the Alternative Resolution is finalized, but any such request is not binding on the Responding Office.

Instead, the Responding Office makes the final decision whether to proceed with a Formal Investigation.

Both the Complainant and Respondent may be accompanied by an Advisor throughout the Alternative Resolution process.

## B. Formal Investigation

If Alternative Resolution is inappropriate or unsuccessful, the Responding Office may initiate a Formal Investigation ("Formal Investigation" or "Investigation").

### 1. Selection of Investigator

When the Responding Office decides to conduct a Formal Investigation, the Responding Office will designate an investigator to conduct a fair, thorough, and timely investigation. In designating an investigator, the Responding Office will avoid selecting a person who is so related to a Complainant, Respondent, witnesses, or the allegations such that the relationship is reasonably likely to create bias, partiality, or the appearance thereof. If the entire Responding Office has a conflict of interest, the Responding Office may outsource the case to an external investigator or another appropriate office. Outsourcing may also take place if the Responding Office determines that additional resources are necessary to complete the investigation in a timely manner.

### 2. Notice of Investigation

The Responding Office will send the Complainant and Respondent a written Notice of Investigation ("NOI"). The NOI will summarize the Complainant's allegations; potential violations of University policy; the purpose of the investigation; a statement that the "Investigation Report," when issued, will make findings regarding whether Prohibited Conduct has occurred; the procedures that will be followed; the expected timeline for the investigation; a statement that the Responding Office investigates matters using a preponderance of the evidence standard; a description of resources available to the parties; and a copy of applicable University policy.

The Responding Office will send the NOI to the Respondent and the Complainant and the administrator(s) with the authority to administer discipline or remedies. In certain circumstances, the Responding Office may add an additional Complainant or Respondent after an investigation has begun. In such cases, the Responding Office will follow the same process for NOIs for the additional parties.

For any notice issued pursuant to these Procedures, sending the notice to the electronic and/or physical mailing address most recently provided by the Complainant or Respondent to the University will give rise to a presumption that notice has been given as of the date of the electronic mailing or within three business days of a physical mailing.

### 3. Length of Investigation

A Formal Investigation typically should be completed within 60 Days of issuing the NOI. The timeline may be extended by the Responding Office for good cause. If the Investigation Report is not completed within 60 business days, the Investigator will notify the Complainant and the

Respondent with the reason for the delay and an estimated completion date. The Responding Office will regularly update both the Complainant and the Respondent of the status of the investigation.

## 4. Investigation Procedures

The investigation's purpose is to find out what happened, and to determine whether it is more likely than not that Prohibited Conduct occurred.

### a. Interviews

In the course of a Formal Investigation, the Investigator will typically interview separately the Complainant(s), the Respondent(s), and relevant witnesses so that the Investigator can determine whether the alleged conduct occurred and violated University policy.  The Investigator may consider other evidence, such as documents, as appropriate. The Complainant and Respondent will be provided an equal opportunity to meet with the Investigator, submit information, and identify witnesses who may have relevant information.

Disclosure of facts to witnesses interviewed shall be limited to what is reasonably necessary to conduct a fair and thorough investigation. Participants in an investigation may be advised that maintaining confidentiality is essential to protect the integrity of the investigation.

### b. Participation

The investigator will not draw any adverse inferences from a Complainant's or Respondent's decision not to participate or to remain silent during the investigation or resolution process.  The investigator may draw adverse inferences when a Complainant or Respondent selectively participates in the process, such as choosing to answer some but not all questions posed.  In addition, if a Complainant or Respondent is uncooperative, non-responsive, or otherwise unwilling or unable to speak to the Investigator, the Investigator may proceed with the investigation without that person's input and make determinations based on the facts available.

### c. Documents

The Responding Office may request files under the control of the administration, including personnel files. Such documents shall remain confidential unless disclosure is required by law or University policy.

### d. Prior or Subsequent Conduct

Prior or subsequent conduct of the Respondent may be considered in determining pattern, knowledge, intent, motive, or absence of mistake. For example, evidence of a pattern of Prohibited Conduct by the Respondent, either before or after the incident in question, regardless of whether there has been a prior finding of a Policy violation, may be relevant to the current investigation.

### e. Relevance

The investigator may determine the relevance of any witness or other evidence to the findings and may exclude certain types of evidence or information that is irrelevant, immaterial, or not otherwise necessary to complete the investigation.

## 5. Investigation Report

In the event that a Formal Investigation is conducted, the investigator will prepare a written report ("Investigation Report"). Before completing the Investigation Report, the Responding Office will offer the Complainant and Respondent notice of and the opportunity to respond to any material allegations or evidence against them. However, the evidence shared with a third-party Complainant may be limited to information relevant to that third-party Complainant.

An Investigation Report will ordinarily contain the following elements:

- summary of allegations;
- applicable policies and standard of review;
- description of the investigation and any relevant procedural history;
- statement of witnesses or other evidence offered that were not considered and explanation why;
- summary of parties' statements, positions, witness statements, and evidence reviewed;
- relevant factual findings, including resolving disputed facts and credibility findings;
- analysis of whether Prohibited Conduct in violation of University policies has occurred;
- determination as to whether there is enough evidence to conclude that there is a violation of University policy by a preponderance of evidence.

In certain cases, the Investigation Report will also include recommendations about corrective action; also, recommendations may be issued in a separate memorandum.

## 6. Notice and Use of the Investigation Report

The Complainant and Respondent may each request a copy of the Investigation Report. The request must be in writing; an email will suffice. The Investigation Report may be redacted by the Responding Office to protect the privacy of the parties and the witnesses and to minimize the risk of retaliation.

The Responding Office will also forward the Investigation Report to the administrator(s) responsible for supervision or discipline. The Responding Office shall request written notification of what action, if any, has been taken.

The University shall take prompt and effective steps reasonably calculated to stop Prohibited Conduct, prevent its recurrence, and, as appropriate, remedy its effects. Each Complainant will be informed of any individual remedies offered specifically to that Complainant, and other steps taken to eliminate the effects of the violation, if any. The Respondent will be notified of no contact orders affecting them, but may not be notified of other individual remedies provided to the Complainant.