MATTHEW R. COWAN (S.B. #281114)
mcowan@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

ANTON METLITSKY*
ametlitsky@omm.com
JENNIFER SOKOLER*
jsokoler@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, 17th Floor
New York, NY 10019
Telephone: (212) 326-2000
Facsimile: (211) 326-2061

MEAGHAN VERGOW*
mvergow@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants*

**Admitted pro hac vice*

[*Counsel continued on next page*]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| Frankel, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Regents of the University of California, et al., <br><br> Defendants. | Case No. 2:24-CV-4702-MCS <br><br> **DECLARATION OF RICK BRAZIEL IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Judge: Hon. Mark C. Scarsi <br> Courtroom: 7C <br> Hearing: July 29, 2024, 9:00 AM PT |

1  [*Counsel continued from previous page*]

2  Charles Robinson (S.B. #113197)*
3  Rhonda Goldstein (S.B. #250387)*
   Norman Hamill (S.B. #154272)*
4  Morae Kim (S.B. #326819)*
5  The Regents of the University of California
   1111 Franklin Street, Floor 8
6  Oakland, California 94607-5201
7  Telephone:   (510) 987-9800
   Facsimile:   (510) 987-9757
8

9  *Attorneys for Defendants*

10  **Notice of Appearance forthcoming*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

DECL. OF R. BRAZIEL ISO DEFS.' OPP. TO
PLFS.' MOT. FOR PRELIM. INJ.
CASE NO. 2:24-CV-4702-MCS

I, RICK BRAZIEL, declare as follows:

1. This declaration is submitted in support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction.

2. I am the Associate Vice Chancellor for Campus Safety at the University of California, Los Angeles ("UCLA"). I have been in the position since May 5, 2024. In this role, I am the leader of the Office of Campus Safety, and report directly to the Chancellor. The Chief of the University of California Police Department, UCLA ("UCLA UCPD") reports to and takes direction from me. I have personal knowledge of the matters stated herein, and, if called upon, I could and would competently testify hereto.

I. **BACKGROUND ON THE NEW OFFICE OF CAMPUS SAFETY**

   a. **My Qualifications**

3. I served in the Sacramento Police Department for over 33 years including five years as Chief until retiring in 2012.

4. Since 2012, I have conducted a number of organizational assessments and reviews of law enforcement agencies and police responses.

5. I led the review of the police response to former LAPD Officer Christopher Dormer.

6. I was part of the team that reviewed the riots in Ferguson, Missouri and the St. Louis County Police Collaborative Reform Initiative.

7. I prepared the review of the Stockton Police response to the Bank of the West robbery and hostage taking and the review of the December 2, 2015 terrorist attack in San Bernardino.

8. More recently, I was selected by the U.S. Department of Justice to review the police response to the Uvalde, Texas shooting.

9. I am Vice Chair of the California Commission on Peace Officer Standards and a former Executive Fellow at the National Police Foundation.

10. I am a co-author of the book, *Cop Talk: Essential Communication Skills for Community Police*.

11. Further information regarding my professional background, experiences, publications, and presentations is detailed in my curriculum vitae, a true and correct copy of the most up-to-date version of which is attached as **Exhibit 1**.

### b. Office of Campus Safety

12. Shortly after the Royce Quad protest encampment was disbanded, I was asked by the University of California ("UC") to work directly with Chancellor Gene Block to provide a high-level review of the protest response, to advise on leadership and organizational changes, and to stand up a new Office of Campus Safety—all with the goal of ensuring that the Royce Quad encampment and related incidents could never happen again.

13. On May 5, 2024, I was named the inaugural Associate Vice Chancellor for Campus Safety.

14. Effective immediately, oversight and management of the UCLA UCPD and the Office of Emergency Management was moved from the Office of the Administrative Vice Chancellor to the Office of Campus Safety.

15. Chancellor Block also created a formal advisory group with expert leaders to partner with me. The advisory group includes the University of California, Davis ("UC Davis") Chief of Police and Coordinator of the Council of UC Chiefs of Police Joe Farrow, Distinguished Professor of Psychology and Professor of Health Policy and Management Vickie Mays, and UC Office of the President Systemwide Director of Community Safety Jody Stiger.

16. In partnership with this advisory group, I am now leading safety and emergency management operations for the campus. As mentioned, I report directly to the Chancellor, and the Chief of the UCLA UCPD reports to and takes direction

from me.

## II. EFFORTS UNDERTAKEN SINCE MAY 5, 2024

### a. Leadership and Organizational Changes

17. Effective May 21, 2024, Gawin Gibson was named Acting Chief of Police and former Chief of Police John Thomas was reassigned as I review the campus security processes. Mr. Gibson has worked with UCLA UCPD for over 28 years.

18. As mentioned, I took over oversight and management of the UCLA UCPD and the Office of Emergency Management.

19. In late May, retired L.A. County Assistant District Attorney Bill Hodgman was hired as UCLA's first Director of Special Investigations. His role is to provide guidance and quality assurance related to high-profile and sensitive investigations related to the protests.

20. Also in late May, the current L.A. County District Attorney ("DA's office") assigned a prosecutor, May Chung, from his organized crimes/hate crimes team as a direct liaison between the DA's office and UCLA PD.

21. I have also shifted day-to-day responsibility for the University's incident responses to the Emergency Operations Center ("EOC"). The EOC brings together representatives from the various on-the-ground responders to disasters and emergencies on campus, including UCLA UCPD, the fire department, events planning, and traffic and transportation. Previously, day-to-day responsibility for the University's incident response was shared between the on-the-ground responders and senior leadership and experts. But this organizational change means that, while senior leadership and experts remain responsible for developing the University's incident response policies, they no longer need to be consulted before the on-the-ground responders make critical decisions in response to disasters and emergencies including protests on campus, including those that violate UCLA

policy. The EOC can take swift and decisive action.

### b. UCLA's Approach to Protest Encampments and Related Incidents

22. In my view, UCLA already has the necessary policies in place to respond to protests and other incidents on campus in a content-neutral manner that respects the First Amendment while preserving campus safety. Over a decade ago, in the wake of physical violence between University police and protesters at 2011 demonstrations at University of California, Berkeley and UC Davis, the University of California set forth guidance for the 10 UC campuses about how to strike that difficult balance. Specifically, a September 13, 2012 report entitled "Response to Protests on UC Campuses," colloquially known as the Robinson-Edley Report, provided guidance on the question: "How should our University respond to protest activity that is not violent, but that violates the law or campus regulations and that may negatively impact the University's mission."[1] In answer to this question, UCLA has time, place, and manner restrictions and other content-neutral policies that prohibit protest activity that significantly interferes with UCLA's mission—for example, harassment and intimidation or blocking access to educational buildings.

23. But I know from firsthand experience that even with the right policies in place, difficulties in enforcing those policies may still arise because the nature of non-peaceful protest activity constantly changes. The Royce Quad encampment was part of a broader wave of encampments that sprang up on college campuses across the country in April and May. On campus after campus, we saw crowds gather quickly and pose new and unique challenges to universities.

24. Based on these events, UCLA has determined that protest encampments can significantly interfere with UCLA's educational mission. UCLA is also committed to making clear to protestors that civil disobedience (i.e., non-peaceful protest activity) is not protected speech under the First Amendment and

---

[1] Attached as **Exhibit 2**, Robinson-Edley Report, at 4. *See also*, attached as **Exhibit 3**, Robinson-Edley Report Twelve-Month Implementation Report.

that they will be held accountable.[2]

25. Accordingly, in collaboration with designated university officials Administrative Vice Chancellor Michael Beck and Vice Chancellor for Student Affairs Monroe Gorden, since I was hired, I have been instructing UCLA UCPD, private security, and law enforcement to inform disruptive protesters that if they do not disperse, they will face arrest and disciplinary action based on Sections 626.4 and 626.6 of the California Penal Code. These provisions allow designated campus officials to provide notice to students and individuals who are not affiliated with the University that their consent to remain on campus has been withdrawn. These provisions also provide campus officials the authority to inform the person receiving the notice that they will be guilty of a misdemeanor if they reenter campus within seven to fourteen days. It is at the discretion of the designated campus official to provide for a seven- or fourteen-day "stay away" period.

### III. RECENT PROTEST RESPONSES

26. There are currently no protest encampments on UCLA's campus.

27. Since I have taken the helm of the Office of Campus Safety, we have successfully intervened to prevent at least three efforts to occupy parts of campus, including by promptly asking for law enforcement assistance to respond to protests that violate University policies.

    **a. May 6, 2024**

28. I understand that forty-two individuals were found in a campus parking structure and arrested on May 6, 2024 for plans to break in and occupy Moore Hall. While the group at the parking structure was detained, another group of individuals attempted to occupy Moore Hall and then Dodd Hall. UCLA UCPD responded to these incidents, with the assistance of LAPD and UCLA Student Affairs. The protesters were informed that if they did not disperse, they would face

---

[2] Robinson-Edley Report, at 21.

arrest and possible disciplinary action. The group of individuals ultimately disbanded. Classes were moved remote from May 6 through May 10 to prevent the opportunity for further disruption.

      **b. May 23, 2024**

29. On May 23, 2024, students attempted to erect an encampment on Kerckhoff Patio. The protesters were informed that if they did not disperse, they would face arrest and possible disciplinary action under section 626.4 of the California Penal Code. All protesters willingly dispersed and no arrests were made.

      **c. June 10, 2024**

30. Twenty-seven individuals were arrested on June 10, 2024 when a group of individuals dyed Shapiro Fountain red and another group of individuals attempted to disrupt final exams in Moore Hall. The students who were arrested were served fourteen-day stay-away orders, under section 626.4 of the California Penal Code, preventing them from being on campus to take classes or participate in commencement ceremonies.

**IV.   ONGOING PLANNING FOR UCLA'S FALL 2024 SEMESTER**

31. I am actively planning for UCLA's fall 2024 semester and its 2024–2025 academic year. I have been using these summer months to run through various scenarios with the senior leadership and experts to proactively put strategies in place to respond to potential civil unrest. Put another way, we are working to remain several moves ahead and endeavor to act quickly in response to protest activity.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 8th day of July 2024, at Los Angeles, California.

Dated: July 8, 2024       Respectfully submitted,

By: *Rick Braziel*
RICK BRAZIEL