
Eric C. Rassbach (CA SBN 288041)
Mark L. Rienzi (DC Bar No. 494336)*
Laura Wolk Slavis (DC Bar No. 1643193)*
Jordan T. Varberg (DC Bar No. 90022889)*
Amanda G. Dixon (DC Bar No. 90021498)*
Richard C. Osborne (DC Bar No. 90024046)*
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 tel. / 202-955-0090 fax
erassbach@becketlaw.org

Paul D. Clement (DC Bar No. 433215)*
Erin E. Murphy (DC Bar No. 995953)*
Matthew D. Rowen (CA SBN 292292)
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YITZCHOK FRANKEL *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA *et al.*,<br><br>    Defendants. | Case No.: 2:24-cv-4702-MCS<br><br>**SUPPLEMENTAL MEMORANDUM AND PROPOSED ORDER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

* admitted *pro hac vice*

Pursuant to the Court's order at the July 29 hearing, Plaintiffs and Defendants met and conferred to discuss proposed terms for a stipulated order granting a preliminary injunction in this case. After a telephonic meet and confer and several email exchanges, the parties were unable to agree upon terms. Plaintiffs therefore submit the attached proposed order for a preliminary injunction, Ex. 2, and respectfully request that this Court issue that order. In addition, pursuant to the Court's order at the July 29 hearing, Plaintiffs explain below that no bond should be required in this case under Federal Rule of Civil Procedure 65(c).

## DISCUSSION

### I. Meet and confer efforts.

Counsel for Plaintiffs, Mark Rienzi emailed a first draft of Plaintiffs' proposed injunction to Defendants at 9:06 AM on Wednesday, July 31, 2024. A true and correct copy of that proposed injunction is attached as Exhibit 1. Counsel for Defendants, Matthew Cowan, responded at 6:00 PM, offering to hold a telephonic conference to discuss proposed terms in the morning or afternoon of Thursday, August 1. That telephonic conference took place at 9:00 AM on August 1, during which Cowan discussed Defendants' general approach to the proposed preliminary injunction. Cowan circulated Defendants' proposed language on Thursday, August 1, 2024, at 4:37 PM.

Rienzi responded on Friday, August 2 at 12:06 PM, noting certain terms Plaintiffs could agree to but pointing out that other terms were not consistent with remedying the religious discrimination against Jews present in this case or failed to bind UCLA not to discriminate going forward. Cowan responded later that day, at 7:37 PM, stating that

Defendants could not agree to Plaintiffs' proposal, but would send a counter proposal.

Defendants emailed that second proposal at 3:27 PM on Saturday, August 3, 2024. Plaintiffs could not agree to that proposal and responded with a counter-proposal at 6:29 AM on August 5, 2024. A true and correct copy of that proposed injunction is attached as Exhibit 2.

After this exchange of these counter-proposals, the parties were unable to reach agreement on the terms of the injunction.

## II. The Court should grant Plaintiffs' proposed preliminary injunction.

Plaintiffs' proposed injunction would secure the constitutional and statutory rights of UCLA's Jewish students while preserving flexibility for UCLA officials. Plaintiffs' proposal would ensure that UCLA will not facilitate the exclusion of Jews, and will no longer provide services or campus spaces that are not open to Jews. July 29 Hearing Transcript, Dkt.80 at 34:13-19. While Plaintiffs' proposal does not mandate or prohibit UCLA from employing any specific strategy, it directs that UCLA cannot approach these problems in a way that allows Jews to be excluded, or that facilitates the exclusion of Jews. By focusing on programs and services that are "ordinarily available" to all, *see, e.g.*, Ex. 2 ¶¶ 2-3, it also requires only that UCLA treat its Jewish students and faculty members equal to other students, not to give them preferential treatment. And through a modest reporting requirement, it ensures that UCLA will be promptly made aware of any exclusion, *id.* ¶ 7, at which time UCLA can take whatever action it deems appropriate—so long as

1  UCLA does not allow or facilitate the exclusion of Jews while others
2  retain access to services and campus spaces.[1]

3  By contrast, UCLA's proposed injunction, as shared with Plaintiffs, fails to guarantee that UCLA will not again facilitate or acquiesce in the exclusion of Jews as it cycles through various techniques to de-escalate potential new encampment problems. The central issue in this case concerns religious discrimination against Jews, yet Defendants' proposed injunction does not contain any requirement not to discriminate in the new semester.

Moreover, the flexibility that UCLA seeks to retain for itself would vitiate the injunction entirely. It is Defendants' position that they acted in good faith all throughout April and May of 2024, and they therefore are not legally culpable for any of their actions. *See, e.g.*, UCLA Opp., Dkt.62 at 3-4. That means that the challenged behavior at issue in this case would presumably satisfy their proposed injunction language through the "good faith" and "sole discretion" provisos. UCLA's proposal would therefore expose Jewish students to the precise type of discrimination they faced as a result of UCLA's facilitation of the exclusion of Jews from Royce Quad this spring.

UCLA's "good faith" proviso would also be judicially unadministrable. Although UCLA has repeatedly expressed concerns about administrability, July 29 Hearing Transcript, Dkt.80 at 36:3-38:10; UCLA Opp., Dkt.62 at 21-22, their proposal provides no criteria for

---

[1] Paragraph 5 of Plaintiffs' proposed injunction is derived from UCLA's proposed language. While Plaintiffs do not object to inclusion of this provision, they do not view it as necessary so long as the other provisions of the proposed injunction remain.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

3

assessing when the capacious and hard-to-prove standard of good faith would be violated. The "good faith" proviso also begs the question: good faith *as to what?* Since UCLA's proposal does not so much as mention Jews or discrimination, it is not clear that the injunction even requires a good faith effort at ceasing the challenged behavior in this case, namely discrimination against Jews. The good faith standard thus completely frees UCLA from its constitutional obligations to cease the discrimination and harassment that Plaintiffs experienced from recurring this semester.

This broad and injunction-nullifying flexibility is also embodied in Defendants' proposal that so long as Defendants "initiate" steps to dismantle an encampment, they have complied with the injunction, regardless of whether Jews remain excluded, and regardless for how long. This, too, has been UCLA's consistent position even about Royce Quad—that because they took minimal steps to counter the encampment, they cannot be held responsible for the constitutional violations that ensued. *See* UCLA Opp., Dkt.62 at 3-4, 18-19; Beck Decl., Dkt.62-3 at ¶ 5. An "injunction" will not provide meaningful protection if it leaves UCLA completely free to repeat its problematic and discriminatory behavior. Nor could giving UCLA a free pass for merely "initiating" action be part of a properly-framed injunction.

Plaintiffs fully understand that UCLA must retain some flexibility as to ***how*** to secure the constitutional and statutory rights of Jews on campus. It is not Plaintiffs' position that this Court must require that Defendants employ a specific level of force or deploy specific tactics to achieve that result. But Defendants' proposed injunction is not tailored to remedy the ***what*** of this case: the entirely undisputed constitutional

1  injuries Plaintiffs have experienced thus far that they justifiably fear will
2  continue if UCLA is not obligated to change its behavior.

### III. No security should be required.

"Rule 65(c) invests the district court with discretion as to the amount of security required, *if any.*" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). Courts typically find it "appropriate to issue [a] preliminary injunction without requiring security based on" a "showing that [Plaintiff] is likely to prevail on" a First Amendment claim. *NetChoice, LLC v. Bonta*, 692 F. Supp. 3d 924, 966 (N.D. Cal. 2023); *see also Weaver v. City of Montebello*, 370 F. Supp. 3d 1130, 1139 (C.D. Cal. 2019) (waiving bond in First Amendment case); *United Food & Com. Workers Loc. 99 v. Brewer*, 817 F. Supp. 2d 1118, 1128 (D. Ariz. 2011) (same); *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citing *Smith v. Board of Elections Comm'rs for Chicago*, 591 F. Supp. 70, 71-72 (N.D. Ill. 1984)) ("to require a bond would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public affected by the policy").

There is no reason to vary from that practice here. Plaintiffs' First Amendment rights are at stake and thus a bond would be inappropriate. Moreover, the proposed injunctions Defendants have shared with Plaintiffs have not included the requirement of a bond.

## CONCLUSION

Plaintiffs respectfully request that this Court enter their proposed preliminary injunction without requiring the posting of security.

Dated: August 5, 2024

Respectfully submitted,

/s/ *Eric C. Rassbach*
Eric C. Rassbach (CA SBN 288041)
Mark L. Rienzi (DC Bar No. 494336)*
Laura Wolk Slavis (DC Bar No. 1643193)*
Jordan T. Varberg (DC Bar No. 90022889)*
Amanda G. Dixon (DC Bar No. 90021498)*
Richard C. Osborne (DC Bar No. 90024046)*
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 tel. / 202-955-0090 fax
erassbach@becketlaw.org

Paul D. Clement (DC Bar No. 433215)*
Erin E. Murphy (DC Bar No. 995953)*
Matthew D. Rowen (CA SBN 292292)
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314

*Attorneys for Plaintiffs*

* admitted *pro hac vice*

# CERTIFICATE OF COMPLIANCE

Undersigned counsel of record for Plaintiffs certifies that this brief contains 1,330 words, which complies with this Court's word limits.

Dated: August 5, 2024

/s/ *Eric C. Rassbach*
Eric C. Rassbach

*Counsel for Plaintiffs*