MATTHEW R. COWAN (S.B. #281114)
mcowan@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

ANTON METLITSKY
ametlitsky@omm.com
JENNIFER SOKOLER
jsokoler@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Facsimile: (211) 326-2061

MEAGHAN VERGOW
mvergow@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants*

[*Counsel continued on next page*]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION – LOS ANGELES**

| | |
|---|---|
| Frankel, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>Regents of the University of California, et al.,<br><br>　　　　Defendants. | Case No. 2:24-CV-4702-MCS<br><br>**DEFENDANTS' STATEMENT IN RESPONSE TO THE COURT'S JULY 29, 2024 DIRECTIVE**<br><br>Judge:　　Hon. Mark C. Scarsi<br>Courtroom:　7C |

[*Counsel continued from previous page*]

Charles Robinson (S.B. #113197)
Rhonda Goldstein (S.B. #250387)
Norman Hamill (S.B. #154272)
Morae Kim (S.B. #326819)
The Regents of the University of California
1111 Franklin Street, Floor 8
Oakland, California 94607-5201
Telephone: (510) 987-9800
Facsimile: (510) 987-9757

*Attorneys for Defendants*

## DEFENDANTS' STATEMENT

This Court has directed the parties to meet and confer to propose a preliminary injunction that would respond to the injuries that Plaintiffs allegedly sustained in connection with the Royce Quad encampment and that would address Plaintiffs' fears about how UCLA might respond to similar encampments in the future. As a threshold matter, Defendants (collectively, "UCLA") renew their objection to such an injunction. UCLA is committed to providing all members of the UCLA community, including Jewish students, equal access to campus spaces and services. Moreover, since the Royce Quad encampment was taken down on the morning of May 2, 2024, UCLA has, in fact, repeatedly prevented protesters from occupying portions of campus on three separate occasions, Opp. 5, which the Court agreed complied with the law, Transcript of July 29, 2024 Hearing ("Tr.") 36:3-22; *see also* Tr. 25:24-27-8. Accordingly, it is UCLA's position that a preliminary injunction is unnecessary to ensure that UCLA complies with federal law, including because Plaintiffs lack standing to obtain such an injunction, Opp. 8-12, and have failed to satisfy their burden of proving that such a "drastic remedy" is warranted, *Apartment Ass'n of L.A. Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905, 911 (9th Cir. 2021); Opp. 12-20. UCLA thus continues to object to the entry of a preliminary injunction, and reserves its right to appeal any injunction entered by the Court.

Nevertheless, in response to the Court's directive, UCLA has attempted to formulate a proposed injunction (Ex. 1) that both is directed at preventing new encampments from forming while at the same time "give[s] UCLA the flexibility it needs to administer their campus," Tr. 39:19-40:1, as this Court recognized must be part of any potential injunction. Plaintiffs have proposed a very different sort of injunction. The parties have now met and conferred, but despite their good faith efforts, were unable to agree to stipulated language for an injunction. Defendants have therefore proposed text for an injunction and submit this statement in response

to the Court's July 29, 2024 Directive.  Defendants also respectfully request that if the Court enters an injunction, it enter a stay to allow UCLA to appeal that injunction.

## I. IF THE COURT ISSUES A PRELIMINARY INJUNCTION, IT SHOULD ADOPT DEFENDANTS' PROPOSED FORMULATION

Rule 65 requires that an order granting injunctive relief "state its terms specifically" and "describe in reasonable detail … the act or acts sought to be restrained."  *Roman v. MSL Cap., LLC*, 2019 WL 3017765, at *5 (C.D. Cal. July 9, 2019) (citation omitted), *aff'd*, 820 F. App'x 592 (9th Cir. 2020).  Those mandates "are no mere technical requirements.  The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

Defendants' proposed injunction best satisfies those factors.  Unlike Plaintiffs' injunction, which attempts to direct UCLA to comply with general legal principles that UCLA is already bound by, *see infra* at 5-8, Defendants' injunction is directed at identifying how UCLA should respond operationally to the attempted occupation of portions of campus.  That sort of injunction is consistent with Rule 65 because it would allow UCLA to know what acts the injunction requires.  As explained below, Plaintiffs' proposal would not.

### A. DEFENDANTS' PROPOSED INJUNCTION BEST COMPLIES WITH RULE 65 AND THIS COURT'S DIRECTIVE

Consistent with Rule 65 and this Court's order, UCLA has proposed an injunction that is directly targeted at responding to the attempted formation of new encampments of the sort that resulted in in Plaintiffs' alleged injuries.  In particular, the injunction would require the University to (i) maintain policies that prohibit interfering with access to campus facilities, including camping or lodging overnight; and (ii) "promptly initiate efforts within 24 hours that are reasonably calculated to terminate" such unauthorized activities.  Ex. 1.  The proposed injunction would also instruct Student Affairs Mitigators (SAMs) and "any and all security teams" to "take

prompt and effective steps that are reasonably calculated to protect access to educational services for all students" while any such unauthorized activities are ongoing and to promptly report any such activities so that responsive action can be taken. *Id.*

As this Court requested (Tr. 34:18-19), UCLA's proposed injunction provides "clear[]" and "understandable" operational guidance for the University officials charged with implementing it. It ensures that those officials promote equal access for Jewish (or any other) students on campus in a timely manner, moving promptly to end unauthorized protests that block campus access and also taking steps in the interim to protect educational services while any such protest activity is ongoing. And it preserves the "flexibility" necessary for the University to tailor its response to on-the-ground demands, as well as continue to meet its obligations to the many stakeholders on campus.

## B. PLAINTIFFS' PROPOSED INJUNCTION IS INCONSISTENT WITH RULE 65

Plaintiffs' proposed injunction, by contrast, remains too vague and unworkable for enforcement, and this Court should reject it. During its July 29, 2024 hearing, the Court recognized that Plaintiffs' proposed injunction might sow uncertainty and confusion, as Plaintiffs did not seek to enjoin "direct policies in place at UCLA." *See* Tr. 32:7-19; *see also* Tr. 34:13-35:15. The Court also clarified (Tr. 36:3-22) that any injunction should not require UCLA to act differently than it did in clearing an encampment on June 10—guidance that Plaintiffs' proposed injunction had not taken into account. The Court therefore directed the parties to stipulate to new language, but Plaintiffs continue to propose a preliminary injunction with many of the same (and additional) flaws as before:

First, Plaintiffs' proposed injunction is vague because it would direct UCLA to follow antidiscrimination law without "specify[ing] what act [i]s being enjoined." *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 333 F.R.D. 449, 463 (N.D. Cal.

2019). Courts routinely reject such "obey the law" injunctions,[1] for good reason. As this Court recognized, if it "issue[s] an injunction," the parties need to "know when it's been violated." Tr. 35:3-4. But UCLA is *already* committed to protecting its Jewish students from discrimination, and offering all ordinarily available programs, activities, and campus spaces to Jewish students. As a result, an injunction that simply reinforces those legal obligations does not provide "clear[]" and "understandable" instructions to the UCLA officials charged with implementing it as to what they must do differently. Tr. 34:18-19. Unless an injunction is focused on how University officials should respond operationally, the University will not be able to assess whether it is in compliance.

Second, the proposed injunction is not administrable because it would make this Court, rather than UCLA, the ultimate arbiter of how to implement any and all UCLA "programs" or "activities" to prevent discrimination against Jewish students (while also fulfilling all of UCLA's other goals and obligations, including fostering education, promoting safety, and protecting all students' rights to engage in robust, sincere debate and be free of discrimination). That is not something Article III courts are empowered or equipped to do. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648-49 (1999); *Juliana v. United States*, 947 F.3d 1159, 1171 (9th Cir. 2020) ("[I]t is beyond the power of an Article III court to order, design, supervise, or implement" a requested "remedial plan" that "would necessarily require a host of complex policy decisions.").

---

[1] *See also, e.g.*, *Muhammad v. California*, 2020 WL 9848693, at *14 (C.D. Cal. Oct. 8, 2020) (injunction stating "[d]efendants [shall] … cease any policy or practice that interferes with the Plaintiff's exercise of her right to petition the government" violates Rule 65(d)); *Elend v. Basham*, 471 F.3d 1199, 1209-10 (11th Cir. 2006) (same, for hypothetical injunction stating "the Secret Service shall ensure there's no violation of the First Amendment"); *Payne v. Travenol Lab'ys, Inc.*, 565 F.2d 895, 897 (5th Cir. 1978) (same, for injunction against discrimination "on the basis of color, race, or sex in employment practices or conditions of employment in defendants' Cleveland, Mississippi facility"); *Sessler v. City of Davenport,* 990 F.3d 1150, 1157 n.3 (8th Cir. 2021) (same, for order enjoining city "from restricting and limiting [Plaintiff's] rights to peacefully share his message of faith").

<u>Third</u>, the proposed injunction would strip UCLA of the "flexibility it needs to administer [its] campus." Tr. 39:23; *see also Davis*, 526 U.S. at 648-49. To properly run its campus, UCLA must retain some discretion to attempt de-escalation with protestors before turning to force. In some circumstances, de-escalation may achieve the same ends—ending an encampment—more quickly and more sustainably than a law-enforcement response. De-escalation also may be necessary in unforeseen circumstances, including to protect the safety of students, faculty, or staff who may not be affiliated with a protest but are swept within its perimeter.

Moreover, even when a law-enforcement response is warranted, police need time to develop a tactical plan and execute that plan safely and effectively. This Court recognized that UCLA acted appropriately, for instance, in clearing the encampment on June 10, even though it took five hours to complete. Tr. 36:3-22. That response, however, would on its face violate Plaintiffs' proposed injunction, as, according to Plaintiffs' theory, there would be some period of time where UCLA allowed the exclusion of students Jews from ordinarily available portions of UCLA's campus. See Tr. 13:6-14:1 (Plaintiffs' counsel arguing that UCLA's response to the June 10 encampment was "illegal and unconstitutional").

<u>Fourth</u>, and relatedly, any injunction must afford discretion to law enforcement officials as they respond to particular and fast-moving situations. Time and again, the Supreme Court has recognized the importance and "deep-rooted nature of law-enforcement discretion." *Castle Rock v. Gonzales*, 545 U.S. 748, 761 (2005). It is "common sense," the Court has held, "that all police officers must use some discretion in deciding when and where to enforce" rules and ordinances, *Chicago v. Morales*, 527 U.S. 41, 62 n.32 (1999), and a court must allow officials some safe harbor so long as they take reasonable steps to comply with the law, consistent with "the normal principles of equity, comity, and federalism that should inform the judgment of federal courts when asked to oversee state law enforcement authorities," *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983). Plaintiffs' proposed

injunction, however, is no better than enjoining the LAPD to "stop crime," or, at least, "stop all hate crimes." It would micro-manage law-enforcement decisions, requiring campus safety officials to intervene immediately even if doing so cut against their training, experience, and judgment.

<u>Fifth</u>, the proposed junction is "overbroad" and not "tied" to Plaintiffs' own injuries. *See Utah Physicians for a Healthy Env't v. Diesel Power Gear LLC*, 374 F. Supp. 3d 1124, 1136 (D. Utah 2019). This is not a putative class action, and the core conduct that Plaintiffs say injured them is limited: UCLA's response to the Royce Quad encampment. Their proposed injunction, by contrast, would cover any and all UCLA "programs" or "activities." A "remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff" alleges, *Gill v. Whitford*, 585 U.S. 48, 66 (2018), and the remedy Plaintiffs seek here is a complete mismatch with the harms they allege.

<u>Sixth</u>, and finally, Plaintiffs would introduce new constitutional problems. Because "[r]acial and ethnic distinctions of any sort are inherently suspect," *Students for Fair Admissions Inc. v. President and Fellows of Harvard* College, 600 U.S. 181, 209 (2023) (quotation omitted), the proposed injunction should be written in neutral language that would provide equal protection to all of the University's students.

## II. THIS COURT SHOULD IMPOSE A STAY IF IT ISSUES A PRELIMINARY INJUNCTION

If the Court grants an injunction, it should exercise its authority under Federal Rule of Civil Procedure 62 to stay its order pending appeal. District courts have discretion to "'suspend, modify, restore, or grant an injunction' during the pendency of the defendant's interlocutory appeal." *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001) (quoting Fed. R. Civ. P. 62(c)). In deciding whether to stay a preliminary injunction pending appeal, district courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)

whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017).

Defendants are prepared to submit a separate motion explaining why a stay is warranted, but in short, all four *Nken* factors support staying a preliminary injunction here. UCLA is likely to succeed in its appeal for multiple reasons, including because Plaintiffs do not have standing to secure injunctive relief and because they are unlikely to succeed on the merits of their claims, as UCLA's robust response to campus protest activity has fully complied with federal and state law. Particularly if the Court issues Plaintiffs' proposed preliminary injunction, UCLA will be irreparably harmed absent a stay, because it has no legal remedy for the intangible harms and significant administrative burdens of attempting to comply with a vague, unworkable injunction. And the balance of the equities and public interest overwhelmingly favor permitting UCLA to exercise discretion in responding to future unauthorized protests and deciding how best to promote safety on its campus—free from ill-defined Court oversight.

If the Court is not inclined to grant a stay, Defendants respectfully request that it state so for the record, so that Defendants may seek a stay in the Ninth Circuit under Federal Rule of Appellate Procedure 8(a).

### III. DEFENDANTS DO NOT REQUEST A BOND

Finally, the Court requested the parties address whether a bond was needed if it enters a preliminary injunction. Under Rule 65(c), district courts have discretion to impose a nominal bond or no bond at all. *See, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("Rule 65(c) invests the district court with discretion as to the amount of security required, if any.") (citation omitted). In this case, Defendants do not believe a bond is necessary and do not request one.

Dated: August 5, 2024

Respectfully submitted,

By:   /s/ *Matthew R. Cowan*
MATTHEW R. COWAN
*Attorney for Defendants The Regents of the University of California; Michael V. Drake; Gene D. Block; Darnell Hunt; Michael Beck; Monroe Gorden, Jr.; and Rick Braziel*