Eric C. Rassbach (CA SBN 288041)
Mark L. Rienzi (DC Bar No. 494336)*
Laura Wolk Slavis (DC Bar No. 1643193)*
Jordan T. Varberg (DC Bar No. 90022889)*
Amanda G. Dixon (DC Bar No. 90021498)*
Reed M. Bartley (TX Bar No. 24125115)* ‡
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 tel. / 202-955-0090 fax
erassbach@becketlaw.org

Paul D. Clement (DC Bar No. 433215)*
Erin E. Murphy (DC Bar No. 995953)*
Matthew D. Rowen (CA SBN 292292)
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314

*Attorneys for Plaintiffs*
[*Counsel for Defendants listed on next page*]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YITZCHOK FRANKEL *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA *et al.*,<br><br>        Defendants. | Case No.: 2:24-cv-04702-MCS-PD<br><br><br>**JOINT RULE 26(f) REPORT**<br><br><br>Date: December 2, 2024<br>Time: 10:00 AM<br>Courtroom: 7C |

*Admitted *pro hac vice*. ‡Not admitted to the D.C. Bar; admitted only in Texas. Supervised by licensed D.C. Bar members.

[*Counsel continued from previous page*]

Matthew R. Cowan (S.B. #281114)
mcowan@omm.com
O'Melveny & Myers LLP
400 South Hope Street, 19th Floor
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Anton Metlitsky*
ametlitsky@omm.com
Jennifer Sokoler*
jsokoler@omm.com
O'Melveny & Myers LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Facsimile: (211) 326-2061

Meaghan VerGow*
mvergow@omm.com
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Charles Robinson (S.B. #113197)
Rhonda Goldstein (S.B. #250387)
Norman Hamill (S.B. #154272)
The Regents of the University of California
1111 Franklin Street, Floor 8
Oakland, California 94607-5201
Telephone: (510) 987-9800
Facsimile: (510) 987-9757

*Attorneys for Defendants*

Plaintiffs Yitzchok Frankel, Joshua Ghayoum, Eden Shemuelian, and Dr. Kamran Shamsa, by and through their attorneys, the law firms The Becket Fund for Religious Liberty and Clement & Murphy, PLLC, and Defendants The Regents of the University of California, Michael V. Drake, Gene D. Block, Darnell Hunt, Michael Beck, Monroe Gorden, Jr., and Rick Braziel, by and through their attorneys, the law firm O'Melveny & Myers LLP (collectively "the Parties"), hereby submit this Joint Rule 26(f) Report:

**a. <u>Statement of the Case:</u>**

<u>Plaintiffs' Position</u>

This case arises out of a pattern of rampant antisemitism that sprung to life on the UCLA campus in the wake of the terrorist attack Israel experienced on October 7, 2023. Beginning on October 7 and continuing to the present, various UCLA officials—including Defendants—facilitated and aided antisemitic activity that has had the effect of excluding Jews from key parts of campus. The incidents include Defendants' facilitation of a week-long encampment that forced Jews to choose between exercising their First Amendment rights or disavowing Israel, removing religious garb, or both. Other incidents include attempts on May 6, May 13, and June 10, 2024, to erect similar encampments.

Based on these incidents and the actions of Defendants, three student Plaintiffs—Yitzchok Frankel, Eden Shemuelian, and Joshua Ghayoum—filed suit on June 5, 2024 against Defendants. This Court granted a

preliminary injunction as against the individual Defendants. In that order, this Court called the mistreatment of Jews on campus "unimaginable" and "abhorrent," and held that UCLA had "excluded" Plaintiffs "because of their genuinely held religious beliefs."

Plaintiffs later amended their complaint, adding, *inter alia*, Dr. Kamran Shamsa as a plaintiff. Plaintiffs bring claims under the federal and California constitutions, as well as Title VI of the Civil Rights Act and certain provisions of the Ku Klux Klan Act, and seek injunctive relief, declaratory relief, and compensatory, punitive, and nominal damages.

Defendants' Position

This lawsuit arises primarily from events in the Spring of 2024, when students across the country created encampments to protest the war between Israel and Hamas.  When tents were erected at the UCLA campus on April 25, 2024, UCLA faced a volatile challenge.  The encampment in Royce Quad needed to be disbanded, but that had to be done safely.  Consistent with longstanding University of California ("UC") guidance, UCLA implemented a tiered approach: First, it attempted de-escalation, while actively seeking to avoid violence.  When that approach proved untenable, it called law enforcement, leading to more than 200 arrests and the end of the encampment on May 2, 2024.

Plaintiffs, three UCLA students and one UCLA faculty member, bring various claims based principally on their belief that the Defendants "affirmatively assisted" the protestors' discriminatory conduct.   But

Plaintiffs fail to allege that UCLA—as opposed to the protestors in the encampment—intentionally denied them full access to campus.

Numerous doctrines shield government employees who have performed their duties based on a reasonable understanding of the applicable law—like the individual Defendants—from becoming entangled in litigation that subjects them to substantial personal liability. And sovereign immunity precludes all claims for damages (except the Title VI claim) against UCLA. For these reasons and others, Plaintiffs' claims lack merit.

## b. <u>Subject Matter Jurisdiction:</u>

<u>Plaintiffs' Position</u>

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' claims arising under the Constitution and laws of the United States. The Court has supplemental jurisdiction over Plaintiffs' state law claims because they "form part of the same case or controversy." 28 U.S.C. § 1367(a). The Federal questions consist of actions under 42 U.S.C. § 1983 involving the Free Exercise Clause, Free Speech Clause, and Equal Protection Clause, as well as actions under 42 U.S.C. § 2000d *et. seq.* (Title VI) and 42 U.S.C. §§ 1985 and 1986 (Ku Klux Klan Act).

<u>Defendants' Position</u>

The Eleventh Amendment bars suits against states and state employees in their official capacities unless Congress validly abrogates

sovereign immunity.    Here, the only claim Congress has abrogated immunity for is the Title VI claim.    Accordingly, the Court lacks jurisdiction over all other claims against The Regents.  And it also lacks jurisdiction over all other claims for damages against the individual Defendants, since those claims are treated as claims against the state.

**c. <u>Legal Issues:</u>**

<u>Plaintiffs' Position</u>

The key legal issues in this case include:

(1)    Whether Defendants have violated the Equal Protection Clause of the United States Constitution by engaging in discrimination on the basis of race and religion (Count I);

(2)    Whether Defendants have violated the Free Speech Clause of the First Amendment of the United States Constitution by engaging in viewpoint and content-based discrimination (Count II);

(3)    Whether the Defendants have violated the Free Exercise Clause of the First Amendment of the United States Constitution by: engaging in status-based discrimination (Count III); treating religious activity less favorably than comparable secular activity (Count IV); exercising their discretion in a manner that penalizes religious activity (Count V); and/or impermissibly targeting Plaintiffs for their religious activity and beliefs (Count VI);

(4)    Whether the Defendants have violated Title VI of the Civil Rights Act of 1964 by excluding Plaintiffs from their programs and activities based on Plaintiffs' race (Count VII);

(5)    Whether Defendants have violated § 1985 of the Ku Klux Klan Act by conspiring with members of the encampment to deprive Plaintiffs of their civil rights (Count VIII);

(6)    Whether Defendants have violated § 1986 of the Ku Klux Klan Act by failing to prevent a conspiracy to deprive Plaintiffs' civil rights (Count IX);

(7)    Whether Defendants have violated the Equal Protection Clause of the California Constitution by discriminating against Plaintiffs because they are Jewish (Count X);

(8)    Whether Defendants have violated the Free Exercise Clause of the California Constitution (Count XI);

(9)    Whether Defendants have violated the California Education Code's prohibition on discrimination by discriminating against Plaintiffs because of their race (Count XII);

(10) Whether Defendants have violated California's Ralph Civil rights Act of 1976 by allowing them to be threatened with or experience violence because of their race (Count XIII);

(11) Whether Defendants have violated California's Tom Bane Civil Rights Act by interfering with Plaintiffs' federal and state constitutional rights (Count XIV); and

(12) Whether Plaintiffs are entitled to a permanent injunction, declaratory relief, compensatory, punitive, or nominal damages, the costs of the action, and reasonable attorneys' fees, and any other relief the Court deems equitable and just.

Defendants' Position

The key legal issues in this case include:

(1) Whether sovereign immunity precludes claims for damages against The Regents and the individual Defendants in their official capacities;

(2) Whether qualified immunity precludes damages claims against the individual Defendants in their personal capacities;

(3) Whether state-law immunities protect Defendants from liability for Plaintiffs' claims under California law, and whether Plaintiffs otherwise have viable claims under state law;

(4) Whether Defendants intentionally discriminated against Plaintiffs in violation of the Constitution;

(5) Whether Title VI claims can be brought against the individual Defendants as recipients of federal funding, who do not receive federal funding, or whether these claims can only be brought against The Regents;

(6) Whether Defendants were "deliberately indifferent" in their response to third-party harassment of Plaintiffs in violation of Title VI;

(7) Whether Defendants acted maliciously or with evil intent such that Plaintiffs are entitled to punitive damages.

***

 The Parties agree that no unusual substantive, procedural, or evidentiary issues are present in this case.

### d. **Parties, Evidence, etc.:**

The Plaintiff-Parties are Yitzchok Frankel, Joshua Ghayoum, Eden Shemuelian, and Dr. Kamran Shamsa.

The Defendant-Parties are The Regents of the University of California, a public corporation; Michael V. Drake, President of the University of California; Gene D. Block, former Chancellor, University of California, Los Angeles; Darnell Hunt, Interim Chancellor and Executive Vice-President and Provost; Michael Beck, Administrative Vice Chancellor; Monroe Gorden, Jr., Vice Chancellor; and Rick Braziel, Assistant Vice Chancellor, each in both his official and personal capacities.

The Parties do not anticipate the addition of any new parties at this time.

The Parties agree that the following are percipient witnesses, while reserving the right to add additional witnesses as discovery commences:

- Yitzchok Frankel

- Joshua Ghayoum

- Eden Shemuelian

- Dr. Kamran Shamsa

- Gene D. Block, former Chancellor, University of California, Los Angeles
- Darnell Hunt, Interim Chancellor & Executive Vice-Chancellor and Provost
- Michael Beck, Administrative Vice Chancellor
- Monroe Gorden, Jr., Vice Chancellor
- Rick Braziel, Assistant Vice Chancellor

***

Plaintiffs' Position

Plaintiffs identify the following additional witnesses:

- Members of The Regents of the University of California
- Michael V. Drake, President of the University of California
- Drake's eventual successor as President of the University of California
- Block's eventual successor as Chancellor of UCLA

Plaintiffs do not identify any further witnesses at this time, but they reserve the right to add additional witnesses as discovery commences, including but not limited to current and/or former UCLA students, faculty, and administrative officials, other observers of the encampments, non-UCLA community members affected by UCLA's exclusionary policies, and any witnesses identified in Defendants' initial disclosures, depositions, or responses to written discovery.

Plaintiffs identify the following key documents, while reserving the right to add additional documents as discovery commences: any and all documents concerning UCLA's or The Regents' policies governing time, place, and manner restrictions, anti-discrimination policies, and law enforcement policies (including but not limited to the Robinson-Edley Report); training materials on how to implement said policies; directives to security personnel concerning the encampments; communications discussing the various encampments and other incidents on campus; communications discussing antisemitic harassment experienced by students and faculty since October 7, 2023; reports documenting antisemitic incidents on campus (including but not limited to the Report on Antisemitism and Anti-Israeli Bias at UCLA); and any documents relating to damages, including settlements or prior judgments involving Defendants in civil rights cases.

<u>Defendants' Position</u>

Defendants dispute that Assistant Vice Chancellor Rick Braziel is a proper party to this case because he was not a UCLA employee until *after* the Royce Quad encampment was removed.

Defendants identify the following additional witnesses:

- Jasmine Rush, Dean of Students at UCLA

- Chandra Bhatnagar, Assistant Vice Chancellor for Civil Rights at UCLA

Defendants do not identify any further witnesses at this time, but they reserve the right to add additional witnesses as discovery commences, including but not limited to additional UCLA administrators with knowledge of UCLA's response to the Spring 2024 Royce Quad encampment, enforcement of student conduct policies, and UCLA's response to expressive activity since October 7, 2023, and any witnesses identified in Plaintiffs' initial disclosures, depositions, or responses to written discovery.

Defendants identify the following key documents, while reserving the right to add additional documents as discovery commences. Key documents will include correspondence among the individuals listed above; UCLA's and UC's policies and procedures related to expressive activities on campus and anti-discrimination; documents reflecting the decisions made by the named Defendants as applicable, in connection with the events at issue in this dispute; documents reflecting Plaintiffs' interactions with the Spring 2024 Royce Quad encampment and Plaintiffs' experiences on UCLA's campus since October 7, 2023, including their communications with others concerning expressive activity and related conduct, documents reflecting potential complaints about Plaintiffs' expressive activities and related conduct, and any and all documents relating to Plaintiffs' damages.

UC is a public corporation established by Article IX, Section 9 of the California Constitution. The UC system is comprised of ten campuses:

UC Berkeley, UC Davis, UC Irvine, UCLA, UC Merced, UC Riverside, UC San Diego, UC San Francisco, UC Santa Barbara, and UC Santa Cruz. The Regents of the University of California is the real party in interest in all suits against components of the UC system.

e. **Damages**:

Plaintiffs' Position

Plaintiffs contend that they are entitled to compensatory, punitive, and nominal damages. Damages for constitutional and statutory violations of civil rights can be difficult to quantify. The range of provable damages will depend on documents and information obtained in the discovery process, including information about prior settlements and judgments involving Defendants in civil rights cases.

Defendants' Position

Defendants contend that they have not been provided with any information indicating that Plaintiffs have suffered any cognizable harm warranting the recovery of compensatory or punitive damages.

f. **Insurance:**

Plaintiffs have no applicable insurance coverage.

The University is self-insured pursuant to Article IX, Section 9 of the California Constitution, which provides the University with broad discretion in its operations, including with respect to insurance. The University self-insures its operations through a single-parent captive insurance company – Fiat Lux Risk and Insurance Company – domiciled

in Washington D.C.  There is no reservation of rights asserted at this time.

Cal. Gov. Code § 825 governs the circumstances in which the University will defend or indemnify an employee for liability based on an act or omission within the course and scope of the employee's employment.

**g. <u>Motions:</u>**

The Parties do not expect to add other parties or claims, file amended pleadings, transfer venue, or file other similar motions.  The Parties will notify the Court promptly if this changes at any time.

**h. <u>Dispositive Motions:</u>**

<u>Plaintiffs' Position</u>

Plaintiffs believe all claims and requests for relief can be resolved on summary judgment, and plan to move accordingly.

<u>Defendants' Position</u>

Defendants anticipate filing a motion for judgment on the pleadings and/or a motion for summary judgment.  Defendants intend to argue that sovereign immunity precludes claims for damages against The Regents and the individual Defendants in their official capacities; qualified immunity bars the federal constitutional claims for damages against the individual Defendants in their personal capacities; state-law immunities bar the California-law claims; and Plaintiffs fail to state claims under Title VI.

\*\*\*

The Parties agree that the deadline to file motions for summary judgment will be January 5, 2026, the deadline to oppose such motions will be January 26, 2026, the deadline to reply will be February 9, 2026, and the last day to hear summary judgment motions will be February 23, 2026.

### i. **Manual for Complex Litigation:**

The Parties agree that none of the procedures from the Manual for Complex Litigation should be used in this matter.

### j. **Status of Discovery:**

Discovery has not yet commenced.  The Parties are aware of their obligation to begin conducting discovery before the holding of the scheduling conference.

### k. **Discovery Plan:**

The Parties do not believe any changes are needed to the content or timing of initial disclosures.  Initial disclosures will be exchanged no later than two weeks after the Rule 26(f) conference.

The Parties do not believe that discovery need be conducted in phases or be limited to specific issues.

Plaintiffs' Position

Plaintiffs believe that discovery is required on the following subjects: Defendants' knowledge and handling of antisemitic activity occurring on campus from October 7, 2023, to the present; Defendants' knowledge of

and participation in encampment activity; Defendants' interactions with encampment participants; Defendants' policies and procedures concerning handling antisemitism; Defendants' policies and procedures concerning anti-discrimination; and Defendants' policies and procedures concerning time, place, and manner.

Plaintiffs do not believe expert discovery is required in this case. Plaintiffs' legal claims hinge on factual questions about what various UCLA officials knew at various points after October 7, 2023. To answer the constitutional and statutory questions presented in this case, this Court need only apply those facts to straightforward legal questions.

<u>Defendants' Position</u>

Defendants anticipate taking fact discovery on topics that include: Plaintiffs' interactions with the Spring 2024 Royce Quad encampment, Plaintiffs' experiences on UCLA's campus since October 7, 2023, Plaintiffs' expressive activity and student complaints relating to Plaintiffs' conduct, and Plaintiffs' alleged injuries and the bases for their damages claims.

Defendants intend to take expert discovery in this case. Defendants intend to present, at a minimum, a law enforcement expert and a student affairs expert who can speak to the importance of de-escalation and the propriety of Defendants' actions in response to the Spring 2024 Royce Quad encampment.

***

The Parties agree that fact discovery will conclude by August 4, 2025. Defendants propose that expert discovery conclude by October 27, 2025. To the extent expert discovery is permitted, Plaintiffs do not object to Defendants' proposed date for the close of such discovery.

The Parties anticipate that discovery of their claims or defenses will involve some electronically stored information ("ESI"), and other documents stored in PDF or equivalent format. The Parties do not anticipate extensive discovery of native-format electronic files in this action but are conferring regarding an ESI protocol. To the extent any party believes items need to be produced in native format, the Parties agree they will cooperate to reduce the burden of production. The Parties further agree to produce standard ESI load files with single page tiff images, document level text files, and natives for unprintable file types, such as Excel and multimedia. Each document produced will be Bates labeled by the producing party. The Parties will further meet and confer regarding the search and review process(es) for ESI, including deduplication and the use of keyword searching.

The Parties agree that production of privileged or work-product protected documents, ESI, or other information, whether inadvertently or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any federal or state proceeding. The Parties agree to interpret this language to provide the maximum protection allowed by Fed. R. Evid. 502(d). When the disclosure of any information, document

or thing protected by privilege or work-product immunity is discovered by the disclosing party and brought to the attention of the receiving parties, the treatment of such material by the receiving parties shall be in accordance with Fed. R. Civ. P. 26(b)(5)(B).  Disclosure of such information, document or thing shall not by itself constitute a waiver by the disclosing party of any claims of privilege or work-product immunity. However, nothing herein restricts the right of the receiving parties to challenge the disclosing party's claim of privilege within a reasonable time after receiving notice of the claim of privilege.

The Parties do not believe any changes are needed to the number of interrogatories, requests for production, or requests for admission allowed under the Federal Rules of Civil Procedure.  The Parties agree, however, that the limit of 25 interrogatories shall apply per side.

Given the significant number of parties and other persons with potentially discoverable information (and the fact that Defendant Board of Regents has 19 appointed members), Plaintiffs believe that, in lieu of limiting depositions to ten as described in Federal Rule of Civil Procedure 30, the Parties should be entitled to take up to 120 hours of depositions, per side, including Rule 30(b)(6) witnesses but not including expert witnesses, with the deposition of any single witness limited to a maximum of 1 day of 7 hours. Though Defendants disagree with Plaintiffs' characterization of the number of parties and other persons

with potentially discoverable information, they agree to Plaintiffs' proposal.

Defendants wish to enter into a protective order due to confidentiality concerns and Defendants' obligations under the Family Educational Rights and Privacy Act and state privacy laws. The Parties are in the process of meeting and conferring regarding said order.

**l. Discovery Cut-off:**

The Parties agree that the final day for completion of fact discovery, including resolution of all discovery motions, should be August 4, 2025.

**m. Expert Discovery:**

As stated above, Plaintiffs do not believe that expert discovery is appropriate in this case. Defendants disagree and propose that the initial expert disclosure deadline will be September 8, 2025, the rebuttal expert disclosure deadline will be October 6, 2025, and the expert discovery cut-off will be October 27, 2025. To the extent expert discovery is permitted, Plaintiffs do not object to Defendants' proposed deadlines.

**n. Settlement Conference/Alternative Dispute Resolution ("ADR"):**

Plaintiffs' Position:

The Parties engaged in unsuccessful settlement discussions throughout the month of September 2024, which culminated in a 6-hour session before a private mediator on September 27, 2024. As a result, Plaintiffs do not believe that further settlement discussions are appropriate at this time. However, should this Court wish for a second

settlement process to be conducted, Plaintiffs would prefer to satisfy the ADR requirement through private mediation, which would occur no later than March 9, 2026.

Defendants' Position:

Defendants had hoped to resolve this matter through settlement and have engaged in robust discussions with Plaintiffs in an effort to do so. Defendants remain willing to continue discussions about the potential resolution of this matter at any time, whether through private mediation or with the assistance of a federal magistrate.

**o. Trial Estimate:**

Plaintiffs' Position:

Plaintiffs estimate that the trial will be a bench trial lasting seven days. The length of the trial is justified by the number of anticipated witnesses, as well as the voluminous number of exhibits that are anticipated to be introduced. Plaintiffs contemplate calling at least fifteen witnesses.

Defendants' Position:

Defendants reserve the right to a jury trial depending on the claims, if any, that survive summary judgment. Defendants anticipate calling approximately six witnesses.

**p. Trial Counsel:**

Plaintiffs anticipate that Eric C. Rassbach, Mark L. Rienzi, Laura Wolk Slavis, Jordan T. Varberg, and Amanda G. Dixon will try the case.

Defendants anticipate that Matthew Cowan, Meaghan VerGow, Anton Metlitsky, and Jennifer Sokoler will try the case.

**q. Independent Expert or Master:**

The Parties agree that the Court need not appoint a master or independent scientific expert.

**r. Schedule Worksheet:**

The Parties are aware that the Court ordinarily schedules trial to occur within 18 months of the filing of the case. The attached schedule worksheet reflects the Parties' belief that additional time is required both to take discovery and to prepare for trial in this matter.

Plaintiffs' Position

This case involves a total number of eleven parties, one of whom is a corporate party, The Regents of the University of California, which (as noted above) has nineteen appointed members. The issues are voluminous, covering at least Plaintiffs' fourteen counts in their complaint and their requested relief. Plaintiffs anticipate the need to engage in a significant amount of document collection to support these claims, including seeking document production from approximately nine defendants (to include multiple members of The Regents), and additional fact witnesses. The preliminary injunction motion alone contained over 650 pages of exhibits, and Plaintiffs anticipate the number to be significantly higher as a result of thorough and extensive discovery. For this reason, and due to the increased number of depositions anticipated

for this case, Plaintiffs anticipate requiring additional time to take discovery, to prepare for and have dispositive motions heard, and to adequately prepare for a lengthy trial. Those dates are reflected in the attached worksheet.

<u>Defendants' Position</u>

Defendants disagree that such substantial discovery is necessary in this case, and reserve the right to object to extensive and burdensome discovery requests. But given Plaintiffs' plans to take expansive discovery, Defendants are willing to agree to an extended case schedule.

**s. Other Issues:**

The Parties have not identified any other issues affecting the status or management of the case.

Dated: November 18, 2024

Respectfully submitted,

/s/ *Eric C. Rassbach*
Eric C. Rassbach (CA SBN 288041)
Mark L. Rienzi (DC Bar No. 494336)*
Laura Wolk Slavis (DC Bar No. 1643193)*
Jordan T. Varberg (DC Bar No. 90022889)*
Amanda G. Dixon (DC Bar No. 90021498)*
Reed M. Bartley (TX Bar No. 24125115)* ‡
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 tel. / 202-955-0090 fax
erassbach@becketlaw.org

Paul D. Clement (DC Bar No. 433215)*
Erin E. Murphy (DC Bar No. 995953)*
Matthew D. Rowen (CA SBN 292292)
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314

*Attorneys for Plaintiffs*

/s/ *Matthew R. Cowan*
Matthew R. Cowan (S.B. #281114)
mcowan@omm.com
O'Melveny & Myers LLP
400 South Hope Street, 19th Floor
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Anton Metlitsky*
ametlitsky@omm.com
Jennifer Sokoler*
jsokoler@omm.com
O'Melveny & Myers LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Facsimile: (211) 326-2061

Meaghan VerGow*
mvergow@omm.com
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Charles Robinson (S.B. #113197)
Norman Hamill (S.B. #154272)
Rhonda Goldstein (S.B. #250387)
The Regents of the University of California
1111 Franklin Street, Floor 8
Oakland, California 94607-5201
Telephone: (510) 987-9800
Facsimile: (510) 987-9757

*Attorneys for Defendants*

\* Admitted *pro hac vice.*

‡ Not admitted to the D.C. Bar; admitted only in Texas. Supervised by licensed D.C. Bar members.

## **SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-4.3.4, I hereby attest that the other signatory listed, on whose behalf the filing is submitted, concurs in the filing's content and has authorized the filing.


Dated: November 18, 2024        Respectfully submitted,

/s/ *Eric C. Rassbach*
Eric C. Rassbach
*Attorney for Plaintiffs Yitzchok Frankel; Joshua Ghayoum; Eden Shemuelian; and Dr. Kamran Shamsa*