MATTHEW R. COWAN (S.B. #281114)
mcowan@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

ANTON METLITSKY*
ametlitsky@omm.com
JENNIFER SOKOLER*
jsokoler@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

MEAGHAN VERGOW*
mvergow@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants*

*Admitted pro hac vice*

[*Counsel continued on next page*]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| Frankel, et al.,<br><br>                              Plaintiffs,<br><br>     v.<br><br>Regents of the University of California, et al.,<br><br>                              Defendants. | Case No. 2:24-CV-4702-MCS<br><br>**INDIVIDUAL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FEDERAL RULE 12(c) AND MOTION TO DISMISS UNDER FEDERAL RULE 12(h)(3)**<br><br>Judge:        Hon. Mark C. Scarsi<br>Courtroom: 7C<br>Hearing:     February 24, 2025, 9:00 AM |

1 | [*Counsel continued from previous page*]

2

3 | Charles Robinson (S.B. #113197)
Rhonda Goldstein (S.B. #250387)

4 | Norman Hamill (S.B. #154272)
The Regents of the University of California

5 | 1111 Franklin Street, Floor 8

6 | Oakland, California 94607-5201
Telephone:   (510) 987-9800

7 | Facsimile:    (510) 987-9757

8

9 | *Attorneys for Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IND. DEFS.' MEM. ISO MOT. JUDG.
PLEADINGS AND MOT. TO DISMISS
CASE NO. 2:24-CV-4702-MCS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................... 10

BACKGROUND ........................................................................................ 12

    I.     FACTUAL BACKGROUND .................................................. 12

           A.    UCLA Condemns and Responds to Antisemitic Conduct Throughout the 2023-2024 Academic Year ............................ 13

           B.    Protestors Establish an Unauthorized Encampment on the Royce Quad and Counter-Protestors Rally ............................... 14

           C.    UCLA Responds by Minimizing Safety Risks and Calling Law Enforcement to Remove the Encampment ...................... 14

           D.    UCLA Quells Subsequent Efforts to Establish Encampments ........................................................................... 15

    II.    PROCEDURAL HISTORY ..................................................... 16

LEGAL STANDARD ............................................................................... 17

ARGUMENT ............................................................................................ 18

    I.     THE ELEVENTH AMENDMENT PRECLUDES ALL DAMAGES CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES, EXCEPT THE TITLE VI CLAIM (COUNT VII) .......................... 18

    II.    QUALIFIED IMMUNITY BARS PLAINTIFFS' FEDERAL CONSTITUTIONAL CLAIMS FOR DAMAGES AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR PERSONAL CAPACITY (COUNTS I-VI, VIII-IX) ....................................... 18

           A.    Plaintiffs Fail to Plausibly Allege Constitutional Violations by Any Individual Defendant ............................... 19

                  1.    Plaintiffs Fail to Plausibly Allege That Any Individual Defendant Took Unconstitutional Action (Counts I-VI, VIII-IX) .................................................... 19

                  2.    Plaintiffs Further Fail to State an Equal Protection Claim Against the Individual Defendants (Count I) ...... 21

                  3.    Plaintiffs Further Fail to State a Free Exercise Claim Against the Individual Defendants (Counts III-VI) ........................................................................ 22

                  4.    Plaintiffs Further Fail to State a Free Speech Claim Against the Individual Defendants (Count II) ............... 23

# TABLE OF CONTENTS

Page

5.    Plaintiffs' Derivative Conspiracy and Failure-to-Prevent Conspiracy Claims Against the Individual Defendants Further Fail (Counts VIII-IX) .................... 24

6.    UCLA's Actions Were Narrowly Tailored to Further Promote Public Safety (Counts I-VI, VIII-IX) ................................................................. 25

B.    Plaintiffs Fail to Plausibly Allege That the Individual Defendants Violated Any "Clearly Established" Constitutional Right .............................................. 25

III.    PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE ANY STATE LAW CLAIMS (COUNTS X-XIV) .................................... 27

IV.    PLAINTIFFS CANNOT BRING A TITLE VI CLAIM AGAINST THE INDIVIDUAL DEFENDANTS (COUNT VII) ...... 28

V.    ASSISTANT VICE CHANCELLOR RICK BRAZIEL IS ENTITLED TO JUDGMENT FOR ADDITIONAL AND INDEPENDENT REASONS ............................................. 29

VI.    THE COURT MUST DISMISS PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES ............................................. 30

CONCLUSION ........................................................................ 31

# TABLE OF AUTHORITIES

**Page**

## CASES

*303 Creative LLC v. Elenis*,
  600 U.S. 570 (2023) ......................................................................................24

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ......................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................17, 21, 29

*Banks v. Albertsons Deal & Delivery*,
  2024 WL 3357635 (D. Nev. July 8, 2024)....................................................29

*Barnes v. Gorman*,
  536 U.S. 181 (2002) ......................................................................................30

*Belgau v. Inslee*,
  975 F.3d 940 (9th Cir. 2020).........................................................................19

*Blair v. Regents*,
  No. 24STCV27623 (Cal. Super. Ct.).............................................................26

*Bollfrass v. City of Phoenix*,
  2024 WL 3272921 (9th Cir. July 2, 2024) ...................................................21

*Buchanan v. City of Bolivar*,
  99 F.3d 1352, (6th Cir. 1996)........................................................................29

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011).......................................................................17

*Caldeira v. County of Kauai*,
  866 F.2d 1175 (9th Cir. 1989).......................................................................25

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*,
  508 U.S. 520 (1993) ......................................................................................22

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
  532 U.S. 424 (2001) ......................................................................................31

*Creer v. World Reserve Money Exch.*,
  2010 WL 11595852 (C.D. Cal. Nov. 23, 2010)............................................12

*Dang v. Cross*,
  422 F.3d 800 (9th Cir. 2005).........................................................................30

*Davis v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ......................................................................................20

# TABLE OF AUTHORITIES

**Page**

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
    489 U.S. 189 (1989) ...............................................................................21

*District of Columbia v. Wesby*,
    583 U.S. 48 (2018) .................................................................................26

*Est. of Nunis ex rel. Nunis v. City of Chula Vista*,
    676 F. Supp. 3d 867 (S.D. Cal. 2023) ..................................................28

*Feied v. Regents of the Univ. of Cal.*,
    188 F. App'x 559 (9th Cir. 2006) .........................................................18

*Felber v. Yudof*,
    851 F. Supp. 2d 1182 (N.D. Cal. 2011) ...............................................20

*Flint v. Dennison*,
    488 F.3d 816 (9th Cir. 2007) ................................................................18

*Fortson v. City of Los Angeles*,
    628 F. Supp. 3d 976 (C.D. Cal. 2022) ..................................................30

*Frazier v. City of Fresno*,
    2023 WL 4108322 (E.D. Cal. June 21, 2023) ......................................28

*Fulton v. City of Philadelphia*,
    593 U.S. 522 (2021) ..............................................................................23

*Gates v. Superior Ct.*,
    32 Cal. App. 4th 481 (1995) .................................................................27

*Hopson v. Alexander*,
    71 F.4th 692 (9th Cir. 2023) .................................................................26

*Interpipe Contracting, Inc. v. Becerra*,
    898 F.3d 879 (9th Cir. 2018) ................................................................12

*Katzberg v. Regents of Univ. of Cal.*,
    29 Cal. 4th 300 (2002) .........................................................................27

*Kennedy v. Bremerton Sch. Dist.*,
    597 U.S. 507 (2022) ..............................................................................22

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ................................................................22

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*,
    584 U.S. 617 (2018) ..............................................................................23

IND. DEFS.' MEM. ISO MOT. JUDG.
PLEADINGS AND MOT. TO DISMISS
CASE NO. 2:24-CV-4702-MCS

# TABLE OF AUTHORITIES

**Page**

*Meinecke v. City of Seattle,*
 99 F.4th 514 (9th Cir. 2024) ........................................................................25, 26

*Nixon v. Buck,*
 2019 WL 12377857 (C.D. Cal. Nov. 13, 2019) ...............................................25

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda,*
 730 F.3d 1111 (9th Cir. 2013) .........................................................................27

*Ogando v. Natal,*
 2023 WL 8191089 (N.D. Cal. Nov. 27, 2023) .................................................29

*Olson v. California,*
 104 F.4th 66 (9th Cir. 2024) ............................................................................28

*Patel v. Kent Sch. Dist.,*
 648 F.3d 965 (9th Cir. 2011) ...........................................................................19

*Pers. Adm'r of Mass. v. Feeney,*
 442 U.S. 256 (1979) .........................................................................................21

*Recchia v. City of L.A. Dep't of Animal Servs.,*
 889 F.3d 553 (9th Cir. 2018) ...........................................................................27

*Riley's Am. Heritage Farms v. Elsasser,*
 32 F.4th 707 (9th Cir. 2022) ............................................................................26

*Rosenberger v. Rector & Visitors of Univ. of Va.,*
 515 U.S. 819 (1995) .........................................................................................24

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.,*
 44 F.4th 867 (9th Cir. 2022) ......................................................................18, 19

*Sampson v. Cnty. of Los Angeles ex rel. L.A. Cnty. Dep't of Child. &
 Fam. Servs.,*
 974 F.3d 1012 (9th Cir. 2020) .........................................................................25

*Saroya v. Univ. of the Pac.,*
 503 F. Supp. 3d 986 (N.D. Cal. 2020) .............................................................12

*Shame on You Prods., Inc. v. Elizabeth Banks,*
 120 F. Supp. 3d 1123 (C.D. Cal. 2015) ...........................................................17

*Sherbert v. Verner,*
 374 U.S. 398 (1963) .........................................................................................20

*Shooter v. Arizona,*
 4 F.4th 955 (9th Cir. 2021) .........................................................................21, 22

# TABLE OF AUTHORITIES

**Page**

*Shotz v. City of Plantation*,
344 F.3d 1161 (11th Cir. 2003) .........................................................................29

*Smith v. Wade*,
461 U.S. 30 (1983) ...........................................................................................30

*St. Pierre v. Angelone*,
73 F. App'x 941 (9th Cir. 2003) ........................................................................29

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ...........................................................................17

*Swinton v. Potomac Corp.*,
270 F.3d 794 (9th Cir. 2001) .............................................................................31

*Tandon v. Newsom*,
593 U.S. 61 (2021) ...........................................................................................23

*Thomas v. Review Bd. of Ind. Emp. Sec. Div.*,
450 U.S. 707 (1981) .........................................................................................20

*Thompson v. Rahr*,
885 F.3d 582 (9th Cir. 2018) .............................................................................26

*Tingley v. Ferguson*,
47 F.4th 1055 (9th Cir. 2022) ............................................................................23

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
582 U.S. 449 (2017) .........................................................................................22

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966) .........................................................................................28

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .............................................................................12

*Wallisa v. City of Hesparia*,
369 F. Supp. 3d 990 (C.D. Cal. 2019) ...............................................................30

*Wentworth v. Cal. Connections Acad.*,
2022 WL 1427157 (S.D. Cal. May 5, 2022), *appeal dismissed*,
2023 WL 3866603 (9th Cir. Feb. 16, 2023) .......................................................29

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) ...........................................................................................18

*Williams-Yulee v. Fla. Bar*,
575 U.S. 433 (2015) .........................................................................................25

# TABLE OF AUTHORITIES

**Page**

*Wood v. City of San Diego*,
   678 F.3d 1075 (9th Cir. 2012).........................................................................17

*Zelig v. County of Los Angeles*,
   27 Cal. 4th 1112 (2002)...............................................................................28

## <u>STATUTES</u>

28 U.S.C. § 1367.........................................................................................28

42 U.S.C. § 1986.........................................................................................25

42 U.S.C. § 2000d.......................................................................................28

42 U.S.C. § 2000d-7....................................................................................18

Cal. Educ. Code § 210.3..............................................................................28

Cal. Educ. Code § 220.................................................................................28

Cal. Gov't Code § 820.2..............................................................................27

Cal. Gov't Code § 845.................................................................................27

## <u>RULES</u>

Fed. R. Civ. P. 12(c)...................................................................................17

Fed. R. Civ. P. 12(h)(3)..............................................................................17

# INTRODUCTION

There is no home for antisemitism at the University of California, Los Angeles (UCLA).  Administrators across the University of California ("UC" or "University") have worked tirelessly over the past year to maintain a safe and inclusive environment for the entire campus community, including Jewish students and faculty.  This motion is filed on behalf of the six administrators named as defendants in this action (the "Individual Defendants"), one of whom was not even employed by UC at the time of the alleged events, another who has since retired, and *all* of whom are protected by federal and state law immunities.[1]

As the Court knows, this lawsuit arises primarily from events in the spring of 2024, when students across the country created encampments to protest the war between Israel and Hamas.  When tents were erected at the UCLA campus on April 25, 2024, UCLA faced a volatile challenge.  The encampment in Royce Quad needed to be disbanded, but that had to be done safely.  Consistent with longstanding UC guidance, UCLA implemented a tiered approach:  First, it attempted de-escalation, while actively seeking to avoid violence.  When that approach proved untenable, it called law enforcement, leading to the arrest of more than 200 people and the end of the encampment on May 2, 2024.

Plaintiffs, three UCLA students and one UCLA faculty member, bring this action based principally on their belief that the Individual Defendants "affirmatively assisted" the protestors' discriminatory conduct.  First Amended Complaint ("FAC") ¶ 445.  Plaintiffs bring claims under the Equal Protection, Free Exercise, and Free Speech clauses, Title VI of the Civil Rights Act of 1964 ("Title VI"), and a host of related state constitutional and statutory laws.  But Plaintiffs fail to allege that *any of*

---

[1] The Individual Defendants are:  Michael V. Drake, President of the University of California; Gene D. Block, Chancellor, University of California, Los Angeles; Darnell Hunt, Executive Vice-President and Provost; Michael Beck, Administrative Vice Chancellor; Monroe Gorden, Jr., Vice Chancellor; and Rick Braziel, Assistance Vice Chancellor.  Chancellor Block resigned in July 2024.

*the Individual Defendants*—as opposed to the *protestors in the encampment*—intentionally denied them full access to campus.

While this Court has held that Plaintiffs' allegations warrant a preliminary injunction,[2] numerous doctrines shield government employees who have performed their duties based on a reasonable understanding of the applicable law—like the Individual Defendants—from becoming entangled in litigation that subjects them to substantial personal liability:

- Sovereign immunity precludes claims for damages against the Individual Defendants in their official capacity. (All counts except Count VII.)
- Qualified immunity bars the federal constitutional claims for damages against the Individual Defendants in their personal capacity. (Counts I-VI, VIII-IX.)
- State law immunities protect the Individual Defendants from liability based on California law. (Counts X-XIV.)
- Claims under Title VI can only be brought against the institutional defendant The Regents of the University of California ("The Regents"), not the Individual Defendants.
- Assistant Vice Chancellor Braziel is entitled to judgment on all claims because he was not employed by UC until after the Royce Quad encampment had been removed.
- Plaintiffs do not plausibly allege that they are entitled to punitive damages.

For all these reasons, and as explained in greater detail below, this Court should: (i) grant judgment on all claims for damages in favor of the Individual Defendants in their official capacities; (ii) grant judgment on all claims in favor of the Individual Defendants in their personal capacities; (iii) grant judgment on all

---

[2] Should the Court grant this motion, a preliminary injunction nearly identical to the injunction that the Court ordered on August 13, 2024, ECF 89, could remain in effect under Title VI.

claims in favor of Assistant Vice Chancellor Braziel; (iv) grant judgment on the Title VI claim in favor of the Individual Defendants in their personal and official capacities; and (v) at the very least, grant judgment for the Individual Defendants on Plaintiffs' claim for punitive damages.

## BACKGROUND

### I.    FACTUAL BACKGROUND[3]

UC rejects antisemitism and is committed to equal treatment of all "individuals on the basis of expression of race, color, ethnicity, gender, age, disability, religious beliefs, political preference, sexual orientation, gender identity, citizenship or national origin, among other personal characteristics." FAC ¶ 19 (incorporating by reference Ex. A).[4]    The University's policies prohibit discrimination based on protected traits. *Id.* ¶¶ 19, 66-67. As a public university, the University must also comply with the First Amendment. *See id.* ¶ 66. Thus, while the University has adopted restrictions that limit when, where, and how students may protest, *see id.* ¶¶ 68-69, it does not and cannot limit the content or the viewpoints expressed during on-campus protests, *see* Ex. B.

The past academic year put these time-honored principles to the test. On

---

[3] For the purposes of the present motion, the Individual Defendants assume as true the allegations in the FAC. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886 (9th Cir. 2018).

[4] In support of its Rule 12(c) motion, the Individual Defendants rely on Exhibits A-J. The Court may properly consider these exhibits because the FAC "incorporate[s] [them] by reference" and these documents are "integral" to the FAC because they "form[] the basis" of Plaintiff's claims. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Creer v. World Reserve Money Exch.*, 2010 WL 11595852, at *2 (C.D. Cal. Nov. 23, 2010) (incorporation rule applies to Rule 12(c) motions). In addition, the Court may take judicial notice of each of these exhibits as documents "readily available on [a university's] public website." *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 994 (N.D. Cal. 2020). All exhibits are attached to the Matthew R. Cowan Declaration. Unless otherwise stated, all emphasis is added, alterations and quotations omitted.

October 7, 2023, Hamas launched an unprecedented terrorist attack on Israel, FAC ¶ 74, a tragic event that sparked a rise in antisemitism across universities nationwide, *id.* ¶ 97, including UCLA, *id.* ¶¶ 76-77. This case arises from the experience of several Jewish students and a faculty member after that attack.

### A. UCLA Condemns and Responds to Antisemitic Conduct Throughout the 2023-2024 Academic Year

Following the October 7 attack, UCLA officials sought to curb antisemitism on campus. UCLA unequivocally condemned displays of anti-Jewish hostility on campus. FAC ¶ 84. In a campus-wide message in October 2023, Chancellor Block stated that while the "ongoing conflict in the Middle East" had "stirred very deep emotions in many of us," those emotional responses did not "give anyone in our community—or anyone visiting our campus—license to make our students, staff or faculty feel unsafe." *Id.* (incorporating by reference Ex. C). Chancellor Block affirmed that UCLA "unequivocally reject[s] bigotry and hate," including antisemitism, and promised that UCLA was engaged in "protect[ing] the safety and well-being of all Bruins." Ex. C.

Throughout the academic year, Chancellor Block reaffirmed UCLA's commitment to creating a safe learning environment for all students, pledging to "work against" antisemitism. FAC ¶ 90 (incorporating by reference Ex. D). For instance, Chancellor Block denounced "hateful behavior" and "despicable Antisemitic language" at a protest on November 8, 2023. *Id.* ¶ 89 (quoting Ex. D). While UCLA accepted that the First Amendment protects even hateful viewpoints, it also reaffirmed that it was "abhorrent and completely unacceptable," promising that it would "review[] the actions at the event" and hold accountable anyone found to have violated UCLA's code of conduct. Ex. D. Beyond "denounc[ing] bigotry," UCLA has also "actively work[ed] against it," including through "systemwide initiatives" to "address the current university climate." *Id.* While these efforts have not purged the campus of antisemitism, FAC ¶¶ 101-02, they lowered the temperature

for much of the year.

### B. Protestors Establish an Unauthorized Encampment on the Royce Quad and Counter-Protestors Rally

That changed in April 2024, when pro-Palestinian protestors around the country took a new tack: they developed "protest encampment[s]"—collections of tents—at the centers of college campuses.  FAC ¶ 107.  UCLA was no exception.  Early in the morning on April 25, protesters erected tents in Royce Quad at the center of UCLA's main campus.  *Id.* ¶¶ 4, 108.  Counter-protestors responded, establishing pro-Israel rallies directly opposite the encampment.  *See id.* ¶¶ 165, 186, 259.  At least two of the Plaintiffs participated in counter-protests.  *Id.* ¶ 259 (Frankel); *see id.* ¶ 421 (Shamsa).

### C. UCLA Responds by Minimizing Safety Risks and Calling Law Enforcement to Remove the Encampment

Upon the Royce Quad encampment's formation, UCLA immediately deemed it "unauthorized" and focused on safely removing it.  FAC ¶ 108.  Once it became clear that de-escalation was untenable, UCLA called law enforcement, who removed the encampment on May 2.  *Id.* ¶¶ 176, 191.

The FAC omits many details about UCLA's effort to respond to the Royce Quad encampment.  That information is catalogued in UCLA's opposition to Plaintiffs' preliminary injunction motion and supporting declarations, ECF 62, and Chancellor Block's congressional testimony, which the FAC incorporates by reference, *see* FAC ¶ 193 & n.56 (incorporating by reference Ex. E).  But even without that context, Plaintiffs' allegations reflect that UCLA sought to remove the encampment and minimize the risk of violent clashes with counter-protestors.  Plaintiffs allege that UCLA:

- Initially refrained from calling law enforcement, guided by concerns about the safety of students in the encampment and "the need to support the free expression rights of our community."  *Id.* ¶ 168 & n.35 (incorporating by

reference Ex. F).

- Permitted counter-protest activity to express opposing views. *Id.* ¶¶ 259, 268.
- Placed "metal barricades" around the encampment to prevent violence between protestors and counter-protestors. *Id.* ¶¶ 156, 264.
- Deployed "security teams," and "[s]afety personnel … around the encampment site," who in turn directed "students and faculty away from the encampment" and toward open pathways. *Id.* ¶¶ 157-58, 161, 163-64; *id.* ¶ 193 & n.56 (incorporating by reference Ex. E).
- Called on law enforcement to develop a "careful[]" plan to clear the encampment, "which included 'giv[ing] [the activists] several warnings' and 'offer[ing] the opportunity to leave peacefully with their belongings before officers enter[] the area.'" *Id.* ¶ 192.
- Attempted to get the protestors to leave Royce Quad voluntarily by entering the encampment "to negotiate" with them. *Id.* ¶ 139.
- Instructed law enforcement to remove the encampment on the morning of May 2. *Id.* ¶¶ 191-92.
- Moved classes to remote learning on May 2-3. *Id.* ¶ 190.
- Issued a statement that the encampment would "not go up again." *Id.* ¶ 108 & n.25 (incorporating by reference Ex. G.)

**D.    UCLA Quells Subsequent Efforts to Establish Encampments**

Since removing the Royce Quad encampment, UCLA has taken significant steps to prevent new encampments: (i) creating an "Office of Campus Safety" "tasked with overseeing UCLA PD and other departments," FAC ¶ 195; (ii) creating a formal advisory group to partner with the Office of Campus Safety, *id.* ¶ 195 n.58 (incorporating by reference Ex. H); and (iii) proactively moving classes and events online through May 10, *id.* ¶ 211.

As the FAC itself acknowledges, those efforts have succeeded. For example, on May 23, protestors attempted to occupy the Kerckhoff Patio, but dispersed after

law enforcement was called and administrators informed them that they would "face arrest and possible disciplinary action" if they remained.  *Id.* ¶ 215 & n.72 (incorporating by reference Ex. I).  And while the FAC contains allegations regarding more recent protest activity, there are no allegations that any of these incidents lasted more than a few hours or impeded Jewish students' or faculty's access to any portion of campus.  *See id.* ¶¶ 226-32; ECF 107 ¶ 232 (UCLA removed demonstration within hours).

## II.    PROCEDURAL HISTORY

Plaintiffs are two Jewish law students, one Jewish undergraduate student, and one Jewish faculty member at UCLA.  FAC ¶¶ 43-46.  The student-plaintiffs filed this lawsuit on June 5, 2024, against the Individual Defendants in their official and personal capacities and against The Regents asserting 13 causes of action: (i) 42 U.S.C. § 1983 claims for violation of the Equal Protection Clause, Free Speech Clause, and Free Exercise Clause (Counts I-V); (ii) derivative conspiracy claims under 42 U.S.C. §§ 1985 and 1986 (Counts VII-VIII); (iii) a discrimination claim under Title VI of the Civil Rights Act of 1964 (Count VI); and (iv) state law claims for related statutory and constitutional violations (Counts IX-XIII).  Compl. ¶¶ 32-38, 320-430.

Plaintiffs moved for a preliminary injunction on June 24.  *See* ECF 48.  UCLA opposed.  *See* ECF 62 at 14.  The Court granted the motion on August 13.  *See* ECF 89.  As relevant, the Court held that Plaintiffs had established a likelihood of success on their Free Exercise claim and had satisfied the other factors warranting a preliminary injunction, including standing.  *Id.* at 8-14.  The Court issued an injunction that, *inter alia*, prohibits UCLA from "offering any ordinarily available programs, activities, or campus areas to students if Defendants know the ordinary programs, activities, or campus areas are not fully and equally accessible to Jewish students."  *Id.* at 15.

On October 1, Defendants answered the complaint on behalf of UCLA and all

Individual Defendants. ECF 97. On October 4, counsel for both parties met and conferred about the Individual Defendants' forthcoming motion for judgment on the pleadings. Cowan Decl. ¶ 6. Plaintiffs advised that they would amend their complaint. *Id.*

On October 22, Plaintiffs filed the FAC, which added one plaintiff (the faculty member, Plaintiff Shamsa) and one count (Count V, an additional Free Exercise claim). The amendments to the complaint do not alter Plaintiffs' core factual allegations or legal theories.

On November 19, counsel for both parties met and conferred about this motion but the parties were unable to resolve any of the issues raised. Cowan Decl. ¶ 8.

## LEGAL STANDARD

Under Rule 12(h)(3), a complaint must be dismissed when the district court lacks subject matter jurisdiction over the suit, including when a defendant is protected by sovereign immunity. *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012). Under Rule 12(c), judgment on the pleadings is warranted when "the complaint's factual allegations, together with all reasonable inferences," do not "state a plausible claim for relief." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Rule 12(c) is functionally identical to Rule 12(b)(6)," *Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1145 n.127 (C.D. Cal. 2015), so while the Court must accept all well-pleaded facts as true, it need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), nor "conclusory allegations which are contradicted by documents referred to in the complaint," *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

**ARGUMENT**

**I.    THE ELEVENTH AMENDMENT PRECLUDES ALL DAMAGES CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES, EXCEPT THE TITLE VI CLAIM (COUNT VII)**

The Eleventh Amendment bars suits against government entities, like The Regents, which are "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989); *see also Feied v. Regents of the Univ. of Cal.*, 188 F. App'x 559, 561 (9th Cir. 2006) (collecting cases).[5]  Because "a suit against a state official in his or her official capacity is … [a] suit against the official's office," the Eleventh Amendment also shields government officials from suit in their official capacities. *Will*, 491 U.S. at 71 (suit against state official in official capacity "is no different from a suit against the State itself"); *accord Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).  The Court should dismiss on this basis the claims against the Individual Defendants other than the Title VI claim (which is premised on a limited waiver of sovereign immunity *by The Regents* but fails as to the Individual Defendants for the distinct reasons discussed *infra* at 28-29).[6]

**II.   QUALIFIED IMMUNITY BARS PLAINTIFFS' FEDERAL CONSTITUTIONAL CLAIMS FOR DAMAGES AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR PERSONAL CAPACITY (COUNTS I-VI, VIII-IX)**

Qualified immunity protects "government officials performing discretionary functions from liability for civil damages" unless they are "plainly incompetent" or "knowingly violate the law." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 886 (9th Cir. 2022); *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  To overcome qualified immunity, a plaintiff must plausibly allege that the government official violated a constitutional right that was clearly established at the time of the

---

[5] The Regents is therefore immune from all but the Title VI claim.  *See* ECF 107.

[6] Congress expressly required waiver of immunity as a condition for receiving federal funds.  *See* 42 U.S.C. § 2000d-7.

conduct at issue. *See Sabra*, 44 F.4th at 886. Plaintiffs cannot make either showing.

### A.  Plaintiffs Fail to Plausibly Allege Constitutional Violations by Any Individual Defendant

Even if every allegation in the FAC could be attributed to each Individual Defendant (and they cannot, *see infra* at 29-30), all Individual Defendants are entitled to qualified immunity because: (1) Plaintiffs have failed to allege that any Individual Defendant engaged in unconstitutional conduct; and (2) Plaintiffs' constitutional claims against the Individual Defendants suffer from additional defects.

### 1.  Plaintiffs Fail to Plausibly Allege That Any Individual Defendant Took Unconstitutional Action (Counts I-VI, VIII-IX)

Plaintiffs cannot satisfy the first step to overcoming qualified immunity—*i.e.*, stating a constitutional violation—because they fail to allege that *the Individual Defendants* (rather than private parties) engaged in unconstitutional conduct. *See Belgau v. Inslee*, 975 F.3d 940, 946 (9th Cir. 2020) (private conduct does not implicate Fourteenth Amendment). The crux of the FAC is that private parties in the Royce Quad encampment injured Plaintiffs and that the Individual Defendants should have intervened sooner by "preemptively" calling law enforcement. *See, e.g.*, FAC ¶¶ 11, 21, 170. But unlike Title VI, the Constitution does not extend to alleged failures to act. Under the Fourteenth Amendment, a "state is not liable for its omissions," even where state action is "necessary to secure life, liberty, or property interests." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).

In issuing a preliminary injunction, this Court suggested that UCLA engaged in state action—at least for purposes of the Free Exercise claim—by continuing to provide "access" to its campus for the protestors in the encampment, even as those protestors denied access to other students. ECF 89 at 11-12. But as Plaintiffs' counsel recognized, that is merely "the other side of the same coin" as an allegation that the University failed to immediately clear the encampment by force. *See* Ex. J at 32:23-33:2. And under the law, the Individual Defendants did not engage in state

1  action by failing to forcibly remove the protestors earlier than UCLA actually did.

2  *See Felber v. Yudof*, 851 F. Supp. 2d 1182, 1186 (N.D. Cal. 2011) (holding that "state

3  actors," including universities, "have no constitutional obligation to prevent private

4  actors from interfering with the constitutional rights of others").

5       The cases this Court cited are not to the contrary.  They stand for the

6  proposition that a State cannot "exclud[e] individuals from public benefits based on

7  their religious status."  ECF 89 at 12 (collecting cases).  For the reasons explained

8  below, *infra* at 22-23, the Individual Defendants did not exclude any individual

9  "based on their religious status," ECF 89 at 12.  According to the FAC itself, the

10 *protestors* did so, and those actions cannot be attributed to the Individual Defendants

11 simply because they did not immediately use physical force to remove the protestors.

12 There will always be some period—even if only hours—before law enforcement can

13 remove protestors, but the Individual Defendants did not provide the protestors an

14 affirmative "benefit" during that time.  Here, the Individual Defendants actively

15 sought to *end* the encampment—ultimately calling law enforcement, which led to the

16 arrest of more than 200 people.  *See supra* at 10.  This case is thus nothing like those

17 in which state officials affirmatively provided public benefits to some constituents

18 but not others.  *See Sherbert v. Verner*, 374 U.S. 398, 404 (1963) (denial of

19 unemployment benefits to Seventh-day Adventist violated Constitution); *Thomas v.*

20 *Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 709, 720 (1981) (similar).

21      Of course, that is not to say that under Title VI a university can stand idly by

22 when students face discrimination that effectively denies them access to an

23 educational benefit.  Title VI provides that a school that accepts federal funds can be

24 liable if its response to severe and pervasive discrimination perpetrated by its students

25 or faculty is "clearly unreasonable in light of the known circumstances."  *Davis v.*

26 *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).  But as explained below, a

27 Title VI claim may not be brought against individual administrators like the

28 Individual Defendants.  *See infra* at 28-29.  Likewise, a state "legislature [may]

IND. DEFS.' MEM. ISO MOT. JUDG.
PLEADINGS AND MOT. TO DISMISS
CASE NO. 2:24-CV-4702-MCS

impose such affirmative duties of care and protection upon its agents as its wishes." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989). This Court should not adopt a theory that would extend *constitutional* liability beyond statutory liability. At minimum, the Court's novel view of state-action doctrine was not clearly established before its preliminary-injunction decision, which independently entitles the Individual Defendants to qualified immunity. *See infra* at 25-27.

### 2.    Plaintiffs Further Fail to State an Equal Protection Claim Against the Individual Defendants (Count I)

Plaintiffs' Equal Protection claim against the Individual Defendants independently fails because Plaintiffs do not plausibly allege that any Individual Defendant took *intentionally discriminatory* action—action motivated by animus toward students' or faculty's Jewish ethnicity or religion. To state an Equal Protection claim, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate … based upon membership in a protected class." *Shooter v. Arizona*, 4 F.4th 955, 960 (9th Cir. 2021). Discriminatory intent "implies that the decisionmaker … selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Here, aside from a conclusory allegation, FAC ¶ 514, Plaintiffs nowhere *plausibly* allege that any Individual Defendant acted—or failed to act—"because of" Plaintiffs' Jewish status, *id.*; *see Iqbal*, 556 U.S. at 681 ("formulaic recitation of the elements of a constitutional discrimination claim" do not state a claim); *Bollfrass v. City of Phoenix*, 2024 WL 3272921, at *2 (9th Cir. July 2, 2024) (same). On the contrary, the FAC reflects that UCLA's leaders consistently condemned antisemitic conduct, made clear that antisemitism is "despicable," "abhorrent," and "completely unacceptable," Ex. D, and sought to make campus more welcoming for Jewish community members, *see supra* at 13-14. As the Court observed, "none of us thinks

UCLA wants to have Jewish students excluded." *See* Ex. J at 27:4-6.

Plaintiffs' allegations that the Individual Defendants could have (or should have) removed the encampment sooner do not demonstrate that they acted out of animus toward Jewish students or faculty. *See Shooter*, 4 F.4th at 960. Even if (with the benefit of hindsight) the University might have acted more quickly, the Individual Defendants involved in the decision to pursue de-escalation cannot plausibly be construed as intentionally discriminating against UCLA's Jewish students or faculty. Indeed, Plaintiffs accept that the response to the encampment complied with UC's "Robinson-Edley" guidance, *see* Ex. J at 27:18-19, a facially neutral policy that applies regardless of the viewpoints espoused by protestors. As the Ninth Circuit explained in *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001), a "facially neutral polic[y] of inaction" does not state an Equal Protection claim, "even if" the school's inaction has a "discriminatory *impact*" on a protected class. *Id.* at 687. Thus, even if, as Plaintiffs allege, the encampment had the *effect* of limiting access for some Jewish students or faculty, that would not state a claim under the Equal Protection Clause.

### 3. Plaintiffs Further Fail to State a Free Exercise Claim Against the Individual Defendants (Counts III-VI)

Plaintiffs' Free Exercise claims against the Individual Defendants fail, even setting aside the lack of state action, for much the same reason that their Equal Protection claim fails. The Free Exercise Clause subjects to strict scrutiny only government action that "target[s] the religious for special disabilities *based* on their religious status." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 458 (2017); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993). To proceed, Plaintiffs must therefore allege (i) an "official expression of hostility" or (ii) a policy that is "not neutral or generally applicable." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 & n.1 (2022). They do neither.

As noted above, the Individual Defendants engaged in no "official expressions

of hostility to religion," *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 584 U.S. 617, 639 (2018); the FAC reflects UCLA's repeated statements otherwise, *see supra* at 13-14. Nor do Plaintiffs allege the existence of policies that are not neutral or generally applicable. Plaintiffs, as explained, rely on the Individual Defendants' adherence to *neutral* policies and practices to protect campus safety, like the Robinson-Edley guidance, which apply regardless of any students' identity. *See supra at* 22. Nor does the FAC plead facts showing that the Individual Defendants moved faster to disband protests that impacted other protected groups. Plaintiffs thus have not alleged that the Individual Defendants "treat[ed] *any* comparable secular activity more favorably than religious exercise," *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam), and cannot plausibly state a Free Exercise claim.

The FAC attempts to overcome this deficiency by alleging a new claim (Count V) that the Individual Defendants did not apply a "generally applicable" policy because they exercised "broad discretion." FAC ¶¶ 482-93. That theory misunderstands the law. The cases that Plaintiffs cite stand for the proposition that a policy is not generally applicable when it contains a "formal mechanism for granting exceptions" that does not constrain a decisionmaker's discretion. *See Fulton v. City of Philadelphia*, 593 U.S. 522, 537 (2021). But Plaintiffs have not—and cannot— identify any such exception in relevant UC policies, including Robinson-Edley. *See id.*; *see also Tingley v. Ferguson*, 47 F.4th 1055, 1088 (9th Cir. 2022) (rejecting Free Exercise claim where challenged law did "not provide a formal and discretionary mechanism for individual exceptions"). Moreover, rather than excepting the encampment from its generally applicable policies, UCLA enforced them against the encampment, including by calling law enforcement, as the FAC acknowledges. *See supra* at 14-15.

### 4. Plaintiffs Further Fail to State a Free Speech Claim Against the Individual Defendants (Count II)

Plaintiffs' Free Speech claim fares no better. First, Plaintiffs' viewpoint

discrimination theory, FAC ¶¶ 453-57, fails because Plaintiffs do not allege that the Individual Defendants suppressed *any* "speech," much less speech that expressed a particular viewpoint or message. *Compare Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("[T]he government may not regulate speech based on its substantive content or the message it conveys."). Plaintiffs allege that the Individual Defendants temporarily failed to ensure their full access to campus areas, but they do not point to any speech that they were unable to express. Indeed, the University authorized counter-demonstrations near the encampment, in which at least several Plaintiffs participated. *Supra* at 14-15.

Second, Plaintiffs' compelled-speech claim, FAC ¶ 458, fails because Plaintiffs do not allege that the *Individual Defendants* compelled them to speak against their wishes. The First Amendment subjects to strict scrutiny government actions that "compel speech" that a person "does not wish to provide," by, for example, threat of "sanctions." *303 Creative LLC v. Elenis*, 600 U.S. 570, 588 (2023). Plaintiffs do not allege that the Individual Defendants engaged in any such compulsion. Rather, they allege that private parties (the protesters in Royce Quad) prohibited them from entering the encampment if they did not make certain statements and that UCLA security officers refrained from immediately intervening by force. But those allegations fall far short of suggesting that the *Individual Defendants* coerced or caused the private parties' conduct.

### 5. Plaintiffs' Derivative Conspiracy and Failure-to-Prevent Conspiracy Claims Against the Individual Defendants Further Fail (Counts VIII-IX)

Plaintiffs allege that the Individual Defendants conspired "for the purpose of depriving Plaintiffs of their constitutional rights" and "neglected" to prevent the conspiracy. FAC ¶¶ 508-24. Both claims fail for the same fundamental reason: "[42 U.S.C. §§] 1985(3) and 1986 claims are derivative of § 1983" claims. *Nixon v. Buck*, 2019 WL 12377857, at *6 (C.D. Cal. Nov. 13, 2019); *see Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) (the "absence of a section 1983

deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations"); 42 U.S.C. § 1986.  Accordingly, because Plaintiffs' § 1983 claims against the Individual Defendants fail, *see supra* at 18-24, their derivative claims "fail alongside" them. *Nixon*, 2019 WL 12377857, at *6.

### 6.    UCLA's Actions Were Narrowly Tailored to Further Promote Public Safety (Counts I-VI, VIII-IX)

Finally, Plaintiffs fail to state any constitutional claims because UCLA's response to the encampment was narrowly tailored to further a compelling government interest—promoting "public safety and security" on its campus. *See, e.g.*, *Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015); *Meinecke v. City of Seattle*, 99 F.4th 514, 525 (9th Cir. 2024) ("public safety and security are compelling interests"). Indeed, that is exactly why administrators tried to negotiate peacefully with protestors before calling law enforcement—they wanted to keep the peace. *See supra* at 14-15.  Accordingly, Plaintiffs fail to state any constitutional *violations* because the administrators' responses were at all times narrowly tailored to promote campus safety and security.

### B.    Plaintiffs Fail to Plausibly Allege That the Individual Defendants Violated Any "Clearly Established" Constitutional Right

Even if Plaintiffs could overcome the first step of the qualified immunity analysis, they fail at the second step.  To plausibly allege that the Individual Defendants violated a "clearly established" constitutional right, Plaintiffs must show that "every reasonable official would have understood" that the de-escalation approach that UCLA initially pursued violated the law "at the time" UCLA pursued it. *Sampson v. Cnty. of Los Angeles ex rel. L.A. Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1019 (9th Cir. 2020); *see Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 729 (9th Cir. 2022) ("[T]he right must be defined at a more specific level tied to the factual and legal context of a given case.").  This "demanding standard" requires that existing precedent "must have placed the [constitutional question]

beyond debate." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Plaintiffs' constitutional claims fail unless they show that "settled" precedent "clearly prohibited" the Individual Defendants' conduct in the "particular circumstances that he or she faced." *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023).

Plaintiffs cannot make that showing, because no precedent establishes that the *Individual Defendants'* conduct here violated the Constitution. There was no blueprint for how to respond to a protest encampment. As the FAC itself shows, UCLA administrators sought to minimize tension and disband the encampment, and should not be subject to individualized liability for their actions. They announced that the encampment was unauthorized, FAC ¶ 108; hired security to keep community members safe, *id.* ¶¶ 157-59; erected metal barricades to prevent the encampment from expanding, *id.* ¶ 156; and ultimately called law enforcement, *id.* ¶¶ 186-87. What is more, these decisions arose in the context where qualified immunity applies most forcefully: "tense, uncertain, and rapidly evolving" situations. *Thompson v. Rahr*, 885 F.3d 582, 590 (9th Cir. 2018); *see also Meinecke*, 99 F.4th at 523 (recognizing "logistical difficulties of handling" a "dynamic situation" like a heated protest). Indeed, a hasty disbandment order could expose UCLA to liability for violating protestors' rights. *See* Complaint, *Blair v. Regents*, No. 24STCV27623 (Cal. Super. Ct.) (alleging disbandment of Royce Quad encampment violated *the protestors'* "core First Amendment-protected freedoms").

Certainly, Plaintiffs cite no case where university administrators were subject to Section 1983 liability in these *particular* circumstances. Yet that is what the Supreme Court requires to overcome qualified immunity—"settled" precedent that "clearly prohibited" the conduct in the "particular circumstances" of this case. *Hopson*, 71 F.4th at 697. The Court should dismiss the constitutional claims against the Individual Defendants on qualified immunity grounds.

### III.   PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE ANY STATE LAW CLAIMS (COUNTS X-XIV)

Immunities established by California law protect the Individual Defendants from Plaintiffs' claims under the Education Code, Ralph Act, and Bane Act.[7]  *See Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1126 (9th Cir. 2013) (immunity provisions of California Tort Claims Act "prevail over" statutes "imposing liability").  Thus, the state law claims against the Individual Defendants also fail.

*First*, Section 820.2 of the California Government Code insulates public employees from state law liability based on discretionary acts.  *See Recchia v. City of L.A. Dep't of Animal Servs*., 889 F.3d 553, 563 (9th Cir. 2018) ("Discretionary immunity applies to shield a California public employee … from liability for state law violations.").  A "discretionary" decision is one that requires employees to "consciously balance[] risks and advantages" of different alternatives. *Id*. Under this provision, even "lousy decisions in which [a] worker abuses his or her discretion" [is] entitled to immunity.  *Id*.  Plaintiffs themselves allege that the Individual Defendants "exercised broad discretion in the administration of campus security including in addressing issues of campus access."  FAC ¶ 485; *see also id.* ¶¶ 486-88.  The protection afforded by Section 820.2 therefore applies.

*Second*, Section 845 of the California Government Code protects public employees from liability for alleged "failure[s] to provide sufficient police service," even when the employees allegedly "engaged in [the] discriminatory deployment" of police services.  *Gates v. Superior Ct.*, 32 Cal. App. 4th 481, 503 (1995); *Zelig v. County of Los Angeles*, 27 Cal. 4th 1112 (2002).  Because the crux of the FAC is that

---

[7] Apart from the Bane Act, there is no independent cause of action for damages for violations of the California Equal Protection and Free Exercise provisions.  *See Katzberg v. Regents of Univ. of Cal*., 29 Cal. 4th 300, 303 (2002) (describing framework for when "action for money damages [based on] an alleged violation of a provision of the California Constitution" is available).

UCLA delayed too long before calling law enforcement to remove the Royce Quad encampment, Section 845 applies and precludes Plaintiffs' state law claims.[8]

In any event, Plaintiffs have failed to plausibly allege these state law claims. Plaintiffs' California Equal Protection and Free Exercise provisions are "substantially the same" as their federal corollaries, and fail for the same reasons. *See supra* at 21-23; *see Olson v. California*, 104 F.4th 66, 76 (9th Cir. 2024) (addressing federal and California Equal Protection claims together). And Plaintiffs cannot bring claims under (i) California Education Code § 220 because that statute applies only to primary and secondary schools, Cal. Educ. Code § 220; *id.* § 210.3 (defining "educational institution" as primary or secondary school); or (ii) the Ralph and Bane Acts, both of which require Plaintiffs to allege plausibly that the Individual Defendants intentionally discriminated, *Est. of Nunis ex rel. Nunis v. City of Chula Vista*, 676 F. Supp. 3d 867, 886 (S.D. Cal. 2023) (Ralph Act); *Frazier v. City of Fresno*, 2023 WL 4108322, at *37 (E.D. Cal. June 21, 2023) (Bane Act); *see supra* at 21-22. Plaintiffs' state law claims thus fail from the start.

## IV. PLAINTIFFS CANNOT BRING A TITLE VI CLAIM AGAINST THE INDIVIDUAL DEFENDANTS (COUNT VII)

The Court must grant judgment to the Individual Defendants on the Title VI claim because there is no cause of action to sue university administrators under that statute. Title VI prohibits discrimination by "program[s]" and "activiti[es]" that receive federal funding. 42 U.S.C. § 2000d (prohibiting "discrimination under any program or activity receiving Federal financial assistance"). Individual administrators, however, are neither "programs" nor "activities." Thus, regardless of whether the university for which they work receives federal funds, *individuals* have no obligations arising directly under Title VI. Here, then, because "the Individual

---

[8] If the Court dismisses the federal claims but concludes that any state law claim survives, it should decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Defendants are not proper defendants for a Title VI claim," the Title VI claim against them "must be dismissed." *Wentworth v. Cal. Connections Acad.*, 2022 WL 1427157, at *3 (S.D. Cal. May 5, 2022), *appeal dismissed*, 2023 WL 3866603 (9th Cir. Feb. 16, 2023) ("Title VI actions must be brought against an entity, not an individual."); *accord Banks v. Albertsons Deal & Delivery*, 2024 WL 3357635, at *3 (D. Nev. July 8, 2024); *Ogando v. Natal*, 2023 WL 8191089, at *7 (N.D. Cal. Nov. 27, 2023).[9]

## V.    ASSISTANT VICE CHANCELLOR RICK BRAZIEL IS ENTITLED TO JUDGMENT FOR ADDITIONAL AND INDEPENDENT REASONS

Judgment on all claims should be granted to Assistant Vice Chancellor Rick Braziel because Mr. Braziel was not even a UCLA employee until *after* the Royce Quad encampment was removed.  *See* FAC ¶¶ 4, 191 (encampment disbanded on May 2); Ex. H (Braziel hired on May 5).  Thus, Mr. Braziel cannot be liable based on Plaintiffs' allegations concerning UCLA's response to the Royce Quad encampment.  *See Iqbal*, 556 U.S. at 676 (plaintiffs must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *St. Pierre v. Angelone*, 73 F. App'x 941, 943 (9th Cir. 2003) (affirming judgment in favor of official who "was not employed … during most of the relevant period").  And Plaintiffs have not (and cannot) plead any claims based on UCLA's response to protest activity since that time.

Indeed, the Court has already held that protests that occurred after the Royce Quad encampment did *not* result in "religious-belief-based exclusion."  ECF 89 at 8-9; *see also* Ex. J at 36:3-22 (agreeing that UCLA's subsequent actions to prevent protestors from occupying campus complied with the law); *id.* at 25:15-23 (similar).  There is thus no basis to hold Assistant Vice Chancellor Braziel—who was not

---

[9] *See also Shotz v. City of Plantation*, 344 F.3d 1161 (11th Cir. 2003); *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1357 (6th Cir. 1996).

employed during the Royce Quad encampment—liable at all.[10]

## VI.    THE COURT MUST DISMISS PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES

Finally, this Court should dismiss Plaintiffs' demand for punitive damages against all the Individual Defendants.  As explained above,  the only cause of action that does not require Plaintiffs to plead that individual UCLA administrators intentionally discriminated against Jewish students—and, thus, the only claim hypothetically available—arises under Title VI.  *See* Parts II-V.  But punitive damages are unavailable for Title VI claims.  *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).  So as a matter of law, Plaintiffs have no path to punitive damages.

Even if the Court permits Plaintiffs to proceed on constitutional and state law claims that *theoretically* allow punitive damages, such damages are legally unavailable.  For one thing, the immunities described above prohibit *any* damages liability against the Individual Defendants.  *See supra* at 18-28.  But even if Plaintiffs could overcome those immunities, Plaintiffs do not plausibly allege that the Individual Defendants were "motivated by evil motive or intent" or acted with "reckless or callous indifference" to Plaintiffs' rights.  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Cases that meet that standard typically involve claims for excessive force, unlawful arrest, or police brutality.  *See, e.g.*, *Dang v. Cross*, 422 F.3d 800, 803 (9th Cir. 2005) (officer struck plaintiff in groin and face and placed him in chokehold, causing him to lose consciousness and be hospitalized); *Fortson v. City of Los Angeles*, 628 F. Supp. 3d 976, 995 (C.D. Cal. 2022) (officer hit protesting plaintiff with car); *Wallisa v. City of Hesparia*, 369 F. Supp. 3d 990, 1021 (C.D. Cal. 2019)

---

[10] The FAC includes allegations regarding more recent protest activity that occurred in October 2024.  FAC ¶¶ 226-32.  But UCLA disbanded those protests within hours, so any allegation that UCLA's response violated the Constitution is implausible.  *See* ECF 107 ¶ 232 (UCLA removed October 2024 demonstration within hours); Ex. J at 25:15-23 (agreeing that disbanding protests within "24 hours" would satisfy Constitution).

(officers repeatedly tased arrestee and struck his face, head, and back; arrestee later died). Plaintiffs' allegations come nowhere close to establishing that any Individual Defendant acted with analogous malice. To the contrary, the only concrete actions Plaintiffs allege are the Individual Defendants' attempts to *condemn* antisemitism and to protect the safety of the entire UCLA community, including Jewish students and faculty. *See supra* at 13-14; Ex. J at 27:4-6 (finding it "obvious" that UCLA did not "want[] to have Jewish students excluded" from campus).

Moreover, punitive damages would serve no deterrent purpose because Defendants have already enacted significant changes that have prevented efforts to rebuild an encampment. *See Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001) (punitive damages intended "to deter … future occurrence" of unlawful conduct); *see supra* at 14-16. Where a defendant voluntarily takes "remedial" action to prevent future violations, it weighs against punitive damages. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 814 (9th Cir. 2001). Accordingly, if any portion of claims against the Individual Defendants survives, the Court should narrow the case by dismissing Plaintiffs' demand for punitive damages.

## CONCLUSION

The Court should (i) grant judgment on all claims for damages in favor of the Individual Defendants in their official capacities; (ii) grant judgment on all claims in favor of the Individual Defendants in their personal capacities; (iii) grant judgment on all claims against Assistant Vice Chancellor Braziel; and (iv) grant judgment on the Title VI claim in favor of the Individual Defendants in their personal and official capacities. In the alternative, the Court should, at a minimum, grant the Individual Defendants judgment with respect to Plaintiffs' request for punitive damages.

1    Dated:  November 26, 2024          Respectfully submitted,

2                                       By:     /s/ Matthew R. Cowan

3                                               MATTHEW R. COWAN
                                                *Attorney for Defendants Michael V.*
4                                               *Drake; Gene D. Block; Darnell Hunt;*
                                                *Michael Beck; Monroe Gorden, Jr.;*
5                                               *and Rick Braziel*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,951 words, which complies with the word limit of L.R. 11-6.1.

Dated:  November 26, 2024          Respectfully submitted,

By:    */s/ Matthew R. Cowan*
        MATTHEW R. COWAN
        *Attorney for Defendants Michael V. Drake; Gene D. Block; Darnell Hunt; Michael Beck; Monroe Gorden, Jr.; and Rick Braziel*

IND. DEFS.' MEM. ISO MOT. JUDG.
PLEADINGS AND MOT. TO DISMISS
CASE NO. 2:24-CV-4702-MCS