MAC WARNER
Deputy Assistant Attorney General
Civil Rights Division
SHAHEENA A. SIMONS, Chief (Cal. Bar No. 225520)
JONATHAN D. NEWTON, Deputy Chief
PETER W. BEAUCHAMP, Senior Trial Attorney
LAURA C. TAYLOE, Senior Trial Attorney
U.S. Department of Justice
Civil Rights Division
Educational Opportunities Section
150 M Street, NE
Washington, D.C. 20002
Telephone: 202-746-5298
Email: Jonathan.Newton@usdoj.gov | Peter.Beauchamp@usdoj.gov

JOSEPH T. MCNALLY
Acting United States Attorney
RICHARD M. PARK
Acting Executive Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
KATHERINE M. HIKIDA (Cal. Bar No. 153268)
Assistant United States Attorney
Acting Chief, Civil Rights Section, Civil Division
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: 213-894-2285
Facsimile: 213-894-7819
E-mail: katherine.hikida@usdoj.gov

*Attorneys for United States of America*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION – LOS ANGELES**

YITZCHOK FRANKEL, et al.,

Plaintiffs,

v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

Defendants.

Case No. 2:24-cv-04702-MCS

**STATEMENT OF INTEREST OF UNITED STATES OF AMERICA**

Hearing Date: March 31, 2025
Time: 9:00 AM
Courtroom: 7C

Honorable Mark C. Scarsi
United States District Judge

# TABLE OF CONTENTS

Page

I. INTEREST OF THE UNITED STATES ..... 1

II. BACKGROUND ..... 3

III. ARGUMENT ..... 5

1. Plaintiffs are permitted to bring claims under Title VI against Individual Defendants in their official capacities ..... 5

2. Plaintiffs' FAC sufficiently alleges the intent element of an Equal Protection Clause claim against Individual Defendants ..... 9

IV. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Al-Rifai v. Willows Unified Sch. Dist.*, 469 F. App'x 647 (9th Cir. 2012) .......... 11

*Banks v. Albertsons Deal & Delivery, No. 2:23-CV-01629-GMN-DJA*, 2024 WL 3357635 (D. Nev. July 8, 2024) .......... 8

*Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177 (9th Cir. 2012) .......... 6

*Braunstein v. Arizona, 2:06-CV-02726 JWS*, 2008 WL 11447902 (D. Ariz. 2008) .......... 6

*Buchanan v. City of Bolivar*, 99 F.3d 1352 (6th Cir. 1996) .......... 8

*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999) .......... 11, 12

*Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 84 Cal. Rptr. 3d 285 (2008) .......... 11

*Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130 (9th Cir. 2003) .......... 11, 12

*Gratz v. Bollinger* 539 U.S. 244, n.23 (2003) .......... 9, 10

*Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928 (D. Idaho 2014) .......... 9

*Kentucky v. Graham*, 473 U.S. 159 (1985) .......... 6

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) .......... 7

*Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978) .......... 6

*Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022 (9th Cir. 1998) .......... 12

*Mosavi v. Mt. San Antonio Coll.*, 805 F. App'x 502 (9th Cir. 2020) .......... 11

*Mosavi v. Mt. San Antonio Coll., No. CV 15-4147-MWF* (AFMX), 2018 WL 6016939 (C.D. Cal. June 1, 2018) .......... 11

*Mountain West Holding Co. v. Montana*, 691 F. App'x 326 & n.1 (9th Cir. 2017) .......... 7

*Ogando v. Natal, No. 23-CV-02221-JSC*, 2023 WL 8191089 (N.D. Cal. Nov. 27, 2023) .......... 9

*Papasan v. Allain*, 478 U.S. 265 (1986) ........ 7

*Riley's American Heritage Farms v. Elsasser*, 32 F.4th 707 (9th Cir. 2022) ........ 7

*Rios-Diaz v. Butler, No. CV-13-77-BU-DLC-CSO*, 2014 WL 12591682 (D. Mont. Apr. 1, 2014) ........ 5

*Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987) ........ 3

*Shooter v. Arizona*, 4 F.4th 955 (9th Cir. 2021) ........ 10

*Shotz v. City of Plantation*, 344 F.3d 1161 (11th Cir. 2003) ........ 8

*T.M. ex rel. Benson v. San Francisco Unified Sch. Dist., No. C 09-01463 CW*, 2010 WL 291828 (N.D. Cal. Jan. 19, 2010) ........ 9

*Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253 (6th Cir. 2000) ........ 12

*Wood v. Yordy* 753 F.3d 899 (9th Cir. 2014) ........ 7

*Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655 (2d Cir. 2012) ........ 11

**Statutes**

28 U.S.C. § 517 ........ 1

42 U.S.C. § 1983 ........ 6

42 U.S.C. § 1985(6) ........ 4

42 U.S.C. § 1986 ........ 4

42 U.S.C. § 1988 ........ 6

42 U.S.C. § 2000c-6 ........ 2

42 U.S.C. § 2000d ........ 2, 5, 8

42 U.S.C. § 2000d-4a(1)(A) ........ 6

42 U.S.C. § 2000d-4a(2)(A) ........ 6

42 U.S.C. § 2000d-7 ........ 9

42 U.S.C. § 2000h-2 ........ 2

**Regulations**

28 C.F.R. § 42.108 .......... 2
34 C.F.R. § 100.13(g)(1)(i) .......... 6
34 C.F.R. § 100.13(g)(2)(i) .......... 6
45 Fed. Reg. 72995 (Nov. 2, 1980) .......... 2
90 Fed. Reg. 8847 (Jan. 29, 2025) .......... 3

**Rules**

Federal Rule of Civil Procedure 12(c) .......... 1, 3, 4, 13
Rule 12(h)(3) .......... passim

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States."[1] Individual defendants Michael V. Drake, *et al.* (Individual Defendants), administrators of the University of California and the University of California, Los Angeles (UCLA or University), have filed motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and to dismiss Plaintiffs' First Amended Complaint (FAC) for lack of subject matter jurisdiction under Rule 12(h)(3). (Defs.' Mot. J. Plds, ECF No. 108.)

For the reasons discussed below, the United States opposes Individual Defendants' motions on the following bases: (1) Plaintiffs are permitted to bring claims under Title VI of the Civil Rights Act of 1964 (Title VI) against Individual Defendants in their official capacities, and (2) Plaintiffs sufficiently allege the intent element of an Equal Protection Clause claim against Individual Defendants. The United States takes no position on Individual Defendants' other bases for moving for judgment on the pleadings and to dismiss the FAC.[2]

## I. INTEREST OF THE UNITED STATES

As this Court already found on August 13, 2024, when it ordered a preliminary injunction against the Defendants: "In the year 2024, in the United States of America, in the State of California, in the City of Los Angeles, Jewish students were excluded from portions of the UCLA campus because they refused to denounce their faith. This fact is so unimaginable and so abhorrent to our constitutional guarantee of religious freedom that it bears repeating[.] UCLA does not dispute this." (Prelim. Inj., ECF No. 89 at 2:2–

---

[1] The United States previously informed counsel for Plaintiffs and Individual Defendants that it intended to file this statement of interest. Counsel does not oppose the United States filing this statement of interest, subject to their ability to respond to it prior to the Court's March 31, 2025, hearing on the subject motions.

[2] The Educational Opportunities Section of the Civil Rights Division of the Department of Justice does not have jurisdiction to enforce most of the Plaintiffs' claims, including the Free Exercise Clause of the First Amendment.

6.) Even though UCLA may not dispute that the antisemitic campus environment at UCLA last year was "unimaginable" and "abhorrent," the Individual Defendants moved to dismiss this action to evade liability for what happened on the campus that they are supposed to lead and protect.

The United States has a significant interest in the proper application of federal laws that ensure equal access to educational opportunities and facilities. The Civil Rights Act of 1964 authorizes the Attorney General to address certain types of complaints alleging violation of the Equal Protection Clause in public K-12 schools, colleges, and universities. 42 U.S.C. § 2000c-6; *see also* 42 U.S.C. § 2000h-2 (authorizing the Attorney General to intervene in actions "seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin"). The Department of Justice also enforces Title VI with respect to recipients of Department of Justice funding. Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Attorney General is authorized to bring Title VI civil actions when procedural requirements are met and is responsible for ensuring consistent enforcement of Title VI across all federal agencies. *See* 28 C.F.R. § 42.108; Exec. Order No. 12,250, 45 Fed. Reg. 72995 (Nov. 2, 1980). The United States, therefore, has a strong interest in ensuring the proper application of Title VI, particularly when the Court has already found that in 2024 on UCLA's campus "Jewish students were excluded from portions of the UCLA campus because they refused to denounce their faith." (Prelim. Inj., ECF No. 89 at 2:2–6.) The Court is correct; this fact is "so unimaginable and so abhorrent . . . that it bears repeating." (*Id.*)

Additionally, as described in the White House's Executive Order on Additional Measures to Combat Anti-Semitism, it is the policy of the United States to combat antisemitism vigorously, using all available and appropriate legal tools to prosecute,

remove, or otherwise hold to account the perpetrators of unlawful antisemitic harassment and violence.[3]

The United States' federal civil rights enforcement authority and interests are implicated by three specific legal issues raised by Individual Defendants in their Rule 12(c) and Rule 12(h)(3) motions: (1) whether college and university administrators may be sued in their official capacities for alleged violations of Title VI, and (2) the intent element of a sufficiently pleaded Equal Protection Clause claim.

## II. BACKGROUND

In their first amended complaint (FAC, ECF No. 101)[4] filed on October 22, 2024, Plaintiffs allege that between April and June of 2024, in the wake of the October 7, 2023, Hamas attack against Israel, the Individual Defendants and defendant Regents of the University of California (Regents) (together, Defendants) knowingly acted in concert with or allowed third parties, as part of a protest encampment, to deprive students at UCLA of access to portions of campus on the basis of their Jewish faith and/or national origin.[5] (*Id.* ¶ 513.) Plaintiffs specifically allege that "[w]ith the knowledge and acquiescence of UCLA officials, . . . activists enforced what was effectively a 'Jew Exclusion Zone,' segregating Jewish students and faculty and preventing them from accessing the heart of campus, including classroom buildings and the main undergraduate library." (*Id.* ¶ 6.)

Plaintiffs support their claims by pointing to the findings of the University's Task Force to Combat Antisemitism and Anti-Israeli Bias at UCLA. (*See id.* ¶ 28 (referencing *Antisemitism and Anti-Israeli Bias at UCLA*, The Task Force to Combat Antisemitism

[3] Exec. Order No. 14,188, Additional Measures to Combat Anti-Semitism, 90 Fed. Reg. 8847 (Jan. 29, 2025).

[4] The FAC added a faculty member plaintiff and an additional Free Exercise Clause claim.

[5] Paragraph 503 of the First Amended Complaint (FAC) also notes that the Supreme Court has considered discrimination against Jews to be discrimination based on race, citing *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 616 (1987).

and Anti-Israeli Bias at UCLA, Oct. 16, 2024, *available at* https://antisemitismreport.org (*Task Force Report*)).) UCLA's task force found that "students wearing a Star of David or a kippah, or those refusing to denounce their Zionism . . ., were physically blocked by the protesters' phalanxes from entering or passing through" the campus quad on which the encampment was based, and from accessing the library. (*Task Force Report* at 53-54.) The task force also found that until it was cleared on April 30, 2024, "campus leadership allowed the encampment and related denial of campus access to continue." (*Id.* at 60.) Based on these allegations, Plaintiffs make claims against Defendants under: (1) the Equal Protection Clause, (2) the Free Speech Clause, (3) the Free Exercise Clause, (4) Title VI, (5) 42 U.S.C. § 1985 (conspiracy), (6) 42 U.S.C. § 1986 (failure to prevent conspiracy), and (7) California state laws. (*Id.* ¶¶ 441-50, 451-63, 464-71, 471-81, 482-93, 494-99, 500-07, 508-17, 518-25, 526-67.)

On June 24, 2024, Plaintiffs filed a motion for preliminary injunction against Defendants. (ECF No. 48.) On August 13, 2024, the Court issued the requested preliminary injunction against Defendants. (Prelim. Inj., ECF No. 89.) The Court found that "Jewish students were excluded from portions of the UCLA campus because they refused to denounce their faith," and that the protest encampment "led UCLA to effectively make certain of its programs, activities, and campus areas available to other students when UCLA knew that some Jewish students, including Plaintiffs, were excluded based [on] their genuinely held religious beliefs." (*Id.* at 2:2–3, 5:8–11.) The preliminary injunction prohibits Defendants from, *inter alia*, "offering any ordinarily available programs, activities, or campus areas to students if Defendants know the ordinarily available programs, activities, or campus areas are not fully and equally accessible to Jewish students." (*Id.* at 15:21–23.)

Individual Defendants filed their motions for judgment on the pleadings under Rule 12(c) and to dismiss for lack of subject matter jurisdiction under Rule 12(h)(3) on November 26, 2024. (Defs.' Mot. J. Plds) Individual Defendants move to dismiss Plaintiffs' federal law claims on several bases: (1) the Eleventh Amendment bars

damages claims against them in their official capacities, (2) they are entitled to qualified immunity on the federal constitutional claims made against them in their individual capacities, (3) the FAC fails to plausibly allege that they took any unconstitutional state action, (4) the FAC fails to state an Equal Protection Clause claim, (5) the FAC fails to state a Free Exercise Clause claim, (6) the FAC fails to state a Free Speech Clause claim, (7) the FAC fails to state a conspiracy and failure-to-prevent claim, (8) there is no cause of action to sue university administrators under Title VI, and (9) one of the Individual Defendants is entitled to judgment because they began their employment at UCLA after the University disbanded the protest encampment on May 2, 2024. (*See generally* Defs.' Mem., ECF No. 108-1.)

## III. ARGUMENT

Plaintiffs' Title VI and Equal Protection Clause claims in the FAC are sufficient to defeat Individual Defendants' motions for judgment on the pleadings and to dismiss insofar that: (1) Plaintiffs are permitted to bring claims under Title VI against Individual Defendants in their official capacities, and (2) Plaintiffs sufficiently allege the intent element of an Equal Protection Clause claim against Individual Defendants.

### 1. Plaintiffs are permitted to bring claims under Title VI against Individual Defendants in their official capacities

Title VI states:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d. Although the Ninth Circuit has not addressed the question of whether individual defendants may be proper defendants in a Title VI suit in their official capacities,[6] the Department of Justice has consistently taken the position that they are.

---

[6] *See Rios-Diaz v. Butler*, No. CV-13-77-BU-DLC-CSO, 2014 WL 12591682, at *5–6 (D. Mont. Apr. 1, 2014), report and recommendation adopted, No. CV-13-77-BU-DLC-

*(footnote cont'd on next page)*

In *Kentucky v. Graham*, 473 U.S. 159 (1985), the Supreme Court explained the distinction between personal- and official- capacity suits in the context of fee awards, including fee awards for Title VI claims and 42 U.S.C. § 1983 claims, authorized under 42 U.S.C. § 1988. *See id.* at 163. The Court explained that "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id*. at 165-66 (citing *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978)). Title VI claims can be maintained against university administrators in their official capacities as part of a university's programs or activities. As related to universities, Title VI defines "program or activity" broadly to "mean all of the operations of—. . . [a] college, university, or other postsecondary institution, or a public system of higher education. . . ." 42 U.S.C. § 2000d-4a(2)(A); 34 C.F.R. § 100.13(g)(2)(i). As related to agencies of state governments, such as Regents, Title VI also defines "program or activity" broadly to "mean all of the operations of—. . . a[n] . . . agency . . . of a state government. . . ." 42 U.S.C. § 2000d-4a(1)(A); 34 C.F.R. § 100.13(g)(1)(i). University administrators acting in their official capacities implementing the policies, practices, or procedures of a university are part of the operations of the university. Where, as here, Plaintiffs allege that UCLA is a recipient of federal financial assistance from the Department of Education (FAC ¶ 502), and that Individual Defendants have failed to enforce the University's policies, resulting in discrimination, Plaintiffs' Title VI claims against the Individual Defendants should survive the motion to dismiss.

This conclusion is supported by, and consistent with, the position taken by the Department of Justice and analogous Ninth Circuit caselaw. For example, in assessing

CSO, 2014 WL 12591836 (D. Mont. July 25, 2014); *Braunstein v. Arizona*, 2:06-CV-02726 JWS, 2008 WL 11447902, at *2 & n.22 (D. Ariz. 2008). This stands in contrast to the Ninth Circuit's statements that § 2000d "does not provide for monetary relief against individual defendants," or defendants acting in their personal or "individual capacities." *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1183 (9th Cir. 2012) (*Braunstein II*).

that Title VI provides a private right of action against individual defendants in their official capacity, the Department has relied upon the Ninth Circuit's determination in *Wood v. Yordy* that individual defendants could be subject to claims under the Religious Land Use And Institutionalized Persons Act (RLUIPA) in their official capacities because they fit within the definition of "government" in RLUIPA. 753 F.3d 899, 904 (9th Cir. 2014).[7] In the Title VI context, individual defendants can be subject to claims under Title VI, a Spending Clause statute, where they fit within the definition of "recipient" or "program or activity."

Moreover, the Ninth Circuit has recognized that individual defendants are subject to claims for equitable relief under Title VI. *See Mountain West Holding Co. v. Montana*, 691 F. App'x 326, 329 & n.1 (9th Cir. 2017) (dismissing claims for injunctive relief as moot and amending caption to reflect release of individual defendants who could only be sued for equitable relief under Title VI) (citing *Papasan v. Allain*, 478 U.S. 265, 278 (1986)). Similarly, in *Riley's American Heritage Farms v. Elsasser*, 32 F.4th 707, 732 (9th Cir. 2022), the Ninth Circuit affirmed that school board members may be proper defendants in lawsuits under § 1983 for injunctive relief from alleged First Amendment violations on the basis of their supervisory role and authority to stop the complained-of action in the future. "Should the [plaintiffs] prevail on their . . . claim for injunctive relief, the Board defendants are proper individuals to remedy a policy that continues to animate the . . . ongoing constitutional violation." *Id*. at 732.

Individual Defendants' arguments to the contrary are unavailing. First, Individual Defendants argue that there is no cause of action against university administrators under Title VI because "administrators . . . are neither 'programs' nor 'activities.'" (Defs.'

---

[7] *See* Title VI Legal Manual Pt. IX.A, *available at* https://perma.cc/J4MX-8VSZ ("The private right of action under [Title VI] for intentional discrimination cannot be brought against individuals except in their official capacity."). Although that guidance is not binding, the Department of Justice's extensive experience with Title VI claims makes its studied position on this issue persuasive. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024).

Mem. at 28 (citing 42 U.S.C. § 2000d (prohibiting "discrimination under any program or activity receiving Federal financial assistance."")).) This argument is without merit. While a few courts have made statements to that effect, either based on a misreading of the statute or relying on a different case that has done so, as noted *supra*, there is no controlling law in the Ninth Circuit, nor in the Central District of California, supporting this contention.

In light of their inability to cite to controlling authority, Individual Defendants primarily rely upon dicta in a wholly inapposite case, *Wentworth v. Cal. Connections Acad.*, No. 21-CV-01926-BAS-AGS, *et seq.*, 2022 WL 1427157, at *3 (S.D. Cal. May 5, 2022), *appeal dismissed*, 2023 WL 3866603 (9th Cir. Feb. 16, 2023). In *Wentworth*, claims by plaintiffs seeking to proceed *in forma pauperis* against the school and individually named district personnel were dismissed at the screening stage because the action was improperly brought by a mother asserting *pro se* claims properly belonging to her minor child. *Id*. The Court noted without discussion that the claims against the individual defendants would also be subject to dismissal because the individuals were not "an entity." *Id*.[8] Individual Defendants contend that they, like the defendants in *Wentworth*, "are not proper defendants for a Title VI claim" and therefore "must be dismissed." (Defs.' Mem. at 28-29.)[9]

---

[8] Plaintiffs and Individual Defendants both cite to *Shotz v. City of Plantation*, 344 F.3d 1161 (11th Cir. 2003). In *Shotz*, the Eleventh Circuit decided an Americans with Disabilities Act claim, against defendants in their *personal capacities*, by way of analogy to Title VI caselaw, so any language potentially relied upon in the Title VI context is dicta. *See id*. at 1169-75. In the same footnote, Individual Defendants also cite to *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1357 (6th Cir. 1996). In *Buchanan*, the Sixth Circuit dismissed the plaintiff's claims because she had not pled that the school was a recipient of federal funds. *Id*. at 1356. In dicta, the court noted additional bases for dismissal, including the lack of any basis for an allegation of intentional discrimination based on race and—without any case citations—the failure to assert claims against the school as the entity allegedly receiving federal financial assistance. *Id*.

[9] Individual Defendants add a citation to *Banks v. Albertsons Deal & Delivery*, No. 2:23-CV-01629-GMN-DJA, 2024 WL 3357635, at *3 (D. Nev. July 8, 2024), another case

*(footnote cont'd on next page)*

Second, Individual Defendants argue that only Regents can be sued for violation of Title VI because "Congress expressly required waiver of immunity as a condition for receiving federal funds." (Defs.' Mem. at 18 n.6 (citing 42 U.S.C. § 2000d-7).) The Northern District of California, however, has held that the Eleventh Amendment does not preclude a plaintiff from bringing a Title VI claim for prospective injunctive relief against an individual defendant in their official capacity. *See T.M. ex rel. Benson v. San Francisco Unified Sch. Dist.*, No. C 09-01463 CW, 2010 WL 291828, at *5 (N.D. Cal. Jan. 19, 2010) (finding that based on an Eleventh Amendment immunity analysis, plaintiffs could bring a Title VI claim only for prospective injunctive relief against a school district and an employee of the school district in her official capacity).

For the foregoing reasons, the United States submits that Plaintiffs' claims against Individual Defendants in their official capacities under Title VI are sufficient to survive Individual Defendants' motions.

**2. Plaintiffs' FAC sufficiently alleges the intent element of an Equal Protection Clause claim against Individual Defendants**

Individual Defendants argue that the FAC fails to state an Equal Protection Clause claim because "Plaintiffs do not plausibly allege that any Individual Defendant took *intentionally discriminatory* action—action motivated by animus toward students' or faculty's Jewish ethnicity or religion." (Defs.' Mem. at 21 (emphasis in original).)[10] This

---

dismissed at the *in forma pauperis* screening stage, which relies solely on *Wentworth*. Individual Defendants also cite to *Ogando v. Natal*, No. 23-CV-02221-JSC, 2023 WL 8191089, at *7 (N.D. Cal. Nov. 27, 2023), which relies largely on out-of-Circuit law and *Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928, 946 (D. Idaho 2014), which held only that the Eleventh Amendment precludes Title VI *damages* claims against individual defendants.

[10] Although Defendants have not moved to dismiss the Title VI claim for failure to state a claim, the United States notes that in *Gratz v. Bollinger* the Supreme Court stated that "discrimination that violates the Equal Protection Clause of the Fourteenth Amendment committed by an institution that accepts federal funds also constitutes a violation of Title VI." 539 U.S. 244, 276, n.23 (2003).

argument should fail for two reasons: (1) the FAC alleges that Individual Defendants took intentionally discriminatory action against Plaintiffs; and (2) the intent element of an Equal Protection claim can also be met by alleging that Individual Defendants were deliberately indifferent to the violation of Plaintiffs' Equal Protection rights by third parties, which the FAC does.

First, as Individual Defendants note, "[t]o state an Equal Protection claim, 'a plaintiff must show that the defendants acted with an intent or purpose to discriminate . . . based upon membership in a protected class.'" (*Id.* (quoting *Shooter v. Arizona*, 4 F.4th 955, 960 (9th Cir. 2021).) Individual Defendants argue that the FAC contains only a single "conclusory allegation" that they acted—or failed to act—because of Plaintiffs' Jewish identity. (*Id.* (citing FAC ¶ 514).) However, the FAC contains numerous allegations that Individual Defendants acted with the intent to discriminate against Plaintiffs, including that they "knowingly allowed private individuals to bar Jewish persons from parts of the UCLA campus because of their Jewish ethnicity and religion," (FAC ¶ 445), "conspired with activists from the encampment to deprive Plaintiffs of equal access to all parts of the UCLA campus . . . in violation of the equal protection of the laws," (*id.* ¶ 510), erected barricades to reinforce the encampment, (*id.* ¶ 156), instructed security "not to intervene to facilitate full and equal access by Jewish students," (*id.* ¶ 513), instructed security "to redirect Jewish students away from the encampment," (*id.*), and refused "to dismantle the encampment notwithstanding knowledge that Jewish students and faculty were being denied access to campus buildings and facilities," (*id.*). Accepting these allegations as true, which the court must at the motion to dismiss stage, the FAC sufficiently alleges the intent element of an Equal Protection claim against Individual Defendants.

Second, even if the FAC failed to plausibly allege that Individual Defendants took affirmative actions that indicate an intent to deprive Jewish students of equal protection of the laws, the intent element of an Equal Protection claim can also be met by alleging that school administrators were deliberately indifferent to known religious discrimination

by third parties that created a hostile environment. *See Mosavi v. Mt. San Antonio Coll.*, 805 F. App'x 502, 505 (9th Cir. 2020) ("Public school administrators who fail to take protective measures against religious harassment may be held liable for religious discrimination in violation of the equal protection guarantees of the . . . federal constitution[ ] if a plaintiff can show that the defendants either intentionally discriminated against the plaintiff or acted with deliberate indifference."). In other words, deliberate indifference is a *means* of showing intentional discrimination. *See Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 642-43 (1999).[11] "Deliberate indifference is found if the school administrator responds to known peer harassment in a manner that is clearly unreasonable." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1135 (9th Cir. 2003) (internal quotation marks and alterations omitted) (citing *Davis*, 526 U.S. at 649). *See Zeno*, 702 F.3d at 666 ("A finding of deliberate indifference depends on the adequacy of a school district's response to the harassment.") (Title VI claim for race-based harassment); *Al-Rifai v. Willows Unified Sch. Dist.*, 469 F. App'x 647, 649 (9th Cir. 2012) (noting "a student can bring a § 1983 sex discrimination claim based on a school administrator's failure to investigate peer-to-peer harassment.").

[11] Although *Davis* dealt with sexual harassment under Title IX of the Education Amendments of 1972, circuit courts, including the Ninth Circuit, have applied the same analysis to find a violation of the Equal Protection Clause when a school district is deliberately indifferent to known student harassment. *See, e.g.*, *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1135 (9th Cir. 2003). Because the Ninth Circuit applies the *Davis* deliberate indifference standard to Equal Protection claims, the United States cites generally to cases applying the *Davis* standard. *See Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 n.10 (2d Cir. 2012) (noting that the *Davis* framework applies to Equal Protection, Title VI, Section 1983, and Section 1981 claims for third-party harassment). *See also Mosavi v. Mt. San Antonio Coll.*, No. CV 15-4147-MWF (AFMX), 2018 WL 6016939, at *2 (C.D. Cal. June 1, 2018), *aff'd*, No. 18-56321, 2020 WL 1320952 (9th Cir. Mar. 20, 2020) ("The elements of 'severe and pervasive' harassment, 'actual notice' and 'deliberate indifference,' which govern an equal protection claim, are the same elements that apply to establish a claim for money damages under Title IX.") (internal alterations omitted) (citing *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 581, 84 Cal. Rptr. 3d 285, 294 (2008)).

School administrators must "have actual knowledge" of peer harassment that is "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650. "Whether a hostile educational environment exists is a question of fact, determined with reference to the totality of the circumstances . . . ." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998) (recognizing both Equal Protection and Title VI claims for a racially hostile environment).[12] "Once on notice of the problem, a school district has a legal duty to take reasonable steps to eliminate a . . . hostile environment." *Id.* at 1034 (quotation marks omitted)). Additionally, "[w]here a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances." *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 261 (6th Cir. 2000) (Title IX). *See also Flores*, 324 F.3d at 1135-36 (citing *Vance*, 231 F.3d at 261).

Individual Defendants erroneously suggest that Plaintiffs' Equal Protection claim must allege that the Individual Defendants took "action motivated by animus toward students' or faculty's Jewish ethnicity or religion." (Defs.' Mem. at 21.) However, Supreme Court and Ninth Circuit precedent establish that school administrators can also be liable for intentionally violating the Equal Protection Clause when they are deliberately indifferent to known third-party harassment of students on the basis of a protected class, including religion and national origin. Because Plaintiffs allege that Individual Defendants refused "to take action irrespective of their direct knowledge that encampment activists were using barricades to exclude Jews from campus," the FAC

[12] *See also Monteiro*, 158 F.3d at 1034 (noting that victim's race and age are relevant factors, and that "[i]t does not take an educational psychologist to conclude that being referred to by one's peers by the most noxious racial epithet in the contemporary American lexicon, being shamed and humiliated on the basis of one's race, and having the school authorities ignore or reject one's complaints would adversely affect a Black child's ability to obtain the same benefit from schooling as her white counterparts.").

sufficiently alleges the intent element of an Equal Protection claim based on Individual Defendants' deliberate indifference. (FAC ¶ 512. *See also id.* ¶¶ 145-46, 156-61, 179, 185.)

For the foregoing reasons, the United States submits that Plaintiffs have adequately pleaded the intent element of an Equal Protection Clause claim based on both Individual Defendants' alleged affirmative actions to discriminate against Plaintiffs and their alleged deliberate indifference to known discrimination by third parties.

## IV.  CONCLUSION

Accepting the well-pleaded facts in the FAC as true and construed in the light most favorable to the Plaintiffs, the Individual Defendants' motions for judgment on the pleadings under Rule 12(c) and to dismiss the FAC for lack of subject matter jurisdiction under Rule 12(h)(3) should be denied on the following bases: (1) Title VI authorizes Plaintiffs to sue the Individual Defendants in their official capacities, and (2) Plaintiffs sufficiently allege the intent element of an Equal Protection Clause claim against Individual Defendants.

Dated: March 17, 2025

JOSEPH T. MCNALLY
Acting United States Attorney

RICHARD M. PARK
Acting Executive Assistant United States Attorney

DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division

/s/ *Katherine M. Hikida*

KATHERINE M. HIKIDA
Assistant United States Attorney
Acting Chief, Civil Rights Section, Civil Division

United States Attorney's Office for the Central District of California

MAC WARNER
Deputy Assistant Attorney General
Civil Rights Division

SHAHEENA A. SIMONS
Chief, Educational Opportunities Section
Civil Rights Division

JONATHAN D. NEWTON
Deputy Chief, Educational Opportunities Section
Civil Rights Division

/s/ *Peter W. Beauchamp*

PETER W. BEAUCHAMP
LAURA C. TAYLOE
Senior Trial Attorneys, Educational Opportunities Section

*Attorneys for the United States of America*