Eric C. Rassbach (CA SBN 288041)
Mark L. Rienzi (DC Bar No. 494336)*
Daniel L. Chen (CA SBN 312576)
Laura Wolk Slavis (DC Bar No. 1643193)*
Jordan T. Varberg (DC Bar No. 90022889)*
Amanda G. Dixon (DC Bar No. 90021498)*
Reed M. Bartley (TX Bar No. 24125115)* ‡
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 tel. / 202-955-0090 fax
erassbach@becketfund.org

Paul D. Clement (DC Bar No. 433215)*
Erin E. Murphy (DC Bar No. 995953)*
Matthew D. Rowen (CA SBN 292292)
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314

Elliot Moskowitz (NY Bar No. 4039160)*
Rebecca L. Harris (NY Bar No. 5607080)*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YITZCHOK FRANKEL *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA *et al.*,<br><br>    Defendants. | Case No.: 2:24-cv-04702-MCS-PD<br><br>**PLAINTIFFS' RESPONSE TO UNITED STATES' STATEMENT OF INTEREST** |

*Admitted *pro hac vice*. ‡Not admitted to the D.C. Bar; admitted only in Texas. Supervised by licensed D.C. Bar members.

# INTRODUCTION

The United States' statement of interest confirms what Plaintiffs have said all along: Defendants discriminated against Plaintiffs, and they must be held liable. Bringing to bear its expertise litigating civil rights claims, *see* U.S.Br.2-3, Dkt.139, the United States cogently explains why "Plaintiffs' Title VI and Equal Protection Clause claims in the [First Amended Complaint] are sufficient to defeat Individual Defendants' motions for judgment on the pleadings." *Id.* at 5. In response, Defendants offer only more of the same, insisting that they are not to blame for discrimination that they consciously chose to facilitate. As the United States' statement underscores, no matter how many times Defendants claim otherwise, that simply is not the law.[1]

# ARGUMENT

## I. Plaintiffs Adequately Alleged That Defendants Intentionally Discriminated on the Basis of a Protected Class.

Defendants continue to insist that Plaintiffs have not adequately alleged that they acted with discriminatory intent. Def.Resp.3, Dkt.143. But that argument conflates cases involving facially *neutral* laws or policies and cases that, like this, involve overt discrimination. To be sure, additional proof of intent may be required (although it certainly need not

---

[1] Defendants try to infer something from the fact that the United States' statement addresses only two of Plaintiffs' claims. Def.Resp.3, Dkt.143. But as the United States explained, those are the only claims over which the office that filed the statement has jurisdiction. U.S.Br.1 n.2.

PLAINTIFFS' RESPONSE TO UNITED STATES' STATEMENT OF INTEREST

1

rise to the level of "animus") to suss out whether a facially *neutral* law or policy was really animated by a desire to discriminate. *See, e.g.*, *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 195 (2003); *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 & n.25 (1979). But when the discrimination is overt, that is all the evidence of intent needed for a claim to proceed. *See Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022). Indeed, Defendants do not point to a single case in which a court declined to subject to strict scrutiny a government action that was discriminatory on its face.

Defendants instead continue to resist the fact that Plaintiffs have alleged that *they* (as opposed to the activists they chose to protect) engaged in overt discrimination. But as the United States correctly explains, *see* U.S.Br.3-4, that ignores the well-pleaded allegations in Plaintiffs' Amended Complaint, which catalog in detail how, while "Defendants acknowledged the threat to Jewish students," they "opted to … facilitate the encampment," while doing "nothing … to guarantee the ability of Jewish students and faculty to traverse campus safely and freely." FAC, Dkt.101, ¶185. Plaintiffs witnessed this discriminatory treatment firsthand. For instance, when Plaintiff Shamsa was shoved to the ground in front of campus security guards, the guards "did nothing to intervene, did not pursue his assailant, and did not make any attempt to help him get up." *Id.* ¶423. Instead, a guard physically obstructed *him* when he picked himself up and tried to continue on, enforcing the

PLAINTIFFS' RESPONSE TO UNITED STATES' STATEMENT OF INTEREST

activists' command that no one (save themselves) "could cross the plaza." *Id.* ¶426; *see also, e.g.*, *id.* ¶¶260-70 (Plaintiff Frankel), ¶¶312-18 (Plaintiff Ghayoum), ¶¶373-77 (Plaintiff Shemuelian). And "[a]fter refusing to intervene to protect the rights of Jewish students and faculty for days, Defendants (including the senior leadership team) for the first time authorized UCLA PD and outside law enforcement to intervene only after" an act of violence was perpetrated *against the activists*—an act that Defendant Block promptly "condemned," while saying "nothing about prior attacks[, ]both physical and verbal[, ]on Jewish students and faculty." *Id.* ¶¶186-89.

Against all of that, Defendants' repeated refrain that *they* were not the ones discriminating continues to fall flat. Defendants do not dispute that Plaintiffs have adequately alleged that campus police were acting at their direction. Nor could they. When a parent called campus police to complain that her son was being "denied access to campus because he was Jewish," they informed her that she should "contact[] the Chancellor's office or higher ups" because they had "received a directive to not intervene." *Id.* ¶¶166-67. Defendants instead seem to be arguing that they are free to enforce campus policies, deploy campus security, and restrict campus access on the basis of a protected trait, so long as they are not motivated by "animus." Mot.22, Dkt.108-1. But whether Defendants had a compelling reason for their discriminatory decision-making is a question for the strict-scrutiny stage. Defendants cannot

PLAINTIFFS' RESPONSE TO UNITED STATES' STATEMENT OF INTEREST

3

avoid having to account for their overt discrimination by insisting that it was well-intended. *Cf. Students for Fair Admissions, Inc. v. President of Harvard Coll.*, 600 U.S. 181, 230-31 (2023) (holding that policy violated Equal Protection Clause even though it was intended to *benefit* a protected class).

At a minimum, the allegations rise to the level of deliberate indifference. *See* Opp'n.8-10, Dkt.120. Defendants claim that deliberate indifference never suffices. Def.Resp.4-5. The Ninth Circuit begs to differ. *See Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1135 (9th Cir. 2003); *Al-Rifai v. Willows Unified Sch. Dist.*, 469 F.App'x 647, 649 (9th Cir. 2012). Defendants also misunderstand the point of the deliberate-indifference doctrine, which applies when a defendant's response (or lack thereof) to a known risk is so egregious that it can be explained only as an intentional refusal to act (which Plaintiffs allege, *e.g.*, FAC ¶¶161-62, 178). *See, e.g.*, *Newman v. Howard Univ. Sch. of L.*, 715 F.Supp.3d 86, 106 (D.D.C. 2024). It is thus no response to say that the Equal Protection Clause requires affirmative conduct, because deliberate indifference *is* affirmative conduct. *Id.*

In all events, though Plaintiffs have adequately alleged deliberate indifference, there is no need to rely solely on that doctrine here. The problem is not merely that Defendants were indifferent to the Jew Exclusion Zone. It is that they decided that the best way to address the situation was to protect—and even facilitate—the activists'

PLAINTIFFS' RESPONSE TO UNITED STATES' STATEMENT OF INTEREST

4

discriminatory actions, instead of protecting the victims of their discrimination. As decades of clearly established law make plain, that is not a choice the Equal Protection Clause leaves open. *See* Opp'n.9, 17. Indeed, it is difficult to fathom Defendants deciding—let alone defending a decision—to deploy security to *protect* an angry mob barring Black students, or gay students, or transgender students from accessing core parts of campus for days, and directing security to stand idly by as the mob hurled verbal and physical abuse at anyone brave enough to defy its commands. Yet the logic of Defendants' position is that they would be perfectly free to do so as long as they were not motivated by hatred of the students they abandoned. That is not and cannot be the law.

## II. Plaintiffs' Title VI Claims May Be Brought Against Individual Defendants in Their Official Capacities.

The United States' statement likewise confirms that Individual Defendants may be held liable in their official capacities for the Title VI violations they perpetrated. U.S.Br.5-9. As the Supreme Court has explained, a suit against an officer or employee in his official capacity is just "another way of pleading an action against an entity of which [the] officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 n.55 (1978). And no one here disputes that a Title VI claim could be brought directly against UCLA. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 709 (1979); 42 U.S.C. §2000d. As the United States explains, official-capacity

PLAINTIFFS' RESPONSE TO UNITED STATES' STATEMENT OF INTEREST

5

suits against university employees are therefore available under Title VI as a simple matter of agency law.  U.S.Br.6.

That is consistent with the text of Title VI, which speaks not of discrimination *by* programs or activities, but of discrimination *under* them.  42 U.S.C. §2000d.  Defendants are thus wrong to suggest that individuals may not be sued in their official capacity under Title VI because they are not themselves programs or activities.  Def.Resp.6.  The relevant question is whether an individual's actions were taken "under any program or activity."  42 U.S.C. §2000d.  And an agent of a university—which is itself a "program or activity"—takes all official acts involving that program or activity "under" it.  *See* Opp'n.20-21.

Rather than engage with that analysis, Defendants urge this Court to follow various unpublished or out-of-circuit opinions purportedly rejecting all claims against individuals under Title VI.  Def.Resp.6.  But none of those cases discusses the distinction between individual-capacity and official-capacity suits; indeed, it is not even clear that any involved the latter.  They thus have little, if anything, to say about whether an individual who administers a federal program or activity can be held liable in her official capacity for how she administers it. As statutory text and settled agency principles under cases like *Graham*, *Monell*, and *Cannon* confirm, the answer is yes.

PLAINTIFFS' RESPONSE TO UNITED STATES' STATEMENT OF INTEREST

\* \* \*

The United States' statement confirms what was already clear: Plaintiffs' complaint adequately alleges that Defendants violated the Equal Protection Clause, Title VI, and a host of other antidiscrimination laws. Defendants' counterarguments are no more persuasive now than they were the first time around.

Dated: March 27, 2025    Respectfully submitted,

/s/ *Mark L. Rienzi*
Eric C. Rassbach (CA SBN 288041)
Mark L. Rienzi (DC Bar No. 494336)*
Daniel L. Chen (CA SBN 312576)
Laura Wolk Slavis (DC Bar No. 1643193)*
Jordan T. Varberg (DC Bar No. 90022889)*
Amanda G. Dixon (DC Bar No. 90021498)*
Reed M. Bartley (TX Bar No. 24125115)* ‡
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 tel. / 202-955-0090 fax
mrienzi@becketfund.org

PLAINTIFFS' RESPONSE TO UNITED STATES' STATEMENT OF INTEREST

Paul D. Clement (DC Bar No. 433215)*
Erin E. Murphy (DC Bar No. 995953)*
Matthew D. Rowen (CA SBN 292292)
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314

Elliot Moskowitz (NY Bar No. 4039160)*
Rebecca L. Harris (NY Bar No. 5607080)*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

*Attorneys for Plaintiffs*

\* Admitted *pro hac vice*.

‡ Not admitted to the D.C. Bar; admitted only in Texas. Supervised by licensed D.C. Bar members.

PLAINTIFFS' RESPONSE TO UNITED STATES' STATEMENT OF INTEREST

8