Eric C. Rassbach (CA SBN 288041)
Mark L. Rienzi (DC Bar No. 494336)*
Daniel L. Chen (CA SBN 312576)
Laura Wolk Slavis (DC Bar No. 1643193)*
Jordan T. Varberg (DC Bar No. 90022889)*
Amanda G. Dixon (DC Bar No. 90021498)*
Reed M. Bartley (TX Bar No. 24125115)* ‡
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 tel. / 202-955-0090 fax
erassbach@becketfund.org

Paul D. Clement (DC Bar No. 433215)*
Erin E. Murphy (DC Bar No. 995953)*
Matthew D. Rowen (CA SBN 292292)
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314

Elliot Moskowitz (NY Bar No. 4039160)*
Rebecca L. Harris (NY Bar No. 5607080)*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YITZCHOK FRANKEL *et al.*,<br>    Plaintiffs,<br>v.<br>REGENTS OF THE UNIVERSITY OF CALIFORNIA *et al.*,<br>    Defendants. | Case No.: 2:24-cv-04702<br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION**<br>Judge: Hon. Mark C. Scarsi<br>Hearing: May 12, 2025, 9:00 a.m.<br>Courtroom: 7C |

*Admitted *pro hac vice*. ‡Not admitted to the D.C. Bar; admitted only in Texas. Supervised by licensed D.C. Bar members.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................2

I. Plaintiffs are entitled to a permanent injunction. ...............................2

   A. The undisputed facts show Defendants violated the Free Exercise Clause. ...................................................................................2

   B. Injunctive relief is needed. ............................................................6

II. Plaintiffs' evidence is admissible. ........................................................7

   A. All four reports are admissible under Rule 803(8)(A)(iii)'s public records exception. ................................................................8

   B. The Task Force Report and Policing Report are also admissible under Rule 801(d)(2)(C)-(D). ......................................................10

CONCLUSION .......................................................................................................12

CERTIFICATE OF COMPLIANCE ......................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

*In re Aircrash in Bali, Indonesia,*
  871 F.2d 812 (9th Cir. 1989) ................................................................11

*Alexander v. FBI,*
  691 F.Supp.2d 182 (D.D.C. 2010) ........................................................10

*Bacon v. Woodward,*
  104 F.4th 744 (9th Cir. 2024) ............................................................ 4, 5

*Barnes v. D.C.,*
  924 F.Supp.2d 74 (D.D.C. 2013) ................................................. 9-10, 11

*Barry v. Iron Workers Pension Plan,*
  467 F.Supp.2d 91 (D.D.C. 2006) ...........................................................10

*Disney Enters. v. VidAngel Inc.,*
  2019 WL 4565168 (C.D. Cal. Sept. 5, 2019) ..................................... 6-7

*Fellowship of Christian Athletes v. SJUSD,*
  82 F.4th 664 (9th Cir. 2023) ........................................................... 3, 4, 6

*Gilbrook v. City of Westminster,*
  177 F.3d 839 (9th Cir. 1999) ...................................................................9

*Green v. Baca,*
  226 F.R.D. 624 (C.D. Cal. 2005) .................................................... 11, 12

*Harte v. Ocwen Fin. Corp.,*
  2018 WL 1830811 (E.D.N.Y. 2018) ........................................................9

*Holt v. Hobbs,*
  574 U.S. 352 (2015) ........................................................................... 4-5

*JL Beverage Co. v. Jim Beam Brands Co.,*
  828 F.3d 1098 (9th Cir. 2016) ........................................................... 7-8

*Johnson v. City of Pleasanton,*
  982 F.2d 350 (9th Cir. 1992) ........................................................8, 9, 10

*Kennedy v. Bremerton Sch. Dist.*,
   597 U.S. 507 (2022) ...................................................................................3

*LaPorta v. City of Chicago*,
   277 F.Supp.3d 969 (N.D. Ill. 2017) ..........................................................9

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) .....................................................................6

*Mister Softee, Inc. v. Amanollahi*,
   2016 WL 5745105 (D.N.J. Sept. 30, 2016) ..............................................6

*Mitchell v. N.Y. Life Ins.*,
   2021 WL 4539869 (C.D. Cal. Mar. 16, 2021)..........................................5

*Nat'l Ass'n of Wheat Growers v. Bonta*,
   85 F.4th 1263 (9th Cir. 2023)....................................................................6

*Reid Bros. Logging Co. v. Ketchikan Pulp Co.*,
   699 F.2d 1292 (9th Cir. 1983) .................................................................11

*San Francisco Baykeeper v. West Bay Sanitary District*,
   791 F.Supp.2d 719 (N.D. Cal. 2011) ........................................................9

*Shelby County v. Holder*,
   570 U.S. 529 (2013) ..................................................................................7

*United States v. Gregg*,
   32 F.Supp.2d 151 (D.N.J. 1998)................................................................6

*United States v. Omidi*,
   2025 WL 212820 (9th Cir. Jan. 16, 2025)..............................................11

*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989) ....................................................................................2

**Other Authorities**

Fed.R.Civ.P. 37............................................................................................5

Fed.R.Evid. 701...........................................................................................5

Fed.R.Evid. 801............................................................................... 10-11, 12

Fed.R.Evid. 803 ................................................................................................8, 10

**INTRODUCTION**

UCLA's response is a study in futility, doubling down on already-rejected legal arguments that are premised on even worse facts than the last time it lost. UCLA rightly doesn't dispute any of the dispositive facts—it concedes that it helped block off the Jew Exclusion Zone and policed its boundaries even though it knew full well that Jews were being kept out (and that such exclusion was the point). Instead, it continues to shift the blame onto the militant activists. But the activists don't own UCLA property and they don't have governmental authority; UCLA does.

UCLA also tries to point to other facts that are in dispute, but these are so many red herrings. None are material, and the possibility that there may be *more* bad facts for UCLA if the case goes to trial is no response to Plaintiffs' focused motion, which seeks partial summary judgment solely on the basis of the undisputed facts now in the record.

UCLA's last gasp argument is that its own official reports are hearsay that its own official reports are hearsay. Aside from the basic rule that hearsay applies differently at summary judgment, those reports easily meet the exceptions to hearsay found in Fed.R.Evid. 803(8)(A)(iii) and 801(d)(2).

At bottom, it would be yet more futile to let this case go to trial on all counts. UCLA has already conceded all the salient facts, so this is now merely a matter of applying the law to those facts. The Court should do so and enter a permanent injunction.

# ARGUMENT

## I. Plaintiffs are entitled to a permanent injunction.

### A. The undisputed facts show Defendants violated the Free Exercise Clause.

UCLA violated the Free Exercise Clause through its own actions, including reinforcing the encampment by installing barricades around it, ordering the police not to intervene despite knowing that Jews were being excluded and harassed, and stationing security around the encampment to protect it instead of Jews seeking to access campus. Dkt.128-2 ¶¶42, 59, 69-74 ("SUF"). This triggers strict scrutiny by (1) facilitating exclusion of religious observers from public benefits, (2) treating religious exercise less favorably than comparable secular activities, and (3) implementing a policy that permits discretionary, individualized exemptions. Dkt.128-1 at 13-20.

In response, Defendants again insist that they cannot be held liable because third-party activists inflicted the harm.[1] Dkt.157 at 18-22 ("Resp."). But this Court has already rejected that argument. Dkt.89 at 11-12. And the facts developed since then—mainly from UCLA's own reports and filings—confirm the wisdom of that decision. Indeed, in its most recent filing, UCLA acknowledged that "it is undisputed that Defendants took certain actions" such as "installing bike racks" and

---

[1] They also claim a permanent injunction is barred because "Defendants are entitled to sovereign immunity." Resp.17 (cleaned up). That argument is frivolous. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (collecting cases)).

"increasing security presence around Royce Quad," Resp.20, which were then deployed to protect discriminators at the expense of Jews.

Retreating, Defendants claim a dispute over their intent in committing those actions. *Id.* But Defendants' intent is immaterial.[2] Religious discrimination violates the Free Exercise Clause no matter the government's motive—whether malicious, neutral, or benign. Dkt.120 at 11. UCLA's argument that "the Free Exercise Clause subjects to strict scrutiny *only* government action that *targets* religious observers based on their religious status" badly mangles the law. Resp.21 (emphasis added) (cleaned up). Indeed, "targeting is not required for a government policy to violate the Free Exercise Clause." *Fellowship of Christian Athletes v. SJUSD*, 82 F.4th 664, 686 (9th Cir. 2023) (en banc).

Next, UCLA argues that its security didn't discriminate or assist activists. Resp.21-22. But again, the undisputed facts show otherwise. UCLA says security kept everyone out equally, Dkt.157-1 ¶69, but the encampment grew throughout the week, and faculty held classes inside it and "participat[ed] in the encampment activities[,] *including denial of campus access to Jews.*" Dkt.157-1 ¶¶39, 52-53 (emphasis added). That necessarily means that the security allowed activists, but not Jews, to enter. Moreover, despite security's supposed goal to "keep *all* students and faculty safe," Resp.21, UCLA explained that activists' "shocking and shameful" tactics had left "especially" "Jewish students[] in a state of anxiety and fear." SUF ¶81. In short, the undisputed evidence shows

---

[2] To be sure, if discovery uncovers that Defendants targeted Jewish students out of animus, those actions would have to be "'set aside' … without further inquiry." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 n.1 (2022).

1  UCLA protected the perpetrators and the exclusion of Jews. That triggers
2  strict scrutiny.
3      Finally, UCLA asserts that its policies aren't subject to strict scrutiny
4  because there's no "formal mechanism for granting exceptions." Resp.22-
5  23. That's both wrong and irrelevant. In *FCA*, for instance, the district
6  court initially ruled against the plaintiffs because there was no "formal
7  mechanism to grant discretionary exceptions." 82 F.4th at 679. But the
8  Ninth Circuit reversed, holding that "the mere existence of government
9  discretion is enough to render a policy not generally applicable"—with or
10 without a formal mechanism. *Id.* at 685. In any event, finding UCLA's
11 policy generally applicable would be particularly strange here.
12 Defendants explained that the Robinson-Edley Report provides a
13 "flexible standard" "to make informed judgments based on the context of
14 each situation." Dkt.62-3 ¶14. Elsewhere, Defendants have claimed their
15 actions are protected by California's "discretionary acts" immunity as
16 they followed discretionary policies. Dkt.108-1 at 27. So Defendants
17 concede they possess ample "government discretion," "render[ing] [their]
18 policy not generally applicable." *FCA*, 82 F.4th at 685.
19     UCLA must therefore satisfy strict scrutiny. It doesn't come close.
20 Under strict scrutiny, "limits on religious practice are unconstitutional
21 absent a showing that the limitation is essential to accomplish an
22 overriding governmental interest." *Bacon v. Woodward*, 104 F.4th 744,
23 751 (9th Cir. 2024) (cleaned up). And UCLA must also show that its
24 actions are "the least restrictive means of achieving" that interest. *Id.*
25     UCLA again points to a generalized interest in "public safety and
26 security." Resp.23. But UCLA's interest must be compelling as to "the
27 particular claimant whose sincere exercise of religion is being
28

substantially burdened." *Holt v. Hobbs*, 574 U.S. 352, 363 (2015). Here, UCLA claims that crowd control measures and neutral zones are commonplace when there are protests. Resp.24. But UCLA surely wouldn't—and couldn't—have thought it sufficient to "monitor [the] situation" and "respect[] our community's right to free expression" or to establish a "neutral zone" in response to a Black Exclusion Zone perpetrated by the KKK. Dkt.157-1 ¶¶61, 70. The result cannot be any different for a Jew Exclusion Zone.

What's more, UCLA's actions had to be "essential" to furthering its interest. *Bacon*, 104 F.4th at 752. But again, UCLA's undisputed actions—barricading the encampment, installing bike racks around it, and posting security guards on the outskirts to prevent access—allowed further acts of violence against Jews. Dkt.128-1 at 21-22. That means these actions couldn't have advanced UCLA's interest in safety.

UCLA offers no response. Defendants instead contend that their actions were narrowly tailored because they *intended* to protect everyone. Resp.23-24. But Defendants' intent is legally irrelevant and contradicted by the undisputed record, which shows that Defendants' actions protected discriminators instead of their victims even while they continued to offer services they knew Jews couldn't access.[3] *Supra* at 3-

---

[3] UCLA also relies on the declaration of Steve Lurie, Dkt.157-2 ¶¶21-22, 27, but his testimony about law-enforcement tactics is inappropriate for a lay witness, Fed.R.Evid. 701(c), and Defendants haven't disclosed him as an expert. In other words, the supposed *facts* are really expert *opinions* of an undisclosed expert. Fed.R.Civ.P. 37(c)(1); Fed.R.Evid. 701(c); *Mitchell v. N.Y. Life Ins.*, 2021 WL 4539869, at *3-4 (C.D. Cal. Mar. 16, 2021).

4. That cannot be the least restrictive means of advancing public safety. Dkt.128-1 at 20-22.

**B. Injunctive relief is needed.**

Plaintiffs satisfy the remaining injunctive-relief factors. "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *FCA*, 82 F.4th at 694, and damages cannot adequately remedy that loss. Dkt.128-1 at 23. The balance of equities and public interest factors favor Plaintiffs, as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

Here, UCLA first says that permanent injunctions are only granted after a "trial on the merits." Resp.25. But district courts routinely grant permanent injunctions at summary judgment, and appellate courts routinely affirm such relief. *See, e.g., Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1267 (9th Cir. 2023) (affirming permanent injunction issued at summary judgment).

Second, UCLA claims Plaintiffs cannot show irreparable harm because UCLA complied with the preliminary injunction. Resp.26-27. But "alleged compliance with the preliminary injunction is no defense to entry of a permanent one," *Mister Softee, Inc. v. Amanollahi*, 2016 WL 5745105, at *9 (D.N.J. Sept. 30, 2016), because "an enjoined party ought not to be rewarded merely for doing what the court has directed," *United States v. Gregg*, 32 F.Supp.2d 151, 158 (D.N.J. 1998), *aff'd*, 226 F.3d 253 (3d Cir. 2000); *see also Disney Enters. v. VidAngel Inc.*, 2019 WL 4565168, at *1 (C.D. Cal. Sept. 5, 2019) ("[Defendant] has shown, at most, that it complied with the preliminary injunction, but mere compliance … does

1 not moot injunctive relief."). In short, that this Court's preliminary injunction prevented and is preventing additional harm is no reason to deny a permanent injunction. That would be like "throwing away your umbrella in a rainstorm because you are not getting wet." *Shelby County v. Holder*, 570 U.S. 529, 590 (2013) (Ginsburg, J., dissenting).

Finally, UCLA asserts that damages are adequate. Seeking to differentiate this case from others where the Ninth Circuit found irreparable harm, UCLA argues that this case—unlike those cases—doesn't involve irreparable "emotional damages and stress." Resp.27. That is a shocking argument—and emblematic of UCLA's overall response to this case and antisemitism on its campus. Plaintiffs—and UCLA's Jewish community—have undisputedly suffered tremendous emotional distress and damage for the "abhorrent" and "unimaginable" discrimination they have endured. Dkt.89 at 2; SUF ¶81.

UCLA and Defendants claim to be committed to combating antisemitism. But until they embrace true accountability and make amends for their actions that have devastated UCLA's Jewish community, their gestures towards contrition ring hollow.

## II. Plaintiffs' evidence is admissible.

Unable to contest the merits, UCLA argues that the Task Force Report, Policing Report, U.S. House Committee Report on Antisemitism, and U.S. House Antisemitism Report are inadmissible hearsay. Dkt.157-3 ¶¶1-4; Dkts.128-5–128-8. As an initial matter, this attempt runs afoul of the rule that "[a]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d

1098, 1110 (9th Cir. 2016). Regardless, under Rules 803(8)(A)(iii) and 801(d)(2), all four reports are admissible.

### A. All four reports are admissible under Rule 803(8)(A)(iii)'s public records exception.

Rule 803(8)(A)(iii) excepts from the hearsay bar "record[s] or statement[s] of a public office" that set out "factual findings from a legally authorized investigation." Fed.R.Evid. 803(8)(A)(iii). Under this Rule, all four reports are admissible.

Starting with the Task Force Report, UCLA admits the Task Force was appointed by Defendant Hunt and is composed of UCLA "faculty" "charged with" (i) preparing "a report on antisemitism … at UCLA," and (ii) "making recommendations." Dkt.157-2 ¶62; *see* Dkt.128-5 at 12 & n.1 (describing Task Force's composition). The Task Force issued a comprehensive report—which UCLA has admitted consists of "factual findings," Dkt.157-3 ¶1—and UCLA publicly embraced the Report, announced it would implement the Report's recommendations, and appointed the Task Force's chair to lead the implementation. Dkt.157-2 ¶¶66-68; Dkt.157-6 at 67. The Report thus satisfies Rule 803(8)(A)(iii)'s requirements: it is a "record or statement of a public office"[4]; this is "a civil case"; and the Report sets out "factual findings" from the "investigation" that UCLA "authorized."

To exclude the Report, UCLA "bears the burden" of "show[ing] that the source of the information or other circumstances indicate a lack of trustworthiness." *Johnson v. City of Pleasanton*, 982 F.2d 350, 352 (9th Cir. 1992); Fed.R.Evid. 803(8)(B). But UCLA hasn't even *attempted* to do so. Nor could it, as it commissioned its own faculty to create the Report

---

[4] UCLA concedes that it is a "public agency." Dkt.157-1 ¶1.

and is trumpeting its reliance on the Report. Dkt.157-2 ¶¶62, 66-68. Indeed, courts "frequently" admit even "*third party* investigative reports, reports with recommendations, … and one-time reports prepared for narrow purposes." *Harte v. Ocwen Fin. Corp.*, 2018 WL 1830811, at *20 (E.D.N.Y. 2018) (emphasis added) (collecting cases); *Johnson*, 982 F.2d at 352 (admitting reports created by city staff as "public records"); *LaPorta v. City of Chicago*, 277 F.Supp.3d 969, 989 (N.D. Ill. 2017) (admitting "City-commissioned … Police Accountability Task Force" report under Rules 801(d)(2)(D) and 803(8)(A)(iii)).

UCLA relies on a single district court case. Dkt.157-3 ¶1. But the report in *San Francisco Baykeeper v. West Bay Sanitary District*, 791 F.Supp.2d 719, 744 (N.D. Cal. 2011), was excluded because the investigation relied on an informal process where the author did nothing more than "simply call[] two people." That's not this case, and UCLA doesn't argue otherwise. And though UCLA claims that the Report's specific factual findings weren't authorized, Dkt.157-3 ¶¶1-2, Rule 803(8)(A)(iii)'s text requires only that the *investigation* be authorized, not the findings themselves. But even on UCLA's faulty premise, the findings still fall squarely within the Task Force's charge, *see* Dkt.157-2 ¶62; Dkt.128-5 at 9-12 & n.1, and the Report's use of "recommendation or opinion does not remove it from the purview" of Rule 803(8)(A)(iii). *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999).

The Policing Report is also admissible under Rule 803(8)(A)(iii) because "third party investigative reports" for public offices are "frequently admitted … so long as they are trustworthy." *Harte*, 2018 WL 1830811, at *20 (collecting cases). Here, Drake "commissioned the study" and "authorized" 21st Century to "offer findings and recommendations"

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT

9

1  regarding the encampment-related violence on UCLA's campus. *Barnes
2  v. D.C.*, 924 F.Supp.2d 74, 99 & n.8 (D.D.C. 2013); *see* 4th Rassbach Decl.
3  Ex.1 at 2-3 & Ex.2 at 4-6. And like the Task Force Report, Defendants
4  publicly embraced the Policing Report and used it to "embark[] on
5  numerous reforms." 4th Rassbach Decl. Ex.2 at 5. The Report thus
6  consists of "factual findings from a legally authorized investigation" that
7  UCLA hasn't challenged as untrustworthy. Fed.R.Evid. 803(8)(A)(iii).

8  Rule 803(8)(A)(iii) similarly provides a hearsay exception for the two
9  House Reports. As reports reflecting official "findings" of "investigations"
10 by House committees, Dkt.128-7 at 117; Dkt.128-8 at 443, the reports are
11 "statement[s] of a public office," offered in this "civil case," that reflect the
12 "factual findings" of legally authorized investigations. Fed.R.Evid.
13 803(8)(A)(iii). And like the Task Force and Policing Reports, UCLA hasn't
14 challenged the trustworthiness of the House Reports.

15 UCLA instead cites two cases to argue that congressional reports
16 should be excluded. Dkt.157-3 ¶¶3, 4. But those cases support Plaintiffs
17 and explain that House Reports are presumptively admissible unless
18 untrustworthy. *Alexander v. FBI*, 691 F.Supp.2d 182, 195 (D.D.C. 2010);
19 *Barry v. Iron Workers Pension Plan*, 467 F.Supp.2d 91, 99 (D.D.C. 2006).
20 And here, because UCLA doesn't argue that these House Reports are
21 untrustworthy—let alone meet its burden of persuasion, *Johnson*, 982
22 F.2d at 352—they are admissible.

23 **B. The Task Force Report and Policing Report are also admissible under Rule 801(d)(2)(C)-(D).**
24
25 The Task Force and Policing Reports are not hearsay because they are
26 "statement[s] … offered against an opposing party" where the statement
27 (1) "was made by" "a person whom the party authorized to make a
28

statement on the subject" or (2) "the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed.R.Evid. 801(d)(2)(C)-(D).

The Task Force was appointed by Defendant Hunt, staffed by numerous UCLA faculty, and was specifically authorized to prepare a report making findings and recommendations. *Supra* at 8. Thus, the Task Force Report consists of "statement[s]" "made by" "person[s] whom [a] party authorized to make … statement[s] on the subject." Fed.R.Evid. 801(d)(2)(C); *see Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306-07 (9th Cir. 1983) (admitting employee-authored report where he "was 'authorized' … to make statements"); *United States v. Omidi*, 2025 WL 212820, at *2 (9th Cir. Jan. 16, 2025) (unpublished) (similar).

The Report also consists of statements by UCLA's "agent[s] or employee[s] on … matter[s] within the scope of that relationship and while it existed." Fed.R.Evid. 801(d)(2)(D); *see In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 816 (9th Cir. 1989) (report admissible under Rule 801(d)(2)(D) because authors were experienced Pan Am crew members). Indeed, all members of the Task Force were UCLA's agents because they were "convened" by Hunt and "authorized to offer findings and recommendations on the subject of" the "campus climate for Jewish and Israeli community members." Dkt.128-5 at 9, 12; *Barnes*, 924 F.Supp.2d at 99 n.8; *Green v. Baca*, 226 F.R.D. 624, 636 (C.D. Cal. 2005).

Similarly, the Policing Report constitutes a party admission under Rule 801(d)(2). It was "commissioned" by Defendant Drake, *Barnes*, 924 F.Supp.2d at 99; "overseen by the University's General Counsel," 4th Rassbach Decl. Ex.2 at 4; and was authorized to make findings and

1 recommendations. *See supra* at 9-10; *Green*, 226 F.R.D. at 636. So it too 2 consists of statements by (i) persons authorized to speak on the subject 3 and (ii) agents within the scope of the agency relationship. Fed.R.Evid. 4 801(d)(2)(C), (D); *supra* at 9-10.

Accordingly, the Task Force and Policing Reports are also admissible under Rule 810(d)(2).

## CONCLUSION

This Court should grant Plaintiffs' motion and enter a permanent injunction.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT
12

Dated: April 28, 2025

Respectfully submitted,

/s/ *Eric C. Rassbach*
Eric C. Rassbach (CA SBN 288041)
Mark L. Rienzi (DC Bar No. 494336)*
Daniel L. Chen (CA SBN 312576)
Laura Wolk Slavis (DC Bar No. 1643193)*
Jordan T. Varberg (DC Bar No. 90022889)*
Amanda G. Dixon (DC Bar No. 90021498)*
Reed M. Bartley (TX Bar No. 24125115)* ‡
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 tel. / 202-955-0090 fax
erassbach@becketfund.org

Paul D. Clement (DC Bar No. 433215)*
Erin E. Murphy (DC Bar No. 995953)*
Matthew D. Rowen (CA SBN 292292)
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314

Elliot Moskowitz (NY Bar No. 4039160)*
Rebecca L. Harris (NY Bar No. 5607080)*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

*Attorneys for Plaintiffs*

\* Admitted *pro hac vice*.

‡ Not admitted to the D.C. Bar; admitted only in Texas. Supervised by licensed D.C. Bar members.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT

13

# CERTIFICATE OF COMPLIANCE

Undersigned counsel of record for Plaintiffs certifies that this brief contains 2,991 words, which complies with this Court's word limit for memoranda of points and authorities.

Dated: April 28, 2025

/s/ *Eric C. Rassbach*
Eric C. Rassbach
*Counsel for Plaintiffs*