Eric C. Rassbach (CA SBN 288041)
Mark L. Rienzi (DC Bar No. 494336)*
Daniel L. Chen (CA SBN 312576)
Laura Wolk Slavis (DC Bar No. 1643193)*
Jordan T. Varberg (DC Bar No. 90022889)*
Amanda G. Dixon (DC Bar No. 90021498)*
Reed M. Bartley (TX Bar No. 24125115)* ‡
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 tel. / 202-955-0090 fax
erassbach@becketfund.org

Paul D. Clement (DC Bar No. 433215)*
Erin E. Murphy (DC Bar No. 995953)*
Matthew D. Rowen (CA SBN 292292)
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314

Elliot Moskowitz (NY Bar No. 4039160)*
Marc J. Tobak (NY Bar No. 4717336)*
Adam M. Greene (NY Bar No. 5812169)*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YITZCHOK FRANKEL *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA *et al.*,<br><br>        Defendants. | Case No.: 2:24-cv-04702<br><br>**PLAINTIFFS' OPPOSITION TO THIRD PARTY MOTION TO INTERVENE**<br><br>Judge: Hon. Mark C. Scarsi<br>Hearing: June 30, 2025, 9:00 a.m.<br>Courtroom: 7C |

*Admitted *pro hac vice*. ‡Not admitted to the D.C. Bar; admitted only in Texas. Supervised by licensed D.C. Bar members.

1

# TABLE OF CONTENTS

2

**Page**

3

TABLE OF AUTHORITIES ................................................................. ii

4

INTRODUCTION ................................................................................ 1

5

FACTUAL BACKGROUND ................................................................ 3

6

ARGUMENT ....................................................................................... 7

7

8

I.  Movants fail to meet the requirements for intervention
     as of right................................................................................... 8

9

10

A. Movants do not have a significantly protectable interest ............. 8

11

B. This action would not practically impair the ability to
    protect any interest. .................................................................. 12

12

13

C. The motion to intervene is untimely. ......................................... 13

14

1.  Movants seek to intervene at a late stage of the litigation...... 13

15

2.  Intervention at this late stage would prejudice Plaintiffs. ...... 15

16

3.  Movants have no legitimate reason for their delay.................. 18

17

D. UCLA adequately represents Movants' interest.......................... 19

18

19

II. Movants also fail to meet the requirements for permissive
     intervention. .............................................................................. 22

20

21

CONCLUSION................................................................................... 24

22

CERTIFICATE OF COMPLIANCE ...................................................... 26

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*303 Creative LLC v. Elenis,*
  600 U.S. 570 (2023) ................................................................ 10

*Acosta v. Huppenthal,*
  No. 10-cv-623, 2012 WL 12829994
  (D. Ariz. Feb. 6, 2012) ............................................................ 15

*Arakaki v. Cayetano,*
  324 F.3d 1078, 1086 (9th Cir. 2003) ..................................... 21

*Blake v. Pallan,*
  554 F.2d 947 (9th Cir. 1977) .................................................. 13

*Brown v. Bd. of Educ.,*
  347 U.S. 483 (1954) ................................................................ 11

*Burns v. Thuney,*
  No. 3:23-cv-526, 2023 WL 11758597
  (D. Or. June 28, 2023) ............................................................ 13

*Cal. Dep't of Toxic Substances Control v. Com.*
  *Realty Projects, Inc.,*
  309 F.3d 1113 (9th Cir. 2002) ................................................ 19

*Carson v. Makin,*
  596 U.S. 767 (2022) ........................................................... 21-22

*Chamness v. Bowen,*
  722 F.3d 1110 (9th Cir. 2013) ................................................ 14

*Ctr. for Biological Diversity v. EPA,*
  No. 11-06059, 2012 WL 909831
  (N.D. Cal. Mar. 16, 2012) ....................................................... 12

*Ctr. for Biological Diversity v. Lubchenco,*
  No. 09-4087, 2010 WL 1038398
  (N.D. Cal. Mar. 19, 2010) ....................................................... 24

*Cunningham v. David Special Commitment Ctr.*,
  158 F.3d 1035 (9th Cir. 1998) ........................................................... 12

*Deus v. Allstate Ins. Co.*,
  15 F.3d 506 (5th Cir. 1994) ............................................................... 23

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ...................................................... *passim*

*Droplets, Inc. v. Yahoo! Inc.*,
  No. 12-cv-3733, 2019 WL 9443778
  (N.D. Cal. Nov. 19, 2019) ................................................................. 15

*Earth Island Institute v. Wheeler*,
  464 F. Supp. 3d 1138 (N.D. Cal. 2020) ............................................. 24

*Fulton v. Philadelphia*,
  593 U.S. 522 (2021) ......................................................................... 22

*Genesis 1 Oil Servs., LLC v. Wismann Grp., LLC*,
  No. 8:20-cv-2114, 2023 WL 355149
  (C.D. Cal. Jan. 6, 2023) .................................................................... 14

*Gonzaga University v. Doe*,
  536 U.S. 273 (2002) ....................................................................11, 12

*Henrikson v. Turbomeca, S.A.*,
  No. 06-1563, 2007 WL 2215398 (E.D. Cal. July 30, 2007) ........... 14-15

*High Sierra Hikers Ass'n v. DOI*,
  No. 09-4621, 2012 WL 1949153
  (N.D. Cal. May 29, 2012) ............................................................. 14-15

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
  315 F.R.D. 169 (S.D.N.Y. 2016) ....................................................... 16

*Koepke v. Becton, Dickinson & Co.*,
  74 F.3d 1246 (9th Cir. 1996) ........................................................ 15-16

*LULAC v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997) .................................................... *passim*

*Markel v. Union of Orthodox Jewish Congregations of Am.*,
    124 F.4th 796 (9th Cir. 2024) ............................................................. 9

*Masterpiece Cakeshop v. Colo. C.R. Comm'n*,
    584 U.S. 617 (2018) ......................................................................... 16

*Nw. Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) ...................................................19, 22, 23

*Perry v. Proposition 8 Off. Proponents*,
    587 F.3d 947 (9th Cir. 2009) ...................................................*passim*

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006) ........................................................... 20

*Rosenberger v. Rector and Visitors of the Univ. of Va.*,
    515 U.S. 819 (1995) ......................................................................... 10

*S. Cal. Edison Co. v. Lynch*,
    307 F.3d 794 (9th Cir. 2002) ........................................................... 11

*Sage Electrochromics, Inc. v. View, Inc.*,
    No. 12-cv-6441, 2013 WL 6139713
    (N.D. Cal. Nov. 21, 2013) ............................................................... 15

*Smith v. LAUSD*,
    830 F.3d 843 (9th Cir. 2016) ........................................................... 13

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) .........................................13, 15, 17, 18

*Spangler v. Pasadena City Bd. of Ed.*,
    552 F.2d 1326 (9th Cir. 1977) ....................................................23, 24

*Sweet v. Cardona*,
    121 F.4th 32 (9th Cir. 2024).............................................................2, 8

*Thomas v. Review Bd.*,
    450 U.S. 707 (1981) ........................................................................ 9-10

*Trinity Lutheran v. Comer*,
    582 U.S. 449 (2017) ......................................................................... 21

*Trs. of Nat'l Ret. Fund v. Fireservice Mgmt. LLC,*
　384 F. Supp. 3d 412 (S.D.N.Y. 2019) ................................................. 17

*UMG Recordings, Inc. v. Bertelsmann AG,*
　222 F.R.D. 408 (N.D. Cal. 2004) ........................................................ 24

*United States v. Alisal Water Corp.,*
　370 F.3d 915 (9th Cir. 2004) .................................................8, 13, 18

**Statutes & Regulations**

20 U.S.C. § 1232g.................................................................................10, 20

34 C.F.R. § 99.31.....................................................................................5, 10

**Other Authorities**

Fed. R. Civ. P. 24 ............................................................................*passim*

**INTRODUCTION**

Movants are five—or six; it's unclear—pseudonymous UCLA professors and students who believe that UCLA is litigating this case the wrong way. Nearly all participated in the Royce Quad encampment, and some candidly admit playing a role in enforcing its exclusionary checkpoints. But unlike UCLA, they stand prepared to defend the encampment's discriminatory misconduct. On their telling, the encampment was never antisemitic; rather, its goal was to exclude anyone—Jew and non-Jew alike—who disagreed with their view that Israel is a "genocidal" "ethnostate."

This Court, they claim, misunderstood the facts on the ground when it granted what they warn is a "dangerous" preliminary injunction. Dkt.164 at 15. Movants accuse UCLA and this Court of failing to question Plaintiffs' sincerely held religious beliefs, "conflating" "anti-Zionism with antisemitism" and "Judaism with the state of Israel," and "impos[ing] … [a] stereotypical view of what Jews do and ought to believe." *Id.* at 5-6, 11, 23; Dkt.164-5 ¶12. As a result, they say, the injunction (supposedly) stifles their free speech; prevents learning, teaching, and publishing about Palestine; and gives Plaintiffs the status of "walking Free Speech Suppression Zones." Dkt.164 at 20. They believe these harms constitute protectable interests that Rule 24 entitles them to defend.

But, of course, none of this is true. Simply put, the motion is a syllabus of errors, misinterpreting this Court's preliminary injunction, Plaintiffs' allegations, and the First Amendment all at once. The preliminary injunction does not regulate speech or the content of classroom instruction. Instead, like the school desegregation orders in the Jim Crow South, it requires an educational institution to stop facilitating the

exclusion of a protected class from public spaces, programs, and services. It is simply astonishing to witness UCLA professors claiming in sworn declarations that a court order not to discriminate against Jews threatens their ability to do their jobs. *See* Dkt.164-5 ¶¶8-12; Dkt.164-6 ¶¶8-10; Dkt.164-7 ¶9.

Movants' real aim here is not to vindicate any "significantly protectable interest," *Sweet v. Cardona*, 121 F.4th 32, 48 (9th Cir. 2024), which is why their motion struggles so mightily to articulate a coherent one. Instead, Movants want to play lawyer for UCLA and litigate this case differently. But there are good reasons why UCLA has never defended the encampment's misconduct or contested that Plaintiffs have suffered antisemitic exclusion. There is no legitimate defense, and Plaintiffs have suffered grievously.

If anything, Movants' motion only reiterates how grossly Jews' rights have been violated at UCLA. Movants admit that the checkpoints were designed to exclude based on views about Israel, somehow believing that this fact *helps* them. *See* Dkt.164 at 15-17; Dkt.164-3 ¶10. In other words: Jews who believe as a matter of faith that they must support Israel's claim to its homeland were intentionally excluded. Movants' only response is to demean those beliefs and deem them merely political. *See* Dkt.164 at 8-11, 16-17. But even granting that wildly unconstitutional premise, Movants' defense unavoidably crashes into another First Amendment protection: the freedom of speech.

Movants, in sum, do not come close to demonstrating entitlement to intervention. Instead, they demonstrate why Plaintiffs needed injunctive relief from this Court in the first place (and why Plaintiffs still do). The motion amply demonstrates that the activists who manned the encampment believe they did no wrong. Indeed, Movants complain that

this Court's injunction has been *too* effective. *See* Dkt.164 at 11-12; Dkt.164-7 ¶¶5-7. Thus, the motion demonstrates that the threat to Plaintiffs' rights remains.

In short, the motion to intervene has brought the discriminators (the activists) together with their enforcers (Defendants). The results are not pretty. No one admits fault for the systematic exclusion of Jews on UCLA's campus. Movants deny it happened; UCLA concedes it, but continues to defend its actions as consistent with "standard," "reliable," and "effective" law enforcement practices. Dkt.157-9 ¶¶7-9; Dkt.157 at 23-24. There is therefore only one institution standing between Jews at UCLA and those who would continue to discriminate against them, and that is this Court. The motion should be denied.

## FACTUAL BACKGROUND

This lawsuit was filed nearly a year ago, on June 5, 2024. Dkt.1. Shortly thereafter, on June 24, 2024, Plaintiffs moved for a preliminary injunction, arguing (among other things) that UCLA had facilitated the exclusion of Jews on its campus in violation of the First Amendment's Free Exercise Clause. Dkt.48 at 1. After the motion was fully briefed and this Court held a hearing in July 2024, the parties were ordered to file a stipulation or supplemental briefing on the appropriate remedy. Dkt.77. Plaintiffs and Defendants filed supplemental briefing on August 5. Dkt.82; Dkt.83. Counsel for Movants also filed an amicus brief on behalf of Faculty for Justice in Palestine at UCLA denying that Jews were excluded from the encampment based on their religion. Dkt.88 at 4-7.[1]

---

[1]   Because they have not identified themselves, it is unclear whether the Faculty Movants (Roes 3-6) are members of *amicus* Faculty for Justice in Palestine at UCLA, but given their role in the encampment, it seems likely that they are.

On August 13, 2024, the Court entered a preliminary injunction. Dkt.89. That injunction "prohibit[s]" UCLA officials "from offering any ordinarily available programs, activities, or campus areas to students if Defendants know the ordinarily available programs, activities, or campus areas are not fully and equally accessible to Jewish students" and "from knowingly allowing or facilitating the exclusion of Jewish students[,] … whether as a result of a de-escalation strategy or otherwise." *Id.* at 15. And "[f]or purposes of this [injunction], all references to the exclusion of Jewish students shall include exclusion of Jewish students based on religious beliefs concerning the Jewish state of Israel." Dkt.89 at 16.

UCLA initially appealed, claiming that the injunction "would improperly hamstring our ability to respond to events on the ground and to meet the needs of the Bruin community." Dkt.101 ¶26. UCLA did not explain why it couldn't "meet the needs of the Bruin community" without discriminating against Jews. *Id.* A week later, UCLA dropped the appeal. *Id.* ¶27.

Defendants then filed an answer to the complaint, Dkt.97, and Plaintiffs amended their complaint, Dkt.101. Defendants then filed another answer, Dkt.107, and a motion for judgment on the pleadings. Plaintiffs filed a response, Defendants filed a reply, and the Court heard argument on the motion on March 31, 2025. Dkt.120; Dkt.123. The United States Department of Justice also filed a statement of interest in support of Plaintiffs, Dkt.139, and the parties responded, Dkt.143; Dkt.146.

Plaintiffs also moved for partial summary judgment on their Free Exercise claims in February 2025. Dkt.128. That motion included a statement of uncontroverted facts and multiple evidentiary submissions.

Dkts.128-2–128-16. Defendants responded, Dkt.157, and entered their own evidence. Dkt.157-2; Dkts.157-5–157-14. Plaintiffs filed a reply, Dkt.162, and a hearing was scheduled for May 12, 2025 (recently continued to June 2). Dkt.165.

Meanwhile, on the procedural front, back in November 2024, the parties filed a Joint 26(f) Report. Dkt.106. The parties requested a 6-month extension of the Court's default trial schedule, *id.* at 21-22; Dkt.106-1, but the Court declined this request and scheduled trial for December 16, 2025, with fact discovery to close in August 2025. Dkt.114. The parties have also engaged in two separate day-long settlement negotiations, including before a magistrate judge. Dkt.140. They are currently engaged in discovery, and as part of the discovery process, they negotiated and agreed to a stipulated protective order. Dkt.133. The protective order, which the magistrate judge entered eleven weeks ago, on March 4, recognizes that, as required by FERPA, personally identifiable information in any disclosed educational records must be redacted. *Id.* at 2, 5, 9; *see* 34 C.F.R. § 99.31(b)(1).

On May 2, 2025, Movants Roes 1-5 filed a motion to intervene, attacking this Court's preliminary injunction entered nearly nine months ago. Movants are two UCLA students and three (or four) UCLA professors.[2] They do not state whether they seek to intervene as Plaintiffs, Defendants, or some other status; nor did they comply with the requirement to submit a pleading with their motion. *See* Fed. R. Civ. P. 24(c).

---

[2] An additional individual, Roe 6, also submitted a declaration, Dkt.164-7, but it is unclear whether Roe 6 also seeks to intervene as well, Dkt.164 at 4, 15.

Movants assert that this Court's preliminary injunction prevents them from teaching and publishing about Palestine. Dkt.164 at 5. They claim Plaintiffs' religious beliefs are not really religious, but merely political, and accuse this Court of conflating opposition to Zionist beliefs about Israel with antisemitism. *Id.* at 8, 10-11. They accuse Plaintiffs of seeking to become "walking Free Speech Suppression Zones," and question whether "Plaintiffs' sincerely held religious belief was that encampment members ought to be brutally attacked." *Id.* at 16, 20.

In their filings, Movants admit that "some people who were Jewish were excluded" from the Royce Quad encampment. *Id.* at 6. They admit that "checkpoints" were "established" to prevent access to the encampment, with activists engaging in "proper[] vett[ing]" and handing out "wristband[s]." *Id.* at 13-14. They admit that Movants "include people who were present in the Palestine Solidarity Encampment." *Id.* at 8. They state that, after this Court entered a preliminary injunction, UCLA PD cleared a sidewalk blockade while "referenc[ing] a federal lawsuit in response to questions about why UCPD had responded so aggressively to this protest" and stated "they were extremely concerned about blocking pathways." *Id.* at 12.

The declarations add more color to Movants' contentions. Three of the Movants, including two of the professors, state that they were present inside the encampment. Dkt.164-3 ¶6; Dkt.164-4 ¶6; Dkt.164-6 ¶12. Roe 2 served "as a safety marshal" and, in that capacity, testifies that "[e]ntrance to the encampment was contingent on principles, politics, and solidarity with the Palestinian struggle" and that "check points to the Palestine Solidarity Encampment were established." Dkt.164-3 ¶¶6, 10, 12. Roe 3, a UCLA professor, was "present" in the encampment "every day between April 25-May 1," "led programming inside" it, and

personally participated in the exclusion of individuals from the encampment. Dkt.164-4 ¶¶6, 8, 11. She explains that there were "entrance criteria" used to screen would-be entrants to the encampment. *Id.* ¶10.

## ARGUMENT

Under Federal Rule of Civil Procedure 24, intervention as of right is appropriate where, among other things, a third party "claims an interest relating to the property or transaction" at issue that would be "impair[ed] or impede[d]" by the "action." Fed. R. Civ. P. 24(a)(2). Permissive intervention is a matter of the Court's discretion, *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998), and may be appropriate where the third party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Both types of intervention require a "timely motion" and must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(a), (c).

Here, neither type of intervention is warranted. Movants do not meet any of the factors required for intervention as of right, and they similarly fail to provide any persuasive reason to grant permissive intervention. Indeed, they offer no explanation as to why they delayed in moving for intervention and repeatedly rely on misinterpretations of this Court's preliminary injunction, Plaintiffs' allegations, and the parties' stipulated protective order—all in an effort to drum up a fake controversy over their supposed interests under FERPA and the First Amendment. But there is no fire behind all that smoke. Intervention should be denied.[3]

---

[3] The motion to intervene also suffers from numerous procedural defects. Movants never sought leave to file under a pseudonym; nor do

---

PLAINTIFFS' OPPOSITION TO THIRD PARTY MOTION TO INTERVENE

7

### I. Movants fail to meet the requirements for intervention as of right.

A movant seeking intervention bears the burden of establishing four requirements. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). First, the movant must have a significantly protectable interest relating to the property or transaction that is the subject of the action. *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). Second, the disposition of the action must, as a practical matter, impair or impede the movant's ability to protect that interest. *Id.* Third, the application must be timely. *Id.* And fourth, the movant's interest must not be adequately represented by existing parties in the lawsuit. *Id.* "Failure to satisfy any one of the requirements is fatal to the application[.]" *Id.* Here, Movants satisfy none of them.

### A. Movants do not have a significantly protectable interest.

To begin, Movants have not articulated any "significantly protectable interest." *Sweet v. Cardona*, 121 F.4th 32, 48 (9th Cir. 2024). To do so, they must show (1) they have "an interest that is protected under some law" and (2) "a relationship between [that] legally protected interest and the plaintiff's claims." *Id.* Movants do neither.

***Interest protected under law.*** Movants do not articulate any protected interest. While they invoke expressive rights and freedom from

---

they explain why anonymity is necessary given that they "agree to disclose their identities" if allowed to intervene. Dkt.164 at 14 n.14. They failed to comply with Rule 24(c)'s requirement to file "a pleading that sets out the claim or defense for which intervention is sought," making it impossible for Plaintiffs to ascertain fully what arguments and factual issues they seek to revisit. And half of the motion's argument section functions as an amicus brief opposing Plaintiffs' motion for partial summary judgment rather than arguing the merits of intervention. *Id.* at 15-21.

---

"interference" with "classroom instruction," they do not even try to show that Plaintiffs' requested relief or the preliminary injunction implicate those rights. Dkt.164 at 22-23. Nor could they. The preliminary injunction regulates conduct, not speech; it requires UCLA to guarantee equality of campus "*access*[]" to Jews and to stop facilitating the "the *exclusion* of Jewish students." Dkt.89 at 15 (emphasis added). And though Movants claim that the injunction "does not limit its scope to physical obstruction of access," Dkt.164 at 20, they identify nothing in the preliminary injunction that sweeps more broadly.

And of course, Movants do not have any protectable—or even *lawful*—interest in engaging in "physical obstruction of access" to public spaces and programs, let alone on a discriminatory basis. *Id.* at 20. Yet Movants—some of whom personally participated in the encampment's "checkpoints"—seem to say the opposite. *Id.* at 13-15; Dkt.164-3 ¶¶6, 10; Dkt.164-4 ¶11. They assert that the checkpoints were perfectly legal, since (Movants say) they screened for political, not religious, viewpoints about Israel. *See* Dkt.164 at 6-7, 17. But that sort of distinction itself violates the First Amendment twice over.

First, it asks this Court to disregard Plaintiffs' articulation of their religious beliefs. As Plaintiffs have explained, their sincere understanding of their Jewish faith prevents them from expressing "solidarity with" those who oppose Israel's claim to its homeland. Dkt.164-3 ¶10; *see, e.g.*, Dkt.48-2 ¶¶11, 49. Though Movants may disagree with these religious beliefs, they cannot have this Court second-guess them. *See Markel v. Union of Orthodox Jewish Congregations of Am.*, 124 F.4th 796, 809 (9th Cir. 2024) (courts must accept a religion's "representation" about its "orthodoxy" and cannot "defin[e] … what its beliefs or practices are"); *Thomas v. Review Bd.*, 450 U.S. 707, 715 (1981)

("Intrafaith differences … are not uncommon among followers of a
particular creed, and the judicial process is singularly ill equipped to
resolve such differences in relation to the Religion Clauses."). *But see*
Dkt.164 at 6 (arguing that because some Jews were present in the
encampment, there was no religious discrimination). What matters is
that *these* Plaintiffs understand *their* religion to require support for the
land of Israel—and were excluded on that basis. *Cf.* Dkt.157-1 ¶149
("large majority of Jews" hold similar beliefs). As even Movants are forced
to admit, courts "lack[] authority under the First Amendment to define
the tenets of Judaism." Dkt.164 at 6.

Second, Movants' distinction runs headfirst into the Free Speech
Clause. Indeed, even assuming that "[e]ntrance" to public spaces at
UCLA was in fact "contingent" only on purely secular "principles[ and]
politics," Dkt.164-3 ¶10, those criteria would themselves violate the First
Amendment as viewpoint discrimination and compelled speech. *See
Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 829-
30 (1995); *303 Creative LLC v. Elenis*, 600 U.S. 570, 598 (2023); *see also*
Dkt.48-1 at 20-21.

Nor have Movants demonstrated any protectable interest under
FERPA. The three professors certainly haven't; FERPA applies to
*student*, not employee, records. 20 U.S.C. § 1232g(a)(4)(B)(iii). The two
students fare no better: The parties' protective order contemplates
redaction of personally identifiable information prior to disclosure, and
FERPA does not provide any privilege against disclosure of such records.
Dkt.133 at 5, 9; 34 C.F.R. § 99.31(b)(1). Indeed, as Movants acknowledge,
FERPA does not even confer a private right of action, Dkt.164 at 23, but
rather establishes the conditions under which institutions can receive

federal funding, *see Gonzaga University v. Doe*, 536 U.S. 273, 278 (2002), so it cannot supply a protectable interest to justify intervention.

***Relationship to Plaintiffs' claims***. Even if Movants could prove that they have protectable interests in the abstract, "the resolution of the plaintiff's claims" here will not "actually … affect" them. *Donnelly*, 159 F.3d at 410; *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (requested remedy must have a "direct" and "non-contingent" effect on proposed intervenor's interest).

As explained above, the preliminary injunction this Court granted last year does not regulate anyone's speech or classroom instruction; it merely regulates the illegal conduct of restricting access to public spaces and programs. *Supra* at 8-9. Plaintiffs' proposed permanent injunction is nearly identical. Dkt.128-17 at 2-3. By seeking this sort of relief, Plaintiffs are not asking to become "walking Free Speech Suppression Zones, whereby anywhere they went, UCLA would become obligated to prevent others from disagreeing with them." Dkt.164 at 20. That is a remarkable—and remarkably offensive—way to characterize a lawsuit that seeks to ensure equality of campus access, a basic constitutional guarantee. *See Brown v. Bd. of Educ.*, 347 U.S. 483 (1954).

Instead of showing that their interests are related to Plaintiffs' claims, Movants rely on speculation: that UCLA will misinterpret the scope of an unambiguous injunction and use it to suppress their First Amendment expression. *See, e.g.*, Dkt.164-6 ¶10. But that line of argument has already been rejected by the Ninth Circuit.

In *Donnelly*, the Court denied intervention to male employees in a Title VII sex discrimination case. 159 F.3d at 407. The would-be intervenors claimed they had an interest in the litigation because the remedies for ending harassment of female employees could discriminate

against male employees. *Id.* at 411. But that remote "possibility [was] not inherent in any of the [Plaintiffs'] requested remedies," so the Court affirmed the denial of intervention. *Id.*; *see also Ctr. for Biological Diversity v. EPA*, No. 11-06059, 2012 WL 909831, at *4 (N.D. Cal. Mar. 16, 2012) ("A remote interest does not provide for intervention as a matter of right.").

This Court should do the same here. Indeed, as in *Donnelly*, Movants offer only speculation that Plaintiffs' "requested remedies" might harm them; tellingly, they fail to identify a single concrete instance in which UCLA has acted to suppress or chill their protected speech or interfere with classroom instruction because of the preliminary injunction. *E.g.*, Dkt.164-7 ¶8 ("It *feels like* all pro-Palestine protest is prohibited." (emphasis added)).[4] "When an applicant's purported interest is so tenuous, intervention is inappropriate." *Donnelly*, 159 F.3d at 411.

### B. This action would not practically impair the ability to protect any interest.

For similar reasons, this lawsuit does not impair the Movants' ability to protect whatever interests they assert. *See Id.* at 409. Because Plaintiffs' claims target conduct, not speech or classroom instruction, the "adjudication [of Plaintiffs'] rights would resolve nothing concerning [Movants'] rights." *Cunningham v. David Special Commitment Ctr.*, 158 F.3d 1035, 1037-38 (9th Cir. 1998). The result is the same under FERPA. Even in a counterfactual world where Movants had personally enforceable FERPA rights, *but see Gonzaga Univ.*, 536 U.S. at 276, the stipulated protective order does not threaten them. *See supra* at 10-11.

---

[4] The result is the same for Movants' arguments about FERPA. *See supra* at 10-11.

1     Indeed, Plaintiffs have "other means" of asserting their rights: a
2   lawsuit if—and it's a big "if"—UCLA actually suppresses their speech
3   sometime in the future. *Alisal*, 370 F.3d at 921. "In the Ninth Circuit, an
4   intervention applicant cannot show that its significantly protectable
5   interest in the outcome of a legal action would be practically impaired
6   when that applicant has other ways to redress its concerns." *Burns v.*
7   *Thuney*, No. 3:23-cv-526, 2023 WL 11758597, at *3 (D. Or. June 28, 2023).
8   "Mere inconvenience … caused by requiring [a would-be intervenor] to
9   litigate separately is not the sort of adverse practical effect contemplated
10  by Rule 24(a)(2)." *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977).

11    **C. The motion to intervene is untimely.**

12    Courts weigh three factors to determine timeliness: "(1) the stage of
13  the proceeding at which an applicant seeks to intervene; (2) the prejudice
14  to other parties; and (3) the reason for and length of the delay." *Alisal*,
15  370 F.3d at 921. A district court's "timeliness determination is reviewed
16  for abuse of discretion." *Smith v. LAUSD*, 830 F.3d 843, 853 (9th Cir.
17  2016). Here, all three factors demonstrate that the motion is untimely.

18    **1. Movants seek to intervene at a late stage of the litigation.**

19    The first timeliness factor focuses on the stage of the proceeding at
20  which a movant seeks intervention. "[T]he fact that [a] district court has
21  substantively—and substantially—engaged the issues in this case
22  weighs heavily against allowing intervention as of right." *Smith v.*
23  *Marsh*, 194 F.3d 1045, 1050 (9th Cir. 1999). And that is all the more true
24  when the parties have already engaged in a significant amount of
25  litigation before the motion's filing. *See LULAC v. Wilson*, 131 F.3d 1297,
26  1303 (9th Cir. 1997) (denying intervention when "a lot of water had
27  already passed underneath [the] litigation bridge").

28

1    That's this case. As explained above, this litigation has been pending

2 for almost a year. Nine months ago, Movants' counsel filed an amicus

3 brief, and this Court entered a preliminary injunction that engaged with

4 the substance of Plaintiffs' claims, holding that Plaintiffs were likely to

5 succeed on their Free Exercise claims. *See supra* at 3-4. The Court set a

6 case and trial schedule nearly five months ago, on a timeframe designed

7 to resolve this case expeditiously. *Supra* at 5. Ever since, the parties have

8 been vigorously litigating, including fully briefing a pending motion for

9 judgment on the pleadings, a response to the United States' statement of

10 interest, and a pending motion for partial summary judgment, with the

11 record now swelling to thousands of pages. *Supra* at 4-5. The parties have

12 also been engaged in significant discovery practice, with the close of fact

13 discovery less than three months away, and have attended two separate

14 day-long settlement negotiations, including a settlement conference with

15 a magistrate judge. *Supra* at 5. In the meantime, Movants have been on

16 the sidelines, sitting on their hands.

17    In similar circumstances, courts have not hesitated to deny

18 intervention. *See, e.g., Chamness v. Bowen*, 722 F.3d 1110, 1121-22 (9th

19 Cir. 2013) (affirming denial of intervention because party sought

20 intervention after plaintiffs had filed a motion for summary judgment

21 that could resolve the case); *Genesis 1 Oil Servs., LLC v. Wismann Grp.,*

22 *LLC*, No. 8:20-cv-2114, 2023 WL 355149, at *2 (C.D. Cal. Jan. 6, 2023)

23 (denying intervention when the "parties had completed substantial

24 discovery," the Court had "grant[ed] Plaintiffs preliminary injunctive

25 relief," and summary judgment papers had been filed), *appeal dismissed*,

26 2024 WL 385655 (9th Cir. Feb. 1, 2024); *High Sierra Hikers Ass'n v. DOI*,

27 No. 09-4621, 2012 WL 1949153, at *1 (N.D. Cal. May 29, 2012) ("The fact

28 that litigation has progressed far beyond the pleadings stages and that

the court has delved significantly into the substantive issues of this case supports denying applicants' motion." (citing *Henrikson v. Turbomeca, S.A.,* No. 06-1563, 2007 WL 2215398 (E.D. Cal. July 30, 2007))).

And when courts have permitted intervention, it has typically been in much earlier stages of litigation. *See, e.g., Droplets, Inc. v. Yahoo! Inc.*, No. 12-cv-3733, 2019 WL 9443778, *4 (N.D. Cal. Nov. 19, 2019) (intervention timely where the court had not "addressed the merits of any party's substantive claims or defenses" or "set a discovery or expert report deadline"); *Sage Electrochromics, Inc. v. View, Inc.*, No. 12-cv-6441, 2013 WL 6139713, *2 (N.D. Cal. Nov. 21, 2013) (intervention timely where the court had not yet "addressed the merits of any party's substantive contentions, and [had] not yet even … set a final case schedule").

Indeed, in *Acosta v. Huppenthal*, No. 10-cv-623, 2012 WL 12829994 (D. Ariz. Feb. 6, 2012)—which Movants cite—the movants sought to intervene *before* the Court had ruled on the motion for preliminary injunction or the motion to dismiss; "no discovery ha[d] taken place"; and "proceedings ha[d] been focused on preliminary matters such as standing," not the "substantive issues" on the merits. *Id.* at *1-2. That is nothing like this case.

## 2. Intervention at this late stage would prejudice Plaintiffs.

"The presence or absence of prejudice to other parties … is a second important factor in the timeliness determination. *Marsh*, 194 F.3d at 1051. Existing parties are prejudiced when "many substantive and procedural issues ha[ve] already been settled" and the movants seek to "inject new issues and matters that are well beyond the scope" of the parties' claims. *Id*. This includes new legal arguments, *id.*, as well as factual development requiring additional discovery. *See Koepke v. Becton, Dickinson & Co.*, 74 F.3d 1246 (9th Cir. 1996) (Table) ("[A]dditional

discovery would prejudice present parties."); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 315 F.R.D. 169, 173 (S.D.N.Y. 2016) ("Case law holds that where a grant of a motion to intervene would require further discovery, a court may properly deny the motion.").

Movants failed to file a proposed pleading consistent with Rule 24(c), which would have explained the arguments and factual assertions that Movants seek to make. But even without that pleading, prejudice is clear from the face of Movants' motion.

There, Movants explain that they seek to introduce novel factual assertions and legal arguments. They acknowledge that UCLA conceded that Jews were forced to "denounce their faith or disavow Israel," but expressly seek to introduce alternative facts allegedly showing that the encampment wasn't antisemitic. Dkt.164 at 8. They argue that Plaintiffs' religious beliefs are "political, not religious." *Id.* Incredibly, they attempt to redefine Plaintiffs' Jewish religious beliefs as "the insistence that Israel remain a Jewish ethnostate, a project that requires ongoing dispossession and violence against Palestinians," *id.*—demonstrating beyond all doubt Movants' "clear and impermissible hostility toward [Plaintiffs'] sincere religious beliefs." *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 634 (2018). Equally offensively, Movants also second-guess Plaintiffs' beliefs—including "whether Plaintiffs' sincerely held religious belief was that encampment members ought to be brutally attacked for their beliefs." Dkt.164 at 16. And they ask this Court to sit in judgment and define Plaintiffs' religious beliefs for them, because otherwise (they say), "[l]eaving Zionism [u]ndefined [a]llows Plaintiffs to [a]rgue Anti-Zionism is [a]ntisemitism." *Id.* at 8. These arguments are not only new, but reprehensible.

1    Moreover, multiple (and again, pseudonymous) Movants claim that

2    they were in the encampment every day and did not witness any

3    antisemitic acts (at least as they understand that term). *Id.* at 14-15.

4    Given all this, Plaintiffs would need significant additional discovery,

5    including depositions of these individuals and their associates and all

6    communications regarding the encampment. But Plaintiffs have already

7    filed a motion for partial summary judgment, and the discovery deadline

8    is fast approaching. To allow intervention now—with movants who

9    expressly seek to revisit factual questions and introduce new legal

10    arguments to deny a permanent injunction—would greatly prejudice

11    Plaintiffs. *See, e.g., Trs. of Nat'l Ret. Fund v. Fireservice Mgmt. LLC*, 384

12    F. Supp. 3d 412, 420 (S.D.N.Y. 2019) (additional discovery required

13    prejudiced plaintiffs).

14    Finally, the previous amicus brief filed by Movants' counsel (Dkt.84)

15    only underscores how allowing intervention here would "inject new issues

16    and matters" well beyond the scope of this case. *Marsh*, 194 F.3d at 1051.

17    In that amicus brief, Faculty for Justice in Palestine at UCLA sought to

18    have this Court expand this litigation and rule on "time restrictions [and]

19    the imposition of a curfew on the grounds of a public university." Dkt.84

20    at 14. Counsel sought to persuade this Court to hold that "[e]ven where

21    there may be technical violations of specific university rules," UCLA

22    should not enforce those rules against the activists. *Id.* And counsel

23    requested that this Court deploy this lawsuit "to order the University of

24    California to grant blanket amnesty to all Palestine solidarity

25    protesters," "pay all medical expenses for injuries sustained … from

26    outside agitators," and "to disclose and divest all of its financial

27    investments in corporations and stocks that profit off of the killing of the

28

Palestinian people, the military occupation of Palestine, and the perpetuation of an unlawful apartheid regime." *Id.* at 15.

Because "intervenors are permitted to litigate fully once admitted to a suit," Movants—some of whom are likely members of Faculty for Justice in Palestine at UCLA—could attempt to raise the same arguments in this litigation, thereby prejudicing Plaintiffs. *LULAC*, 131 F.3d at 1304. This Court previously concluded that such arguments "would be better addressed in a separately filed action." Dkt.89 at 3 n.3. It should stay the course and conclude that allowing the dramatic expansion of this litigation—after "many substantive and procedural issues ha[ve] already been settled"—would be prejudicial. *Marsh*, 194 F.3d at 1051.

### 3. Movants have no legitimate reason for their delay.

Finally, "[a] party must intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of litigation." *Alisal*, 370 F.3d at 923 (internal quotation marks omitted). Here, Movants should have known (and did know) early on that their alleged interests "might be adversely affected" by this litigation. Movants' counsel knew about and filed an amicus brief in this case back in August 2024 (perhaps for some of the same clients), even before the Court entered its preliminary injunction that the present motion repeatedly attacks.

Movants offer only one argument (and all of two sentences) justifying their delay. Dkt.164 at 25. They claim that they knew they needed to intervene only on March 5, 2025, after the parties filed a Joint Stipulation for Discovery stating that FERPA would apply to the disclosure of personally identifiable information. *Id.*

But as already explained, that argument makes no sense. For one thing, most of the Movants are *professors*, meaning FERPA doesn't even

apply to their records. *Supra* at 10. And more broadly, as Movants repeatedly argue, their interests in this litigation are to protect their alleged right to free expression, combat the supposed conflation of opposition to Israel with antisemitism, offer an alternative account of the encampment's activities, and scrutinize Plaintiffs' religious beliefs. Suffice it to say, those interests are in no way tied to FERPA or a discovery order. They're tied to the substance and merits of this case, which have been very well-publicized since the lawsuit was filed in June 2024. Thus, Movants will have known about the issues in this case since at least the preliminary-injunction stage, much as their counsel did. That they seek to intervene now—and without any adequate explanation for the delay—demonstrates that their motion is untimely.[5]

### D. UCLA adequately represents Movants' interests.

Movants bear the burden of demonstrating that existing parties do not adequately represent their interests. *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002). "Under well-settled precedent in this circuit, '[w]here an applicant for intervention and an existing party "have the same ultimate objective, a presumption of adequacy of representation arises."'" *LULAC*, 131 F.3d at 1305 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)). Movants can rebut that presumption only with a "compelling showing." *Perry*, 587 F.3d at 950-51.

---

[5] To the extent the Court believes that the Movants' state of mind regarding the lawsuit would be helpful to deciding the motion, the Court could order depositions of the Movants regarding their interests in this lawsuit, when they found out about the lawsuit, and whether the faculty Movants are members of Faculty for Justice in Palestine.

Here, a presumption of adequacy of representation attaches because Movants and UCLA share the same "ultimate objective": upholding the constitutionality of UCLA's actions toward Jews and denying a permanent injunction that requires equal treatment of Jews.[6] *Id.* at 951 (movants and defendants shared the same "ultimate objective" of "defending the constitutionality of Prop. 8 and the principle that the traditional definition of marriage is the union of a man and a woman"); *LULAC*, 131 F.3d at 1305 (same ultimate objective "to ensure that Proposition 187 is upheld as constitutional"); *Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006) (same ultimate objective of "defending" and "upholding the validity of Measure 26").

"Thus, a presumption arises that defendant is adequately representing [Movants'] interests," *Id.* at 957, and Movants' efforts to overcome that presumption must be "compelling." *Perry*, 587 F.3d at 951. Movants fail to mention anything regarding a presumption of adequacy or that they must make a "compelling" showing of inadequacy. Dkt.164 at 25-26. That's because they cannot meet that heavy burden.

UCLA has "vigorously" challenged the need for an injunction at every turn, thereby "protect[ing] [Movants'] asserted interest in the litigation." *LULAC*, 131 F.3d at 1306; *see, e.g.*, Dkt.62; Dkt.91; Dkt.107; Dkt.157. Indeed, UCLA has consistently reiterated that its response to the encampment was purportedly aimed at ensuring free expression on

---

[6]  Movants' argument fares no better if they claim an ultimate objective in vindicating their asserted FERPA rights. *See supra* at 10-11. UCLA entered into a protective order requiring compliance with FERPA; and UCLA's federal funding is at risk if it violates FERPA. Dkt.133 at 2, 5, 9; 20 U.S.C. § 1232g(b)(2). So here too, UCLA's interests align with Movants'.

campus and that it needs to be able to do so going forward. *See, e.g.*, Dkt.62 at 10-11, 20; Dkt.157 at 9.

Movants claim inadequacy of representation by faulting UCLA for failing to make certain arguments. First, they assert that UCLA has not disputed Plaintiffs' factual allegations. To Movants, this means—among other things—that UCLA must argue that Plaintiffs' religious beliefs are not really religious, but merely political, Dkt.164 at 8, 11; that UCLA must "test" whether Plaintiffs' religious beliefs were "that encampment members ought to be brutally attacked for their beliefs," *id.* at 16, 25; and that this Court must redefine Plaintiffs' religious beliefs as "the insistence that Israel remain a Jewish ethnostate," which "requires ongoing dispossession and violence against Palestinians," *id.* at 8-9. But to prove inadequacy of representation, Movants must show that UCLA "conceded … *necessary* elements to the proceeding." *Perry*, 587 F.3d at 954 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). At best, these alleged factual disputes are not only unnecessary to this litigation—they're distractions. And at worst, adjudicating them would lead this Court into an entangling, religious thicket. *See supra* at 9-10.

Second, Movants contend that UCLA "failed to contest the legal merits" of Plaintiffs' Free Exercise Clause claim. Dkt.164 at 25. Not so. UCLA has challenged Plaintiffs' free exercise claims from multiple angles, including asserting that the school's policies and actions were neutral and generally applicable. *See, e.g.,* Dkt.62 at 16; Dkt.108-1 at 22-23; Dkt.123 at 12; and Dkt.157 at 21-23. And insofar as Movants claim that Plaintiffs and this Court misinterpreted the law by relying on *Sherbert v. Verner*, *see* Dkt.164 at 17-18, it is Movants that have done so. In its preliminary injunction order, this Court cited *Trinity Lutheran v. Comer*, 582 U.S. 449, 463 (2017), and *Carson v. Makin*, 596 U.S. 767, 778

(2022), both of which relied on *Sherbert*, as have other modern Free Exercise precedents. *See, e.g.*, *Fulton v. Philadelphia*, 593 U.S. 522, 533-35 (2021).

At bottom, Movants' factual and legal disagreements with UCLA are meritless and at best, "mere difference[s] in litigation strategy [that] are not enough to justify intervention." *Perry*, 587 F.3d at 954; *Nw. Forest Res. Council*, 82 F.3d at 838 ("minor" disagreement that is "not central" to the action and "reflects only a difference in strategy" "fail[] to demonstrate inadequacy of representation"). UCLA adequately represents Movants' interests, and Movants failed to make a compelling showing otherwise.

## II. Movants also fail to meet the requirements for permissive intervention.

"In this circuit, there are three necessary prerequisites for allowing permissive intervention pursuant to Rule 24(a)(2)." *LULAC*, 131 F.3d at 1308. A movant for permissive intervention must establish "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the [movant's] claim or defense, and the main action, have a question of law or a question of fact in common.'" *Id.* "Even if a[ movant] satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly*, 159 F.3d at 412.

Movants have not satisfied these three prerequisites. First, intervention is untimely. The timeliness inquiry is the same for permissive intervention and intervention as of right, except that courts "analyze the timeliness element more strictly" for permissive intervention. *LULAC*, 131 F.3d at 1308. Because Movants' request for intervention as of right is untimely, the same must be true for permissive intervention. *Id.*

Second, Movants made no attempt to show independent grounds for intervention. *See* Dkt.157 (failing to mention "jurisdiction" even a single time). A proposed intervenor "fails to satisfy the first prong of the permissive intervention standard" when "it asserts no independent basis for jurisdiction." *Nw. Forest Res. Council*, 82 F.3d at 839. And Movants' pseudonymity and failure to file a pleading only compound the error, denying this Court the ability to concretely identify its basis for jurisdiction. *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329-30 (9th Cir. 1977) "[T]he identity of the parties to the suit is critical" and the absence of that knowledge "thwart[s] full consideration of the many factors that bear upon the decision to admit them as [parties] to the suit").

Third, there is no common question of law or fact at issue. *See LULAC*, 131 F.3d at 1302. As already explained, Movants' motion raises factual and legal distractions about the religiosity of Plaintiffs' beliefs and whether the preliminary injunction stifles Movants' free speech, classroom instruction, learning opportunities, and scholarship by requiring equal access for Jews. Those issues lack both merit and anything significantly in common with Plaintiffs' actual claims; at the very best, they are "possible claims" that "would be better addressed in a separately filed action." Dkt.89 at 3 n.3; *see also Donnelly*, 159 F.3d at 412 ("The intervention rule is not … intended to allow the creation of whole new lawsuits by the intervenors." (quoting *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994))). Indeed, here, Movants did not raise any "claim or defense" in any "pleading" as Rule 24 requires. Fed. R. Civ. P. 24(c).

But even had Movants satisfied the prerequisites, permissive intervention should still be denied based on other factors. In the

permissive intervention inquiry, courts also consider (i) the nature and extent of the intervenors' interest, (ii) whether the intervenors' interests are adequately represented by other parties, (iii) whether intervention will prolong or unduly delay the litigation or prejudice the original parties, and (iv) the legal position they seek to advance and its probable relation to the merits of the case. *Spangler*, 552 F.2d at 1329; Fed. R. Civ. P. 24(b)(3).

Regarding factors one, two, and three, Plaintiffs have already demonstrated that Movants do not have a significantly protectable interest in this case, s*ee supra* at 8-12; are adequately represented by UCLA, *see supra* at 19-22; and would unduly delay and prejudice the Plaintiffs, *see supra* at 15-18. And regarding the fourth factor, courts routinely deny permissive intervention where, as here, an intervenor seeks to confuse the issues or whose inclusion would "necessitate the consideration of extraneous legal and factual issues" that wouldn't otherwise be at issue. *See supra* at 9-10, 16-18, 21-22; *see*, *e.g., UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 414 (N.D. Cal. 2004); *Earth Island Institute v. Wheeler*, 464 F. Supp. 3d 1138, 1146-47 (N.D. Cal. 2020); *Ctr. for Biological Diversity v. Lubchenco*, No. 09-4087, 2010 WL 1038398, at *9 (N.D. Cal. Mar. 19, 2010). This Court should do likewise.

## CONCLUSION

This Court should deny intervention.

Dated: May 20, 2025

Respectfully submitted,

/s/ *Eric C. Rassbach*
Eric C. Rassbach (CA SBN 288041)
Mark L. Rienzi (DC Bar No. 494336)*
Daniel L. Chen (CA SBN 312576)
Laura Wolk Slavis (DC Bar No. 1643193)*
Jordan T. Varberg (DC Bar No. 90022889)*
Amanda G. Dixon (DC Bar No. 90021498)*
Reed M. Bartley (TX Bar No. 24125115)* ‡
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 tel. / 202-955-0090 fax
erassbach@becketfund.org

Paul D. Clement (DC Bar No. 433215)*
Erin E. Murphy (DC Bar No. 995953)*
Matthew D. Rowen (CA SBN 292292)
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314

Elliot Moskowitz (NY Bar No. 4039160)*
Marc J. Tobak (NY Bar No. 4717336)*
Adam M. Greene (NY Bar No. 5812169)*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

*Attorneys for Plaintiffs*

\* Admitted *pro hac vice*.

‡ Not admitted to the D.C. Bar; admitted only in Texas.
  Supervised by licensed D.C. Bar members.

**CERTIFICATE OF COMPLIANCE**

Undersigned counsel of record for Plaintiffs certifies that this brief contains 6,770 words, which complies with this Court's word limit for memoranda of points and authorities.

Dated: May 20, 2025

/s/ *Eric C. Rassbach*
Eric C. Rassbach
*Counsel for Plaintiffs*