THOMAS B. HARVEY (SBN 287198)
Law Offices of Thomas B. Harvey
365 East Avenida de Los Arboles, #226
Thousand Oaks, CA 91360
Tel: (805) 768-4440
Email: tbhlegal@proton.me

Attorney for Proposed Intervenors

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

YITZCHOK FRANKEL;
JOSHUA GHAYOUM;
EDEN SHEMUELIAN, and
DR. KAMRAN SHAMSA

                    Plaintiffs,

        vs.

REGENTS OF THE UNIVERSITY OF
CALIFORNIA; MICHAEL V. DRAKE,
President of the University of California;
GENE D. BLOCK, Chancellor, University
of California, Los Angeles; DARNELL
HUNT, Executive Vice-President and
Provost; MICHAEL BECK,
Administrative Vice Chancellor;
MONROE GORDEN, JR., Vice
Chancellor; and RICK BRAZIEL,
Assistant Vice Chancellor, each in both
his official and personal capacities,

                    Defendants.

) Case No. 2:24-cv-04702-MCS-
)
)
)
)
)
)
)
)
)
)  **PROPOSED INTERVENORS'**
)  **ANSWER AND AFFIRMATIVE**
)  **DEFENSES TO PLAINTIFFS'**
)  **FIRST AMENDED COMPLAINT**
)
)
)
)
)
)
)  **DEMAND FOR JURY TRIAL**
)
) Judge: Hon. Mark C. Scarsi
) Courtroom:  7C
)
)

## **INTRODUCTION**

Proposed Intervenors, by and through their undersigned counsel, respectfully submit this Answer to the First Amended Complaint ("FAC"). Proposed Intervenors intervene in this matter to: (1) demonstrate that no "Jew Exclusion Zone" existed in the Palestine Solidarity Encampment; (2) affirm that there was no violation of the Free Exercise Clause of the First Amendment; (3) protect the privacy and confidentiality of student disciplinary and conduct records that are not properly subject to disclosure in this proceeding; and (4) safeguard the fundamental freedoms of speech and religion, particularly as they relate to the distinction between anti-Zionist political expression and antisemitism, and to prevent the improper conflation of political dissent with religious discrimination that chills speech, classroom instruction, and advocacy at UCLA.

Proposed Intervenors deny the material allegations of the FAC except as expressly admitted and assert all applicable defenses, including those specifically related to the protection of student rights, the preservation of free expression on campus, and adherence to constitutional standards.

## **NATURE OF ACTION**

1.      Deny that the Palestine Solidarity Encampment and anti-genocide protests on UCLA's campus in 2024 were antisemitic or anti-Jewish.  Rather, they were and remain about resistance to mass killings by Israel in Palestine and those who finance and profit from them.  The protests originated in the desire for Palestinian liberation, which is both enshrined in international law and rooted in the core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism.  Calling these protests antisemitic or anti-Jewish conflates Judaism with Zionism (as manifested in the forced displacement and decades-long oppression of indigenous Palestinians) and Israel's ongoing genocide.  This conflation is antisemitic itself and risks fomenting

antisemitism by seeking to convince people that being Jewish is synonymous with crimes against humanity, such as the forced displacement and oppression of indigenous Palestinians and Israel's ongoing genocide.

2.      Deny that Jewish students and faculty were unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism, which is itself patently antisemitic.  Deny the existence of a "culture" on the UCLA campus that "calls for the annihilation of the Jewish people, Nazi symbolism, and religious slurs," let alone such a "culture" that UCLA officials aided and abetted.

3.      Intervening Defendants admit that matters on the UCLA campus turned particularly ugly on April 30, 2024, when a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members.

4.      Deny that the Palestine Solidarity Encampment ever prevented access to any critical educational infrastructure on the UCLA campus.

5.      Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment chanted antisemitic threats.  Deny that chants for Palestinian freedom (e.g., "from the River to the Sea, Palestine will be free") are antisemitic.  The protest chants originate in the desire for Palestinian liberation, which is rooted in core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism.  Calling these protest chants antisemitic or anti-Jewish dangerously conflates Judaism with Zionism (as manifested in the forced displaced and decades-long oppression of indigenous Palestinians) and Israel's ongoing genocide.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment chanted "death to the Jews" or "free Palestine from the hand of Jews."  Deny that any, let alone all, genuine members of the Palestine

Solidarity Encampment, many of the members of which were Jewish, hate Jewish people. By failing to include any identifying information, Plaintiffs' Complaint fails to foreclose the possibility that one or more pro-genocide Zionists or other supremacists uttered hateful chants so they could be falsely attributed to the Palestine Solidarity Encampment. For example, Plaintiff Yitzchok Frankel regularly attended gatherings of Students for Justice in Palestine ("SJP"), even though his Complaint betrays strident opposition to Palestinian freedom and equal rights.

6. Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

7. Deny that the Palestine Solidarity Encampment was ever anything remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Admit that after a violent mob of self-proclaimed Zionists attacked the Palestine Solidarity Encampment on April 30, 2024, safety measures changed to prevent further attacks, limiting access to only people who had previously been in the encampment or those who were vouched for by another member. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any

4

part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.

8.      Deny that the Palestine Solidarity Encampment was ever anything remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Admit that wrist bands were issued to members of the encampment. Deny that those wristbands were issued on the basis of religion.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.

9.      Deny that the Palestine Solidarity Encampment was ever anything remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.

10.     Deny that the Palestine Solidarity Encampment was ever anything remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus,

as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.

11.    Deny that the Palestine Solidarity Encampment was ever anything remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Far from being protected by UCLA campus police or other law enforcement, on April 30, 2024, UCLA campus police and other law enforcement stood by as a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members. UCLA, UCLA private security and UCPD's failure to protect members of the Palestine Solidarity Encampment was part of a longstanding pattern of nightly harassment by the mob that steadily escalated to which UCLA regularly responded by adopting the inaccurate rhetoric of the attackers including about safety and restricted access.

12.    Deny the allegations in Paragraph 12. Far from being protected by UCLA campus police or other law enforcement, on April 30, 2024, UCLA campus police and other law enforcement stood by as a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members.  UCLA, UCLA private security and UCPD's failure to protect members of the Palestine Solidarity Encampment was part of a longstanding pattern of nightly harassment by the mob that steadily escalated to which UCLA regularly responded by adopting the inaccurate rhetoric of the attackers including about safety and restricted access.

13.    Deny that the Palestine Solidarity Encampment was ever anything remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members

throughout its existence, including the predominantly Jewish Intervening Defendants. Far from being protected by UCLA campus police or other law enforcement, on April 30, 2024, UCLA campus police and other law enforcement stood by as a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members. UCLA, UCLA private security and UCPD's failure to protect members of the Palestine Solidarity Encampment was part of a longstanding pattern of nightly harassment by the mob that steadily escalated to which UCLA regularly responded by adopting the inaccurate rhetoric of the attackers including about safety and restricted access.

14.    Deny that the Palestine Solidarity Encampment was ever anything remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Far from being protected by UCLA campus police or other law enforcement, on April 30, 2024, UCLA campus police and other law enforcement stood by as a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members.

15.    Deny that the Palestine Solidarity Encampment was ever anything remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Far from being protected by UCLA campus police or other law enforcement, on April 30, 2024, UCLA campus police and other law enforcement stood by as a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members.

16.    Deny that the Palestine Solidarity Encampment was ever anything remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Far from being protected by UCLA campus police or other law enforcement, on April 30, 2024, UCLA campus police and other law enforcement stood by as a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members.

17.    Deny that the Palestine Solidarity Encampment was ever anything remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Far from being protected by UCLA campus police or other law enforcement, on April 30, 2024, UCLA campus police and other law enforcement stood by as a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.

18.    Admit that there were ongoing anti-genocide protests at UCLA. Admit that there was a protest called the "Week of Rage". Deny the remaining allegations in Paragraph 18. As long as Israel continues its genocide, the anti-genocide protests, which include many Jewish members, should and will continue. Deeny that they have never prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion.

19.    Admit.

20.     Intervening Defendants, who are predominantly Jewish, deny that Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism. By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism.  Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

21.     Intervening Defendants, who are predominantly Jewish, deny that Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism. By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism.   Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations— regardless of the perpetrators' identity.

22.     Intervening Defendants, who are predominantly Jewish, deny that Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism. By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like

9

Plaintiffs and the ADL create antisemitism. Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

23. Intervening Defendants, who are predominantly Jewish, deny that Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish. Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism. By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism. Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

24. Intervening Defendants, who are predominantly Jewish, deny that Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish. Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism. The Court's Preliminary Injunction, including the language quoted in this paragraph, was based on a one-sided process that did not test Plaintiffs' false allegations of discrimination against Jews (by Jews) due to the lack of an adversarial process for this core allegation. Plaintiffs' entire case is based on allegations of discrimination against Jews by anti-genocide protesters, including the predominantly Jewish Intervening Defendants (these are the "'third-party protesters'" referenced in the quotation from the Court's Preliminary Injunction). This means the only way to truly test these allegations is through an adversarial process that includes the Intervening Defendants.

25.     Admit that these are actual quotes from the Court's Order.  Deny that Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism. By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism.   Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

26.     Admit that the UCLA Defendants filed a notice of appeal.  Deny that Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that Jewish students needed or need their own injunction whose enforcement would require campus police to, *inter alia*, make determinations as to whether it is "Jewish" to support or oppose Israel's ongoing genocide and support or oppose Zionism, which for decades has been synonymous with Israel's forced displacement and perpetual oppression of indigenous Palestinians, based solely on religious discrimination.

27.     Admit that political pressure forced the UCLA Defendants to dismiss their appeal, just as it is preventing them from defending against Plaintiffs' primary allegations of discrimination against Jews by anti-genocide protesters, including the predominantly Jewish Intervening Defendants.  Deny that Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and the State of Israel's ongoing genocide with Judaism.  By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long

11

1    oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism.  Anti-

2    genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and

3    oppression of indigenous populations—regardless of the perpetrators' identity.

4          28.    Admit that the UCLA Defendants are facing withering political pressure that is

5    preventing them from defending against Plaintiffs' primary allegations of discrimination against Jews

6    by anti-genocide protesters, including the predominantly Jewish Intervening Defendants.  Deny that

7    Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining

8    full access to campus facilities due to being Jewish.  Deny that the Jewish community has been

9    neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing

10   genocide with Judaism.  As its name demonstrates, the "Task Force to Combat Antisemitism and Anti-

11   Israeli Bias at UCLA" was not an objective investigatory task force designed to determine whether

12   there is bias against Judaism or Israel at UCLA, but rather it assumed there is bias against Judaism or

13   Israel at UCLA.  The Task Force's reliability is further undermined by the complete absence of

14   UCLA's own experts on Jewish studies and antisemitism, as well as heavy reliance on statistics

15   generated by two sources:  (1) a survey of a non-randomized "recruited" population; and (2) the Anti-

16   Defamation League (the "ADL"), which is an organization whose statistics, particularly what it deems

17   to be an act of antisemitism, have been so thoroughly discredited that "Wikipedia declared the group

18   'generally unreliable' to provide information on the Israel-Palestinian conflict."[1]  Much like Plaintiffs

19   here, the ADL have been caught embellishing claims of antisemitism to counter anti-genocide

20   advocacy:  "Rather than attacks against Jews due to their religious or ethnic identity, many of the

21   cited 'incidents' were actions directed against Israel to protest the conduct of its war in Gaza—

[1]https://www.usatoday.com/story/news/politics/2024/06/21/wikipedia-adl-israel-palestinian-conflict-antisemitism/74172605007/.

12

incidents the ADL would later admit made up nearly half of the total."[2]  By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism.   Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

29.    *See* Answer to Paragraph 28

30.    *See* Answer to Paragraph 28.

31.    *See* Answer to Paragraph 28.

32.    *See* Answer to Paragraph 28.

33.    *See* Answer to Paragraph 28.

34.    *See* Answer to Paragraph 28.

35.    Denied.

36.    Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose

---

[2]  https://www.thenation.com/article/society/adl-israel-criticism-antisemitism-claims/; *see also*, https://jewishcurrents.org/top-executive-leaves-adl-over-ceos-praise-of-elon-musk ("Former [ADL] staffers told *Jewish Currents* that in the past months, [ADL CEO Jonathan] Greenblatt has redirected the ADL's day-to-day work to target pro-Palestine activism rather than focusing on antisemitism in American life, a shift they say seriously undermines the organization's credibility.").

Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

37.    As indigenous Levantines, all Palestinians are "Children of the stock of Abraham," but not all Jews are, as anyone of any ethnicity can convert to Judaism.

38.    Deny that Jewish students and faculty were unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism, which is itself patently antisemitic.  UCLA must do more protect the civil rights of anti-genocide protesters.

## II.    **JURISDICTION AND VENUE**

39.    Admitted.

40.    Admitted.

41.    Deny that Plaintiffs suffered any Constitutional violations.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

42.    Admitted.

## III.    **THE PARTIES**

43.     Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 43.

44.     Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 44.

45.     Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 45.

46.     Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 46.

47.     Admitted.

48.     Admitted.

49.     Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 49.

50.     Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50.

51.     Admitted.

52.     Admitted.

53.     Admitted.

54.     Admitted.

55.     Admitted.

56.     Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 56.

57.     Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 57.

PROPOSED INTERVENORS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT Case No. 2:24-cv-04702-MCS

58.    Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 58.

59.    Admitted.

### IV.    FACTUAL BACKGROUND

**A. UCLA**

60.    Admitted.

61.    Admitted.

62.    Admitted.

63.    Admitted.

64.    Admitted.

65.    Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 65.

66.    Paragraph 66 purports to quote from UCLA's Student Code of Conduct, and Defendants refer to that statement as the best evidence of its contents.

67.    Paragraph 67 purports to quote from a public statement and Defendants refer to that statement as the best evidence of its contents.

68.    Admitted.

69.    Paragraph 69 purports to quote from a document summarizing relevant UCLA policies titled "Your First Amendment Rights as a Student at UCLA", and Defendants refer to that policy as the best evidence of its contents.

70.    Paragraph 70 purports to quote from a policy, and Defendants refer to that policy as the best evidence of its contents.

71.     Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 71 due to its failure to define what it means to have "exclusive control" over campus "spaces" and for how long.

72.     Admit that the University of California has an anti-discrimination policy that is in effect at UCLA and is intended to protect students and faculty from discrimination and harassment.

73.     Paragraph 73 purports to quote from the University of California "Anti-Discrimination Policy" and Defendants refer to that policy as the best evidence of its contents.

B.  **Deny The Palestine Solidarity Encampment Was Antisemitic.**

74.     Deny that the Palestine Solidarity Encampment and anti-genocide protests on UCLA's campus were antisemitic.  Rather, they were and remain about resistance to mass killings by Israel in Palestine and those who finance and profit from them.  The protests originated in the desire for Palestinian liberation, which is both enshrined in international law and rooted in the core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism.

75.     Deny that the Palestine Solidarity Encampment and anti-genocide protests on UCLA's campus were antisemitic.  Rather, they were and remain about resistance to mass killings by Israel in Palestine and those who finance and profit from them.  The protests originated in the desire for Palestinian liberation, which is both enshrined in international law and rooted in the core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism.  Calling these protests antisemitic dangerously conflates Judaism with Zionism (as manifested in the forced displaced and decades-long oppression of indigenous Palestinians) and Israel's ongoing genocide.  By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous

17

Palestinians, groups like Plaintiffs and the ADL create antisemitism. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment and anti-genocide protests engaged in antisemitic conduct.

76.    Admit that this Chancellor Block quote is a product of the withering political pression the UCLA Defendants are facing, which is preventing them from defending against Plaintiffs' primary allegations of discrimination against Jews by anti-genocide protesters, including the predominantly Jewish Intervening Defendants.

77.    Deny that the anti-genocide protests on UCLA's campus were antisemitic. Rather, they were and remain about resistance to mass killings by Israel in Palestine and those who finance and profit from them. The protests originated in the desire for Palestinian liberation, which is both enshrined in international law and rooted in the core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism. Calling these protest chants antisemitic dangerously conflates Judaism with Zionism (as manifested in the forced displaced and oppression of indigenous Palestinians) and Israel's ongoing genocide.

78.    Deny that the anti-genocide protests on UCLA's campus were antisemitic or anti-Jewish. Rather, they were and remain about resistance to mass killings by Israel in Palestine and those who finance and profit from them. The protests originated in the desire for Palestinian liberation, which is both enshrined in international law and rooted in the core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism. Calling these protest chants antisemitic or anti-Jewish dangerously conflates Judaism with Zionism (as manifested in the forced displaced and oppression of indigenous Palestinians) and Israel's ongoing genocide. Deny that any, let alone all, genuine members of the anti-genocide protests engaged in antisemitic conduct. By failing to include any identifying information, Plaintiffs' Complaint fails to foreclose the possibility that one or more pro-genocide Zionists or other supremacists uttered hateful

18

chants so they could be falsely attributed to the Palestine Solidarity Encampment.  For example, Plaintiff Yitzchok Frankel regularly attended gatherings of Students for Justice in Palestine ("SJP"), even though his Complaint conveys strident opposition to Palestinian freedom and equal rights.

79.    Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 79.

80.    Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 80.

81.    Paragraph 81 purports to refer to documents referenced in Paragraph 82 and Paragraph 83, and Defendants refer to those documents as the best evidence of their contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81, and on that basis deny them.

82.    Admit that this picture is of a book chapter from Philip Roth's 2004 novel warning against antisemitism, The Plot Against America. Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 82.

83.    Admit that this is a picture of the book cover of The Plot Against America by Philip Roth, who is among the most famous Jewish writers in America. Admit that this book is well-known for being a warning against antisemitism in America. Deny that this book is a symbol of antisemitism. Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 83.

84.    Paragraph 84 purports to quote from a public statement, and Defendants refer to that statement as the best evidence of its contents.

85.    Deny that the Palestine Solidarity Encampment and anti-genocide protests on UCLA's campus were antisemitic.  Rather, they were and remain about resistance to mass killings by Israel in Palestine and those who finance and profit from them.  The protests originated in the desire for

19

Palestinian liberation, which is both enshrined in international law and rooted in the core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism. Calling these protests antisemitic conflates Judaism with Zionism (as manifested in the forced displacement and decades-long oppression of indigenous Palestinians) and Israel's ongoing genocide. This conflation is antisemitic itself and risks fomenting antisemitism by seeking to convince people that being Jewish is synonymous with crimes against humanity, such as the forced displacement and decades-long oppression of indigenous Palestinians and Israel's ongoing genocide.

86.     Deny that anti-genocide protesters, including the predominantly Jewish Intervening Defendants, engaged in antisemitic acts, and even if isolated comments could be heard, it is erroneous to attribute them to the anti-genocide protest movement just as an isolated offensive chant heard at a football stadium is not attributable to all 75,000 fans. Deny that chants for Palestinian freedom (e.g., "from the River to the Sea, Palestine will be free"; "there's only solution: intifada, revolution"; intifada means uprising *against oppression*) are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights. The protests were and are about resistance to resistance to mass killings by Israel in Palestine and those who finance and profit from them. They originated in the desire for Palestinian liberation, which is rooted in core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism. Calling these protests antisemitic or anti-Jewish dangerously conflates Judaism with Zionism (as manifested in the forced displaced and decades-long oppression of indigenous Palestinians) and Israel's ongoing genocide. By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism. Anti-genocide protesters, including Intervenor Defendants, oppose genocide and

forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

87.     Admit that on November 8, 2023, a rally demanding an end the U.S. funding to Israel and that the UC divest from Blackrock occurred at UCLA. Deny that anti-genocide protesters yelled "beat that fucking Jew."  Admit that during this action, students brought out two pinatas with Benjamin Netanyahu and Joe Biden's faces on them. Students proceeded to hit the pinatas, as the emcee on the mic cheered them on and at one point said, "beat that fucking pinata."  Deny that the anti-genocide protest movement is defined by anti-Jewish symbols or chants, as groups like Plaintiffs and the ADL claim by equating Judaism with Israel's ongoing genocide, which has killed thousands of children and is starving millions.  The anti-genocide protests were and are about resistance to mass killings by Israel in Palestine and those who finance and profit from them.  They originated in the desire for Palestinian liberation, which is rooted in core tenets of many cultures and religions— universal human freedom, equality, truth, and peace—including Judaism.  Calling these protests antisemitic or anti-Jewish dangerously conflates Judaism with Zionism (as manifested in the forced displaced and decades-long oppression of indigenous Palestinians) and Israel's ongoing genocide.  By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism.  Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations— regardless of the perpetrators' identity.

88.     Paragraph 88 purports to quote from a public statement, and Intervening Defendants refer to that statement as the best evidence of its contents.  Deny that there were threats of violence or anti-Jewish hostility at the protest.  Admit that Chancellor Block issued a statement on November 10th relying on disinformation published in the New York Post, while making no effort to reach out

21

to protest leadership to confirm what events did or did not take place.  Deny that the anti-genocide protest movement is defined by anti-Jewish symbols or chants, as groups like Plaintiffs and the ADL claim, by equating Judaism with Israel's ongoing genocide, which has killed thousands of children and is starving millions.

89.    Admit that this Chancellor Block quote is a product of the withering political pressure the UCLA Defendants are facing, which is preventing them from defending against Plaintiffs' primary allegations of discrimination against Jews by anti-genocide protesters, including the predominantly Jewish Intervening Defendants.  Deny that there were threats of violence or anti-Jewish hostility at the protest.  Admit that Chancellor Block issued a statement on November 10th relying on disinformation published in the New York Post, while making no effort to reach out to protest leadership to confirm what events did or did not take place.  Deny that the anti-genocide protest movement is defined by isolated and ignorant "outbursts" that follow the lead of groups like Plaintiffs and the ADL by equating Judaism with  Israel's decades-long oppression of indigenous Palestinians and ongoing genocide, which has killed thousands of children, more than all other conflicts combined, and is starving millions.

90.    *See* Answer to Paragraph 89.

91.    Deny that Jewish students and faculty were unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.

92.    Deny that Jewish students and faculty were unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.

93.    Deny that the anti-genocide protest movement is defined by anti-Jewish symbols or chants, as groups like Plaintiffs and the ADL claim by equating Judaism with Israel's ongoing genocide, which has killed thousands of children and is starving millions.  Deny that Jewish students

and faculty were unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.

94.    Deny that Chancellor Block expressed any personal knowledge that "Palestinian activists were seen on campus holding knives."

95.    Deny that Jewish students and faculty were unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that support for genocide and/or the oppression of indigenous populations comprises a protected characteristic.

96.    Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 96 due to Plaintiffs failure to identify or define "[a]ctivists."

97.    Admit that this letter was circulated and contributed to the withering political pressure the UCLA Defendants are facing, which is preventing them from defending against Plaintiffs' primary allegations of discrimination against Jews by anti-genocide protesters, including the predominantly Jewish Intervening Defendants.

98.    Deny that the anti-genocide protest movement is defined by isolated and ignorant "outbursts" that follow the lead of groups like Plaintiffs and the ADL by equating Judaism with Israel's decades-long oppression of indigenous Palestinians and ongoing genocide, which has killed thousands of children, more than all other conflicts combined, and is starving millions.  Deny that Zionism is a necessary, essential, or universal part of Judaism or that expressions of anti-Zionism are equivalent to anti-Judaism, as Judaism is a 3,500-year-old religion, with universal human freedom, equality, truth, and peace among its core tenets, whereas Zionism is 128-year-old nationalist ideology, which has resulted in the forced displacement and oppression of indigenous Palestinians.

99.    Deny that Zionism is a necessary, essential, or universal part of Judaism, or that expressions of anti-Zionism are equivalent to anti-Judaism, as Judaism is a 3,500-year-old religion, with universal human freedom, equality, truth, and peace among its core tenets, whereas Zionism is

23

128-year-old nationalist ideology, which has resulted in the forced displacement and oppression of indigenous Palestinians.

100.    Deny that Jewish students and faculty were unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Admit that groups like Plaintiffs and the ADL foment antisemitism by equating Judaism with Israel's oppression of indigenous Palestinians and ongoing genocide, which has killed thousands of children and is starving millions.

101.    Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 101.  Deny to the extent Paragraph 101 implies the First Amendment does not protect the right to protest Israel's oppression of indigenous Palestinians and ongoing genocide, which has killed thousands of children and is starving millions.

102.    Deny that it is antisemitic to display a statue protesting the University of California's financial investments that help fund Israel's oppression of indigenous Palestinians and ongoing genocide, which has killed thousands of children and is starving millions.

103.    Admit that "Figure 4" depicts the statue that is the subject of Paragraph 102.

104.    *See* Answer to Paragraph 102.

105.    *See* Answer to Paragraph 102.

106.    Depending on the context, swastikas and "Nazi references" can be antisemitic, see answer to Paragraph 83.  Intervening Defendants lack knowledge or information sufficient to form a belief as to the other the allegations of Paragraph 106 as they are conclusory and lack the detail necessary to assess their accuracy.

## C.  Deny The Palestine Solidarity Encampment Was A "Jew Exclusion Zone"

107.    Deny that the Columbia University Gaza Solidarity Encampment was a "pro-Hamas protest encampment," as the article Paragraph 107 sites says no such thing.  Deny that the anti-genocide protests on UCLA's campus were antisemitic. Rather, they were and remain about resistance to mass killings by Israel in Palestine and those who finance and profit from them.  The protests originated in the desire for Palestinian liberation, which is both enshrined in international law and rooted in the core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism. Calling these protest chants antisemitic dangerously conflates Judaism with Zionism (as manifested in the forced displaced and oppression of indigenous Palestinians) and Israel's ongoing genocide.

108.    Admit that the Palestine Solidarity Encampment was formed on a portion of a grassy area in Royce Quad on the UCLA campus.

109.    Admitted.

110.    Admitted.

111.    Paragraph 111 purports to quote from a UCLA webpage, and Intervening Defendants refer to that webpage as the best evidence of its contents. Admitted as to the remaining allegations in Paragraph 111.

112.    Paragraph 112 purports to quote from a UCLA webpage, and Defendants refer to that webpage as the best evidence of its contents. Admit that Powell Library is a popular place to study at UCLA but lack knowledge or information sufficient to form a belief as to the truth of whether it is the "most popular place to study." Admitted as to the remaining allegations in Paragraph 112.

113.    Admit that the Palestine Solidarity Encampment was visible from Royce Hall and Powell Library.

114.    Deny to the extent Paragraph 114 implies that the Palestine Solidarity Encampment prevented access to Royce Quad.

25

115.    Deny that the anti-genocide protest movement is defined by isolated and ignorant "outbursts" that follow the lead of groups like Plaintiffs and the ADL by equating Judaism with Israel's decades-long oppression of indigenous Palestinians and ongoing genocide, which has killed thousands of children and is starving millions. Deny that Zionism is a necessary, essential, or universal part of Judaism, or that expressions of anti-Zionism are equivalent to anti-Judaism, as Judaism is a 3,500-year-old religion, with universal human freedom, equality, truth, and peace among its core tenets, whereas Zionism is 128-year-old nationalist ideology, which has resulted in the forced displacement and decades-long oppression of indigenous Palestinians.    Deny that chants for Palestinian freedom (e.g., "from the River to the Sea, Palestine will be free"; "there's only solution: intifada, revolution"; intifada means uprising *against oppression*) are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.

116.    Admit that the linked video demonstrates the withering political pressure Chancellor Block and the other UCLA Defendants are facing, which is preventing them from defending against Plaintiffs' primary allegations of discrimination against Jews by anti-genocide protesters, including the predominantly Jewish Intervening Defendants.    Deny that calls for Palestinian freedom (e.g., "from the River to the Sea, Palestine will be free"; "there's only solution:  intifada, revolution"; intifada means uprising *against oppression*) are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.

117.    Deny that symbols of Palestinian freedom and independence are antisemitic.  Deny that symbols protesting the University of California's investments that directly or indirectly support Israel's ongoing genocide are antisemitic.  Antisemitism is fomented by Plaintiffs and others who equate Judaism with Israel's decades-long oppression of indigenous Palestinians and ongoing

26

genocide, which has killed thousands of children and is starving millions. Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 117, and therefore deny.

118.    Holocaust survivors have pointed out the similarities between Nazi tactics and the ideologies and tactics of Zionists in the state of Israel, including the forced displacement and decades-long oppression of an indigenous population and an ongoing genocide, which has killed thousands of children and is starving millions.

119.    *See* Answer to Paragraph 118.

120.    *See* Answer to Paragraph 118.

121.    Deny that calls for Palestinian freedom, such as "intifada," which means uprising ***against oppression***, are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.

122.    Deny that calls for Palestinian freedom, such as "intifada," which means uprising ***against oppression***, are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.

123.    Deny that calls for Palestinian freedom, such as "intifada," which means uprising ***against oppression***, are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.

124.    Deny that statements of fact about Israel's ongoing genocide and the weaponry, financing, and political cover for the genocide facilitated by the American Israel Public Affairs Committee ("AIPAC") are antisemitic, as Israel's genocide has killed thousands of children and is starving millions.    Deny that anti-genocide protesters, including the predominantly Jewish Intervening Defendants, engaged in antisemitic acts, and even if isolated acts occurred, it is erroneous to attribute them to the anti-genocide protest movement just as an isolated offensive chant heard at a

27

football stadium is not attributable to all 75,000 fans.  Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 124, and therefore deny.

125.    Deny that it is antisemitic to try to focus attention on stopping Israel's ongoing genocide, which has killed thousands of children and is starving millions, rather than the pretext for the genocide.

126.    Admit that Paragraph 127 appears to depict an image that is described in Paragraph 126. Deny that it is antisemitic to protest Israel's ongoing genocide, which has killed thousands of children and is starving millions, rather than the pretext for the genocide by denigrating the lone symbol of the State of Israel's flag.

127.    Paragraph 127 appears to depict a photo, and Proposed Intervenors refer to that phot as the best evidence of its content. Deny that it is antisemitic to protest Israel's ongoing genocide, which has killed thousands of children and is starving millions, rather than the pretext for the genocide by denigrating the lone symbol of the State of Israel's flag.

128.    Deny that the Palestine Solidarity Encampment was ever anything in the universe of a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.

129.    Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Admit that the Encampment made demands of the University of California. Deny that entry to the Palestine Solidarity Encampment required denouncing anyone's faith or disavowing Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's system of apartheid and ongoing genocide with Judaism.

28

130.    Admit that the Palestine Solidarity Encampment adopted safety measures due to escalating attacks by self-proclaimed Zionists that culminated in a more than four hour long ruthless attack on April 30, 2024. Admit that following the beating, macing, and subsequent hospitalization caused by this mob attack on April 30, 2024, these safety measures changed. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Admit that the Encampment made demands of the University of California. Deny that entry to the Palestine Solidarity Encampment required denouncing anyone's faith or disavowing Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's system of apartheid and ongoing genocide with Judaism.

131.    Admit that the Palestine Solidarity Encampment adopted safety measures due to escalating attacks by self-proclaimed Zionists that culminated in a more than four hour long ruthless attack on April 30, 2024. Admit that following the beating, macing, and subsequent hospitalization caused by this mob attack on April 30, 2024, these safety measures changed. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Admit that the Encampment made demands of the University of California. Deny that entry to the Palestine Solidarity Encampment required denouncing anyone's faith or disavowing Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's system of apartheid and ongoing genocide with Judaism.

132.    Admit that the Palestine Solidarity Encampment adopted safety measures due to escalating attacks by self-proclaimed Zionists that culminated in a more than four hour long ruthless

29

attack on April 30, 2024. Admit that following the beating, macing, and subsequent hospitalization caused by this mob attack on April 30, 2024, these safety measures changed. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Admit that the Encampment made demands of the University of California. Deny that entry to the Palestine Solidarity Encampment required denouncing anyone's faith or disavowing Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's system of apartheid and ongoing genocide with Judaism.

133.    Admit that the Palestine Solidarity Encampment adopted safety measures due to escalating attacks by self-proclaimed Zionists that culminated in a more than four hour long ruthless attack on April 30, 2024. Admit that following the beating, macing, and subsequent hospitalization caused by this mob attack on April 30, 2024, these safety measures changed. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Admit that the Encampment made demands of the University of California. Deny that entry to the Palestine Solidarity Encampment required denouncing anyone's faith or disavowing Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's system of apartheid and ongoing genocide with Judaism.

134.    Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 134.

135.    Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from

entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.

136.    Admit that Figure 11 appears to depict a portion of the Palestine Solidarity Encampment.

137.    Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 137.

138.    Paragraph 138 purports to quote a portion of one of two signs, and Intervening Defendants refer to the signs themselves as the best evidence of their contents.

139.    Admit that Defendant Hunt, like others, was able to peacefully enter the Palestine Solidarity Encampment and engage in peaceful dialogue.

140.    Admit that dozens of UCLA faculty members support the First Amendment and the exercise of First Amendment rights to protest Israel's ongoing genocide, which has killed thousands of children and is starving millions, and doing so is not remotely antisemitic, in contrast to the antisemitic act of conflating Judaism with Zionism and Israel's ongoing genocide.

141.    Admit that Figure 13 appears to depict faculty members who support the First Amendment and the exercise of First Amendment rights to protest Israel's ongoing genocide, which has killed thousands of children and is starving millions.  As confirmed by their signs (which read "FACULTY FOR JUSTICE FOR PALESTINE" and "UCLA FACULTY for a FREE PALESTINE"), the anti-genocide faculty members expressed no antisemitic sentiments.

142.    *See* Answers to Paragraphs 140 and 141.

31

143.    *See* Answers to Paragraphs 140 and 141.

144.    Admit that Figure 13 appears to depict, and Figure 14 appears to be from, faculty members who support the First Amendment and the exercise of First Amendment rights to protest Israel's ongoing genocide, which has killed thousands of children and is starving millions.  As confirmed by their signs and posts, the anti-genocide faculty members expressed no antisemitic sentiments, in contrast to the antisemitic act of conflating Judaism with Zionism and Israel's ongoing genocide.

145.    Denied.

146.    *See* Answer to Paragraph 144.

147.    Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 147, but admit that dozens of UCLA faculty members support the First Amendment and the exercise of First Amendment rights to protest Israel's ongoing genocide, which has killed thousands of children and is starving millions, and doing so is not remotely antisemitic, in contrast to the antisemitic act of conflating Judaism with Zionism and Israel's ongoing genocide.

148.    Deny that the Palestine Solidarity Encampment excluded anyone for being Jewish, as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.

149.    Paragraph 149 purports to quote from an email, and Intervening Defendants refer to that document as the best evidence of its contents, but deny that the portions quoted in Paragraph 149 evince any antisemitism or discrimination against anyone for being Jewish, as being pro-genocide is not a protected characteristics such that pro-genocide students must be sheltered from hearing or seeing the protests of those who oppose genocide.

## D. Deny That There Was Anti-Jewish Segregation Involving the Palestine Solidarity Encampment

150.    Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 150, and deny them on that basis.

151.    Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 151, and deny them on that basis.

152.    Far from being protected by UCLA campus police or other law enforcement, on April 30, 2024, UCLA campus police and other law enforcement stood by as a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members.

153.    *See* Answer to Paragraph 152.

154.    Admitted.

155.    Paragraph 155 purports to quote the Declaration of Michael Beck In Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, and Defendants refer to that document as the best evidence of its contents.

156.    *See* Answer to Paragraph 152.  Admit that for a time pro-genocide Zionists and other supremacists occupied a space close to the anti-genocide encampment.

157.    *See* Answer to Paragraph 152.

158.    Admitted.

159.    Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 159, but deny to the extent Paragraph 159 implies Plaintiff Shemuelian was steered away from the Palestine Solidarity Encampment due to being Jewish, as the Palestine Solidarity Encampment never excluded anyone for being Jewish, as confirmed by the

33

participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.

160.    Admitted.

161.    Admit that on April 30, 2024, the UCLA Defendants allowed or instructed UCLA campus police and other law enforcement to do nothing while a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members.

162.    Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that the Palestine Solidarity Encampment excluded anyone for being Jewish, as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Admit that on April 30, 2024, the UCLA Defendants allowed or instructed UCLA campus police and other law enforcement to do nothing while a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members.

163.    *See* Answer to Paragraph 162.

164.    *See* Answer to Paragraph 162.

165.    *See* Answer to Paragraph 162.

166.    Intervening Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 166 that an adult student at UCLA had their parent call the

34

school to convey or imply the erroneous perspective that that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion, or ever prevented anyone from entering any building on campus, as throughout the Palestine Solidarity Encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that the Palestine Solidarity Encampment excluded anyone for being Jewish, as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. To the extent Paragraph 166 refers to a call from the parent of a pro-genocide student, pro-genocide is not a protected characteristic, and it is antisemitic to conflate Judaism with support for Zionism and Israel's ongoing genocide.

167.    *See* Answer to Paragraph 166.

168.    *See* Answer to Paragraph 166.

169.    *See* Answer to Paragraph 166.

170.    *See* Answer to Paragraph 166. Admit that on April 30, 2024, the UCLA Defendants allowed or instructed UCLA campus police and other law enforcement to do nothing while a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members.

171.    The Robinson-Edley Report speaks for itself, but admit that on April 30, 2024, the UCLA Defendants allowed or instructed UCLA campus police and other law enforcement to do nothing while a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members.

172.    *See* Answer to Paragraph 162.  Admit that on April 30, 2024, the UCLA Defendants allowed or instructed UCLA campus police and other law enforcement to do nothing while a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members.

173.    *See* Answer to Paragraph 172.

174.    *See* Answer to Paragraph 172.

175.    *See* Answer to Paragraph 172.

176.    Admit that this is a statement from Chancellor Block in which he adopts, almost in its entirety, the unfounded allegations made by a group of self-proclaimed, pro-genocide Zionists and their supporters, which are also echoed by Plaintiffs here,  who surrounded and attacked the Palestine Solidarity Encampment. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Admit that the Encampment made demands of the University of California. Deny that entry to the Palestine Solidarity Encampment required denouncing anyone's faith or disavowing Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's system of apartheid and ongoing genocide with Judaism.

177.    Admit that this is a statement from Chancellor Block in which he adopts, almost in its entirety, the unfounded allegations made by a group of self-proclaimed, pro-genocide Zionists and their supporters, which are also echoed by Plaintiffs here,  who surrounded and attacked the Palestine Solidarity Encampment. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus

building.  Admit that the Encampment made demands of the University of California. Deny that entry to the Palestine Solidarity Encampment required denouncing anyone's faith or disavowing Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's system of apartheid and ongoing genocide with Judaism.

178.    *See* Answer to Paragraph 172.

179.    *See* Answer to Paragraph 172.

180.    *See* Answer to Paragraph 172.

181.    Admit that the language quoted in Paragraph 181 confirms that the Palestine Solidarity Encampment never prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.

182.    *See* Answer to Paragraph 181.

183.    Deny to the extent Paragraph 183 is meant to imply that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.

184.    Denied to the extent Paragraph 184 is meant to imply that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.

185.    Denied to the extent Paragraph 185 is meant to imply that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.

186.    Denied to the extent Paragraph 186 is meant imply anything other than on April 30, 2024, the UCLA Defendants allowed or instructed UCLA campus police and other law enforcement to do nothing while a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members.

187.    *See* Answer to Paragraph 186.

188.    Admit that on April 30, 2024, the UCLA Defendants allowed or instructed UCLA campus police and other law enforcement to do nothing while a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that the Palestine Solidarity Encampment excluded anyone for being Jewish, as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.

189.    Paragraph 189 purports to refer to a public statement, and Intervening Defendants refer to that statement as the best evidence of its contents.

190.    *See* Answer to Paragraph 162.

191.    Paragraph 191 purports to quote from a public statement, and Intervening Defendants refer to that statement as the best evidence of its contents.

192.    Paragraph 192 purports to quote from a public statement, and Intervening Defendants refer to that statement as the best evidence of its contents.

193.    Paragraph 193 purports to quote from a statement, and Intervening Defendants refer to that entire statement as the best evidence of its contents.  Admit that on April 30, 2024, the UCLA Defendants allowed or instructed UCLA campus police and other law enforcement to do nothing while a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members. Due to the violence of the mob of pro-genocide Zionists and other supremacists, the safety of the members of the Palestine Solidarity Encampment was not merely "put at risk," it was significantly violated the safety of these community members.

194.    *See* Answer to Paragraph 193.

195.    Paragraph 195 purports to quote from a public statement, and Intervening Defendants refer to that statement as the best evidence of its contents.

196.    Paragraph 196 purports to quote from a public statement, and Intervening Defendants refer to that statement as the best evidence of its contents.

E.    <u>**Anti-Genocide Protesters Create Palestine Solidarity Encampment**</u>

197.    Deny that the Palestine Solidarity Encampment ever segregated or harassed anyone for being Jewish, as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that it is

antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

198.    *See* Answer to Paragraph 197.

199.    *See* Answer to Paragraph 197.

200.    *See* Answer to Paragraph 197.

201.    Deny that it is antisemitic to oppose and/or protest the University of California's financial investments that help fund Israel's decades-long oppression of indigenous Palestinians and ongoing genocide, which has killed thousands of children and is starving millions, but it is antisemitic to conflate Judaism with Zionism and Israel's ongoing genocide.

202.    *See* Answer to Paragraph 201.

203.    Paragraph 203 purports to refer to a public statement, and Intervening Defendants refer to that statement as the best evidence of its contents.

204.    *See* Answer to Paragraph 201.

205.    *See* Answer to Paragraph 201.

206.    *See* Answer to Paragraph 201.

207.    *See* Answer to Paragraph 201.

208.    *See* Answer to Paragraph 201.

209.    Paragraph 203 purports to refer to a public statement, and Intervening Defendants refer to that statement as the best evidence of its contents.

210.    Paragraph 210 purports to refer to a public statement, and Intervening Defendants refer to that statement as the best evidence of its contents.

211.    Paragraph 211 purports to refer to a public statement, and Intervening Defendants refer to that statement as the best evidence of its contents.

212.     Paragraph 212 purports to refer to a public statement, and Intervening Defendants refer to that statement as the best evidence of its contents.

213.     *See* Answer to Paragraph 201.

214.     Deny that calls for Palestinian freedom (e.g., "intifada," which means uprising ***against oppression***) are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.

215.     Paragraph 215 purports to refer to a public statement, and Intervening Defendants refer to that statement as the best evidence of its contents.

216.     Paragraph 216 purports to quote from the Declaration of Rick Braziel In Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction and a public statement, and Intervening Defendants refer to those documents as the best evidence of their contents.  Deny that calls for Palestinian freedom (e.g., "intifada," which means uprising ***against oppression***) are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.

217.     Deny that calls for Palestinian freedom (e.g., "intifada," which means uprising ***against oppression***) are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.  Deny that anyone was excluded from the June 10, 2024, march, or interfered with in any way, due to being Jewish, as the march included Jewish participants, including the predominantly Jewish Intervening Defendants.

218.     Paragraph 218 purports to quote from a public statement, and Defendants refer to that statement as the best evidence of its contents.

219.     Paragraph 219 purports to quote from a public statement, and Defendants refer to that statement as the best evidence of its contents.

41

220.    Paragraph 220 purports to quote from a public statement, and Defendants refer to that statement as the best evidence of its contents.

221.    Deny that protesters did not disperse, that they vandalized property with permanent red paint, or blocked students or the public from accessing any buildings or services on campus.

222.    Paragraph 222 purports to quote from a public statement, and  Defendants refer to that statement as the best evidence of its contents.

223.    Paragraph 223 contains argument, legal principles, or conclusions of law to which no response is required. Paragraph 223 also purports to quote from a public statement, and Defendants refer to that statement as the best evidence of its contents.

224.    Defendants admit that someone yelled threatening and offensive phrases at Rabbi Dovid Gurevich on June 10, 2024. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 224, and on that basis deny them.

225.    Defendants lack knowledge or information form a belief as to the truth of the remaining allegations in Paragraph 225, and on that basis deny them.

F.    **Deny The Anti-Genocide Protests Were Antisemitic**

226.    Admitted.

227.    Paragraph 227 purports to quote from the Declaration of Rick Braziel In Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction and Defendants refer to that document as the best evidence of its contents.

228.    Defendants admit that protesters spoke at the open session of the UC Regents meeting to protest the approval of additional military equipment, including drones, FN Herstal 303 launchers, Pepper Ball VK-SBL launchers, 3,000 FTC Cava Capsaicin rounds, 100 Rounds of def-tec 40 mm munitions (model #6320), and 300 rounds of def-tec 40 munitions (model #6325) for the UCLA Police Department. Defendants deny the remainder of the allegations in Paragraph 228.

42

229.    Admit that Students for Justice in Palestine and the Palestine Solidarity Collective at UCLA gathered in Dickson Court North to recognize 365 days of genocide on October 7, 2024.

230.    Paragraph 230 purports to depict two documents, and Defendants refer to those documents as the best evidence of their contents.

231.    Admit that Students for Justice in Palestine and the Palestine Solidarity Collective at UCLA gathered in Dickson Court North to recognize 365 days of genocide on October 7, 2024. Deny that anti-genocide protesters, including the predominantly Jewish Intervening Defendants, engaged in antisemitic acts, and even if isolated comments could be heard, it is erroneous to attribute them to the anti-genocide protest movement just as an isolated offensive chant heard at a football stadium is not attributable to all 75,000 fans. Deny that chants for Palestinian freedom (e.g., "from the River to the Sea, Palestine will be free"; "there's only one solution:  intifada, revolution"; intifada means uprising *against oppression*) are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.

232.    Deny that any encampment was set up, but rather a Gaza Solidarity Sukkah, in observation of the Jewish holiday of Sukkot, was established on October 21, 2024.

G.    **Yitzchok Frankel**

233.    Admitted.

234.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 234, and on that basis deny them.

235.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 235, and on that basis deny them.

236.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 236, and on that basis deny them.

237.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 237, and on that basis deny them.

238.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 238, and on that basis deny them.

239.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 239, and on that basis deny them.

240.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 240, and on that basis deny them.

241.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 241, and on that basis deny them.

242.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 242, and on that basis deny them.

243.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 243, and on that basis deny them.

244.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 244, and on that basis deny them.

245.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 245, and on that basis deny them.

246.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 246, and on that basis deny them.

247.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 247, and on that basis deny them.

248.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 248, and on that basis deny them.

44

249.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 249, and on that basis deny them.

250.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 250, and on that basis deny them.

251.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 251, and on that basis deny them.

252.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 252, and on that basis deny them.

253.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 253, and on that basis deny them.

254.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 254, and on that basis deny them.

255.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 255, and on that basis deny them.

256.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 256, and on that basis deny them.

257.    Denied that the Palestine Solidarity Encampment was ever anything in the universe of a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic

45

to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

258.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 258, but deny that the Palestine Solidarity Encampment was ever anything in the universe of a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.

259.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 259, and on that basis deny them.

260.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 260, and on that basis deny them.

261.    Defendants admit that such chants were heard in the encampment. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 261, and on that basis deny them.

262.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 262, and on that basis deny them.

263.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 263, and on that basis deny them.

264.    Defendants admit UCLA officials installed metal bike racks around the Palestine Solidarity Encampment. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 264, and on that basis deny them.

265.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 265, and on that basis deny them.

266.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 266, and on that basis deny them.

267.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 267, and on that basis deny them. Defendants deny that the Palestine Solidarity Encampment was ever anything in the universe of a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the anti-genocide protests required anyone to disavow Israel.

268.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 268, and on that basis deny them.

269.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 269, and on that basis deny them.

270.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 270, and on that basis deny them.

47

271.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 271, and on that basis deny them.

272.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 272, and on that basis deny them. Defendants deny that the Palestine Solidarity Encampment was ever anything in the universe of a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the anti-genocide protests required anyone to disavow Israel.

273.    Defendants deny that there was a violent take-over of the law school courtyard on June 10, 2024. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 273, and on that basis deny them.

274.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 274, and on that basis deny them.

275.    Defendants admit there is a video of a Rabbi being harassed by a protester. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 275, and on that basis deny them.

276.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 276, and on that basis deny them.

277.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 277, and on that basis deny them.

278.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 278, and on that basis deny them.

279.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 279, and on that basis deny them.

280.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 280, and on that basis deny them.

281.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 281, and on that basis deny them.

282.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 282, and on that basis deny them.

283.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 283, and on that basis deny them.

284.   Defendants admit Bruin Plaza has been the site of demonstrations. Deny that there was ever a "Jew Exclusion Zone."

285.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 285, and on that basis deny them.

H.    **Joshua Ghayoum**

286.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 286, and on that basis deny them.

287.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 287, and on that basis deny them.

288.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 288, and on that basis deny them.

49

289.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 289, and on that basis deny them.

290.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 290, and on that basis deny them.

291.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 291, and on that basis deny them.

292.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 292, and on that basis deny them.

293.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 293, and on that basis deny them.

294.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 294, and on that basis deny them.

295.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 295, and on that basis deny them.

296.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 296, and on that basis deny them.

297.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 297, and on that basis deny them.

298.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 298, and on that basis deny them.

299.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 299, and on that basis deny them.

300.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 300, and on that basis deny them.

50

301.    Defendants admit that campus protests against genocide in Palestine often started near the Janss Steps and continued through Royce Quad.

302.    Admit that such chants were heard at protests, deny that chants for Palestinian freedom (e.g., "from the River to the Sea, Palestine will be free"; "there's only one solution: intifada, revolution"; intifada means uprising *against oppression*) are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.

303.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 303, and on that basis deny them.

304.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 304, and on that basis deny them.

305.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 305, and on that basis deny them.

306.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 306, and on that basis deny them.

307.    Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

308.    Deny that anti-genocide protesters, including the predominantly Jewish Intervening Defendants, engaged in antisemitic acts, and even if isolated comments could be heard, it is erroneous to attribute them to the anti-genocide protest movement just as an isolated offensive chant heard at a football stadium is not attributable to all 75,000 fans. Deny that chants for Palestinian freedom (e.g., "from the River to the Sea, Palestine will be free"; "there's only one solution: intifada, revolution"; intifada means uprising *against oppression*) are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.  The protests were and are about resistance to resistance to mass killings by Israel in Palestine and those who finance and profit from them. They originated in the desire for Palestinian liberation, which is rooted in core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism. Calling these protests antisemitic or anti-Jewish dangerously conflates Judaism with Zionism (as manifested in the forced displaced and decades-long oppression of indigenous Palestinians) and Israel's ongoing genocide.  By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and oppression of an indigenous population, groups like Plaintiffs and the ADL create antisemitism. Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

309.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 309, and on that basis deny them.

310.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 310, and on that basis deny them.

311.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 311, and on that basis deny them.

312.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 312, and on that basis deny them.

313.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 313, and on that basis deny them.

314.     Deny that the Palestine Solidarity Encampment was lawless or that anyone risked violence by entering the encampment. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 314, and on that basis deny them.

315.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 315, and on that basis deny them. Defendants admit that following the four plus hour mob attack on the Palestine Solidarity Encampment on April 30, safety measures changed, and no one was allowed into the encampment without a wristband or someone vouching for them in order to protect the encampment members from true threats.

316.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 316, and on that basis deny them. Defendants admit that following the four plus hour mob attack on the Palestine Solidarity Encampment on April 30, safety measures changed, and no one was allowed into the encampment without a wristband or someone vouching for them in order to protect the encampment members from true threats.

317.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 317, and on that basis deny them.

318.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 318, and on that basis deny them.

319.     Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel or their religion. Defendants lack knowledge or information

1    sufficient to form a belief as to the truth of the allegations in Paragraph 319, and on that basis deny

2    them.

3        320.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like

4    a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members

5    throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the

6    Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity

7    Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to

8    their religion or ever prevented anyone from entering any building on campus, as throughout the

9    encampment's existence there were always entry and exit points available to everyone for every

10    campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity

11    Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or

12    Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing

13    genocide with Judaism.

14

15        321.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like

16    a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members

17    throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the

18    Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity

19    Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to

20    their religion or ever prevented anyone from entering any building on campus, as throughout the

21    encampment's existence there were always entry and exit points available to everyone for every

22    campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity

23    Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or

24    Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing

25    genocide with Judaism.

26

27

28

322. Defendants admit that some faculty held office hours across from the encampment. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 322, and on that basis deny them.

323. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 323, and on that basis deny them.

324. Intervening Defendants, who are predominantly Jewish, deny that Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish. Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism. By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and oppression of an indigenous population, groups like Plaintiffs and the ADL create antisemitism. Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

325. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 325, and on that basis deny them.

326. Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity

Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

327. Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

328. Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or

Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

329.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 329, and on that basis deny them.

330.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 330, and on that basis deny them.

331.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 331, and on that basis deny them.

I.    **Eden Shemuelian**

332.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 332, and on that basis deny them.

333.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 333, and on that basis deny them.

334.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 334, and on that basis deny them.

335.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 335, and on that basis deny them.

336.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 336, and on that basis deny them.

337.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 337, and on that basis deny them.

338.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 338, and on that basis deny them.

339.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 339, and on that basis deny them.

340.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 340, and on that basis deny them.

341.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 341, and on that basis deny them.

342.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 342, and on that basis deny them.

343.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 343, and on that basis deny them.

344.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 344, and on that basis deny them.

345.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 345, and on that basis deny them.

346.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 346, and on that basis deny them.

347.    Intervening Defendants, who are predominantly Jewish, deny that Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish. Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism. By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism.    Anti-genocide protesters, including

Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

348.    Intervening Defendants, who are predominantly Jewish, deny that Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism. By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism.  Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

349.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 349, and on that basis deny them.

350.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 350, and on that basis deny them.

351.    Deny that anti-genocide protesters, including the predominantly Jewish Intervening Defendants, engaged in antisemitic acts, and even if isolated comments could be heard, it is erroneous to attribute them to the anti-genocide protest movement just as an isolated offensive chant heard at a football stadium is not attributable to all 75,000 fans. Deny that chants for Palestinian freedom (e.g., "from the River to the Sea, Palestine will be free"; "there's only one solution:  intifada, revolution"; intifada means uprising *against oppression*) are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.  The protests were and are about resistance to resistance to mass killings by Israel in Palestine and those who finance and profit from them. They originated in the desire for Palestinian

liberation, which is rooted in core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism. Calling these protests antisemitic or anti-Jewish dangerously conflates Judaism with Zionism (as manifested in the forced displaced and oppression of indigenous Palestinians) and Israel's ongoing genocide.  By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism. Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

352.    Paragraph 352 purports to quote from an email, and Defendants refer to that email as the best evidence of its contents.

353.    Paragraph 353 purports to quote from an email, and Defendants refer to that email as the best evidence of its contents.

354.    Paragraph 354 purports to quote from an email, and Defendants refer to that email as the best evidence of its contents.

355.    Paragraph 355 purports to quote from an email, and Defendants refer to that email as the best evidence of its contents.

356.    Paragraph 356 purports to quote from an email, and Defendants refer to that email as the best evidence of its contents.

357.    Paragraph 357 purports to quote from an email, and Defendants refer to that email as the best evidence of its contents.

358.    Paragraph 358 purports to quote from an email, and Defendants refer to that email as the best evidence of its contents.

359.    Paragraph 359 contains argument, legal principles, or conclusions of law to which no response is required. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 359, and on that basis deny them.

360.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 360, and on that basis deny them. Paragraph 360 purports to describe emails, and Defendants refer to those emails as the best evidence of their contents.

361.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 361, and on that basis deny them.

362.    Paragraph 362 purports to quote from an email, and Defendants refer to that email as the best evidence of its contents.

363.    Paragraph 363 purports to quote from an email, and Defendants refer to that email as the best evidence of its contents.

364.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 364, and on that basis deny them.

365.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or

Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

366. Admit as to the location of the encampment. Deny the remaining allegations in Paragraph 366 because Defendants lack knowledge or information sufficient to form a belief as to their truth.

367. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 367, and on that basis deny them.

368. Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

369. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 369, and on that basis deny them.

370. Deny that anti-genocide protesters, including the predominantly Jewish Intervening Defendants, engaged in antisemitic acts, and even if isolated comments could be heard, it is erroneous to attribute them to the anti-genocide protest movement just as an isolated offensive chant heard at a football stadium is not attributable to all 75,000 fans. Deny that chants for Palestinian freedom (e.g.,

"from the River to the Sea, Palestine will be free"; "there's only on solution: intifada, revolution"; intifada means uprising against oppression) are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights. The protests were and are about resistance to resistance to mass killings by Israel in Palestine and those who finance and profit from them. They originated in the desire for Palestinian liberation, which is rooted in core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism. Calling these protests antisemitic dangerously conflates Judaism with Zionism (as manifested in the forced displaced and decades-long oppression of indigenous Palestinians) and Israel's ongoing genocide. By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism. Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

371.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 371, and on that basis deny them.

372.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 372, and on that basis deny them.

373.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 373, and on that basis deny them.

374.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 374, and on that basis deny them.

375.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 375, and on that basis deny them.

376. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 376, and on that basis deny them.

377. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 377, and on that basis deny them.

378. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 378, and on that basis deny them.

379. Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

380. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 380, and on that basis deny them.

381. Admit.

382. Admit.

383. Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the

64

Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

384.     Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

385.     Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to

their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

386.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

387.    Deny that anti-genocide protesters, including the predominantly Jewish Intervening Defendants, engaged in antisemitic acts, and even if isolated comments could be heard, it is erroneous to attribute them to the anti-genocide protest movement just as an isolated offensive chant heard at a football stadium is not attributable to all 75,000 fans. Deny that chants for Palestinian freedom (e.g., "from the River to the Sea, Palestine will be free"; "there's only one solution: intifada, revolution"; intifada means uprising *against oppression*) are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these

fundamental rights.  The protests were and are about resistance to resistance to mass killings by Israel in Palestine and those who finance and profit from them. They originated in the desire for Palestinian liberation, which is rooted in core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism. Calling these protests antisemitic dangerously conflates Judaism with Zionism (as manifested in the forced displaced and decades-long oppression of indigenous Palestinians) and Israel's ongoing genocide.  By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism. Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

388.    Deny that anti-genocide protesters, including the predominantly Jewish Intervening Defendants, engaged in antisemitic acts, and even if isolated comments could be heard, it is erroneous to attribute them to the anti-genocide protest movement just as an isolated offensive chant heard at a football stadium is not attributable to all 75,000 fans. Deny that chants for Palestinian freedom (e.g., "from the River to the Sea, Palestine will be free"; "there's only one solution: intifada, revolution"; intifada means uprising ***against oppression***) are antisemitic, as Palestinians and all other people deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.  The protests were and are about resistance to resistance to mass killings by Israel in Palestine and those who finance and profit from them. They originated in the desire for Palestinian liberation, which is rooted in core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism. Calling these protests antisemitic dangerously conflates Judaism with Zionism (as manifested in the forced displaced and decades-long oppression of indigenous Palestinians) and Israel's ongoing genocide.  By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-

67

long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism. Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

389.    Deny that Jewish students and faculty were unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism, which is itself patently antisemitic.  Deny the existence of a "culture" on the UCLA campus that "calls for the annihilation of the Jewish people, Nazi symbolism, and religious slurs," let alone such a "culture" that UCLA officials aided and abetted.

390.    Deny that Jewish students and faculty were unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism, which is itself patently antisemitic.  Deny the existence of a "culture" on the UCLA campus that "calls for the annihilation of the Jewish people, Nazi symbolism, and religious slurs," let alone such a "culture" that UCLA officials aided and abetted.

391.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 391, and on that basis deny them.

392.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every

68

campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

393.    Deny that Jewish students and faculty were unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish. Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism, which is itself patently antisemitic. Deny the existence of a "culture" on the UCLA campus that "calls for the annihilation of the Jewish people, Nazi symbolism, and religious slurs," let alone such a "culture" that UCLA officials aided and abetted.

394.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 394, and on that basis deny them.

395.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 395, and on that basis deny them.

396.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 396, and on that basis deny them.

397.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism.

398.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 398, and on that basis deny them.

399.    Deny that Jewish students and faculty were unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism, which is itself patently antisemitic.  Deny the existence of a "culture" on the UCLA campus that "calls for the annihilation of the Jewish people, Nazi symbolism, and religious slurs," let alone such a "culture" that UCLA officials aided and abetted.

400.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 400, and on that basis deny them.

401.    Defendants deny there was a violent occupation of Shapiro courtyard or that Jewish students and faculty were unsafe as a result of the anti-genocide protests, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 401, and on that basis deny them.

402.    Intervening Defendants, who are predominantly Jewish, deny that Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism. By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism.   Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

403.    Intervening Defendants, who are predominantly Jewish, deny that Jewish students and faculty were or are unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism. By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and oppression of an indigenous population, groups like Plaintiffs and the ADL create antisemitism.   Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity.

**J.   Dr. Kamran Shamsa**

404.    Admit.

405.    Admit.

406.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 406, and on that basis deny them.

407.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 407, and on that basis deny them.

408.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 408, and on that basis deny them.

409.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 409, and on that basis deny them.

410.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 410, and on that basis deny them.

411.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 411, and on that basis deny them.

412.    Deny that Jewish students and faculty were unsafe, unprotected from harassment, or deterred in obtaining full access to campus facilities due to being Jewish.  Deny that the Jewish community has been neglected on the UCLA campus, except through the conflation of Zionism and Israel's ongoing genocide with Judaism, which is itself patently antisemitic.  Deny the existence of a "culture" on the UCLA campus that "calls for the annihilation of the Jewish people, Nazi symbolism, and religious slurs," let alone such a "culture" that UCLA officials aided and abetted.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 412, and on that basis deny them.

413.    Deny that Jewish students and faculty were unsafe as a result of the Palestine Solidarity Encampment, unprotected from harassment, or deterred in obtaining full access to campus facilities

72

due to being Jewish. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 413, and on that basis deny them.

414.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 414, and on that basis deny them.

415.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 415, and on that basis deny them.

416.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 416, and on that basis deny them.

417.    Deny that anti-genocide protesters, including the predominantly Jewish Intervening Defendants, engaged in antisemitic acts, and even if isolated comments could be heard, it is erroneous to attribute them to the anti-genocide protest movement just as an isolated offensive chant heard at a football stadium is not attributable to all 75,000 fans. Deny that chants for Palestinian freedom (e.g., "from the River to the Sea, Palestine will be free"; "there's only one solution: "intifada, revolution"; intifada means uprising *against oppression*) are antisemitic, as Palestinians and all other people

73

deserve freedom and equality irrespective of the identity of those who seek to deprive others of these fundamental rights.  The protests were and are about resistance to resistance to mass killings by Israel in Palestine and those who finance and profit from them. They originated in the desire for Palestinian liberation, which is rooted in core tenets of many cultures and religions—universal human freedom, equality, truth, and peace—including Judaism. Calling these protests antisemitic or anti-Jewish dangerously conflates Judaism with Zionism (as manifested in the forced displaced and decades-long oppression of indigenous Palestinians) and Israel's ongoing genocide.  By attempting to convince others that being Jewish means supporting Israel's ongoing genocide and Zionism's displacement and decades-long oppression of indigenous Palestinians, groups like Plaintiffs and the ADL create antisemitism.  Anti-genocide protesters, including Intervenor Defendants, oppose genocide and forced displacement and oppression of indigenous populations—regardless of the perpetrators' identity. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 417, and on that basis deny them.

418.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 418, and on that basis deny them.

419.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 419, and on that basis deny them.

420.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 420, and on that basis deny them.

421.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 421, and on that basis deny them.

422.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 422, and on that basis deny them.

423.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 423, and on that basis deny them.

424.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 424, and on that basis deny them.

425.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 425, and on that basis deny them.

426.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 426, and on that basis deny them.

427.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 427, and on that basis deny them.

428.    Intervening Defendants admit that matters on the UCLA campus turned particularly ugly on April 30, 2024, when a mob of pro-genocide Zionists and other supremacists violently attacked members of the Palestine Solidarity Encampment, inflicting serious injuries on student, faculty and community members of the encampment, including Jewish members. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 428, and on that basis deny them.

429.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 429, and on that basis deny them.

430.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 430, and on that basis deny them.

431.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 431, and on that basis deny them.

432.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 432, and on that basis deny them.

## K. **Relief Requested**

433.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 433, and on that basis deny them.

434.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 434, and on that basis deny them.

435.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity

Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 435, and on that basis deny them.

436.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 436, and on that basis deny them.

437.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 437, and on that basis deny them.

438.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the Palestine Solidarity Encampment ever segregated Jewish students. Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the

77

encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Defendants admit this Court issued a preliminary injunction in the case. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 438, and on that basis deny them.

439.    Defendants admit Plaintiffs seek a permanent injunction. The remainder of Paragraph 439 contains argument, legal principles, or conclusions of law to which no response is required.

440.    Paragraph 440 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 440.

### Count I
### 42 U.S.C. § 1983
### Equal Protection Clause

441.    Defendants incorporate by reference their responses to the allegations in the preceding paragraphs of the First Amended Complaint as if set forth herein.

442.    Paragraph 442 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 442.

443.    Paragraph 443 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 443.

444.    Paragraph 444 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 444.

445.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants. Deny that the

Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Paragraph 445 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 445.

446.    Paragraph 446 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 446.

447.    Paragraph 447 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 447.

448.    Paragraph 448 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 448.

449.    Paragraph 449 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 449.

450.    Paragraph 450 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 450.

## Count II
### 42 U.S.C. § 1983
### Freedom of Speech

451.    Defendants incorporate by reference their responses to the allegations in the preceding paragraphs of the First Amended Complaint as if set forth herein.

79

452.    Paragraph 452 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 452.

453.    Paragraph 453 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 453.

454.    Paragraph 454 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 454.

455.    Paragraph 455 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 455.

456.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Paragraph 456 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 456.

457.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity

80

Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building. Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel. Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Paragraph 457 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 457.

458.    Paragraph 458 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 458.

459.    Paragraph 459 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 459.

460.    Paragraph 460 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 460.

461.    Paragraph 461 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 461.

462.    Paragraph 462 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 462.

463.    Paragraph 463 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 463.

### Count III
### 42 U.S.C. § 1983
### Free Exercise Clause – Status Discrimination

464.    Defendants incorporate by reference their responses to the allegations in the preceding paragraphs of the First Amended Complaint as if set forth herein.

465.    Paragraph 465 contains argument, legal principles, or conclusions of law to which no response is required.

466.    Paragraph 466 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 466.

467.    Paragraph 467 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 467.

468.    Paragraph 468 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 468.

469.    Paragraph 469 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 469.

470.    Paragraph 470 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 470.

471.    Paragraph 471 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 471.

**<u>Count IV</u>**
**42 U.S.C. § 1983**
**Free Exercise Clause –**
**Not Generally Applicable: Unequal Treatment of Comparable Activity**

472.    Defendants incorporate by reference their responses to the allegations in the preceding paragraphs of the First Amended Complaint as if set forth herein.

473.    Paragraph 473 contains argument, legal principles, or conclusions of law to which no response is required.

474.    Paragraph 474 contains argument, legal principles, or conclusions of law to which no response is required.

475.    Paragraph 475 contains argument, legal principles, or conclusions of law to which no response is required.

PROPOSED INTERVENORS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT Case No. 2:24-cv-04702-MCS

476. Paragraph 476 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 476.

477. Paragraph 477 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 477.

478. Paragraph 478 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 478.

479. Paragraph 479 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 479.

480. Paragraph 480 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 480.

481. Paragraph 481 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 481.

**<u>Count V</u>**
**42 U.S.C. § 1983**
**Free Exercise Clause –**
**Not Generally Applicable: Discretionary Authority**

482. Defendants incorporate by reference their responses to the allegations in the preceding paragraphs of the First Amended Complaint as if set forth herein.

483. Paragraph 483 contains argument, legal principles, or conclusions of law to which no response is required.

484. Paragraph 484 contains argument, legal principles, or conclusions of law to which no response is required.

485. Paragraph 485 contains argument, legal principles, or conclusions of law to which no response is required.

486. Paragraph 486 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 486.

83

487.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Paragraph 487 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 487.

488.    Paragraph 488 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 488.

489.    Paragraph 489 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 489.

490.    Paragraph 490 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 490.

491.    Paragraph 491 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 491.

492.    Paragraph 492 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 492.

493.    Paragraph 493 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 493.

1

2

**Count VI**
**42 U.S.C. § 1983**
**Free Exercise Clause – Religious Targeting**

3      494.    Defendants incorporate by reference their responses to the allegations in the preceding

4  paragraphs of the First Amended Complaint as if set forth herein.

5      495.    Paragraph 495 contains argument, legal principles, or conclusions of law to which no

6  response is required.

7      496.    Paragraph 496 contains argument, legal principles, or conclusions of law to which no

8  response is required. Defendants deny the remaining allegations in paragraph 496.

9

10     497.    Paragraph 497 contains argument, legal principles, or conclusions of law to which no

11 response is required. Defendants deny the remaining allegations in paragraph 497.

12     498.    Paragraph 498 contains argument, legal principles, or conclusions of law to which no

13 response is required. Defendants deny the remaining allegations in paragraph 498.

14     499.    Paragraph 499 contains argument, legal principles, or conclusions of law to which no

15 response is required. Defendants deny the remaining allegations in paragraph 499.

16

17

**Count VII**
**42 U.S.C. § 2000d *et seq***
**Title VI of the Civil Rights Act of 1964**

18     500.    Defendants incorporate by reference their responses to the allegations in the preceding

19 paragraphs of the First Amended Complaint as if set forth herein.

20

21     501.    Paragraph 501 contains argument, legal principles, or conclusions of law to which no

22 response is required.

23     502.    Paragraph 502 contains argument, legal principles, or conclusions of law to which no

24 response is required.

25     503.    Paragraph 503 contains argument, legal principles, or conclusions of law to which no

26 response is required. Defendants deny the remaining allegations in paragraph 503.

27

28

504.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Paragraph 504 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 504.

505.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Paragraph 505 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 505.

506.    Paragraph 506 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 506.

507.    Paragraph 507 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 507.

### Count VIII
### 42 U.S.C. § 1988
### Conspiracy to Interfere with Civil Rights

508.    Defendants incorporate by reference their responses to the allegations in the preceding paragraphs of the First Amended Complaint as if set forth herein.

509.    Paragraph 509 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 509.

510.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Paragraph 510 also contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 510.

511.    Paragraph 511 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 511.

87

512.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Paragraph 512 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 512.

513.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Paragraph 513 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 513.

PROPOSED INTERVENORS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT Case No. 2:24-cv-04702-MCS

514.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Paragraph 514 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 514.

515.    Deny that the Palestine Solidarity Encampment was ever anything even remotely like a "Jew Exclusion Zone," as confirmed by the participation of Jewish students and faculty members throughout its existence, including the predominantly Jewish Intervening Defendants.  Deny that the Palestine Solidarity Encampment ever segregated Jewish students.  Deny that the Palestine Solidarity Encampment ever prevented anyone, Jewish or otherwise, from accessing any part of campus due to their religion or ever prevented anyone from entering any building on campus, as throughout the encampment's existence there were always entry and exit points available to everyone for every campus building.  Deny that any, let alone all, genuine members of the Palestine Solidarity Encampment required anyone to disavow Israel.  Deny that it is antisemitic to oppose Zionism or Israel's ongoing genocide, but instead, it is antisemitic to conflate Zionism and Israel's ongoing genocide with Judaism. Paragraph 515 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 515.

516.    Paragraph 516 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 516.

517.    Paragraph 517 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 517.

### Count IX
### 42 U.S.C. § 1986
### Failure to Prevent Conspiracy

518.    Defendants incorporate by reference their responses to the allegations in the preceding paragraphs of the First Amended Complaint as if set forth herein.

519.    Paragraph 519 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 519.

520.    Paragraph 520 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 520.

521.    Paragraph 521 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 521.

522.    Paragraph 522 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 522.

523.    Paragraph 523 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 523.

524.    Paragraph 524 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 524.

525.    Paragraph 525 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 525.

### Count X
### California Constitution Art. I, § 7 (a)
### Equal Protection Clause

90

526.    Defendants incorporate by reference their responses to the allegations in the preceding paragraphs of the First Amended Complaint as if set forth herein.

527.    Paragraph 527 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 527.

528.    Paragraph 528 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 528.

529.    Paragraph 529 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 529.

530.    Paragraph 530 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 530.

531.    Paragraph 531 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 531.

532.    Paragraph 532 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 532.

533.    Paragraph 533 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 533.

### Count XI
### California Constitution Art. I, § 4
### Free Exercise Clause

534.    Defendants incorporate by reference their responses to the allegations in the preceding paragraphs of the First Amended Complaint as if set forth herein.

535.    Paragraph 535 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 535.

536.    Paragraph 536 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 536.

537.     Paragraph 537 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 537.

538.     Paragraph 538 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 538.

539.     Paragraph 539 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 539.

540.     Paragraph 540 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 540.

541.     Paragraph 541 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 541.

## Count XII
### Cal. Educ. Code § 220
### Prohibition of Discrimination

542.     Defendants incorporate by reference their responses to the allegations in the preceding paragraphs of the First Amended Complaint as if set forth herein.

543.     Paragraph 543 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 543.

544.     Paragraph 544 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 544.

545.     Paragraph 545 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 545.

546.     Paragraph 546 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 546.

547.     Paragraph 547 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 547.

548.    Paragraph 548 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 548.

549.    Paragraph 549 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 549.

550.    Paragraph 550 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 550.

551.    Paragraph 551 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 551.

### Count XIII
### Cal. Civil Code § 51.7
### Ralph Civil Rights Act of 1976

552.    Defendants incorporate by reference their responses to the allegations in the preceding paragraphs of the First Amended Complaint as if set forth herein.

553.    Paragraph 553 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 553.

554.    Paragraph 554 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 554.

555.    Paragraph 555 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 555.

556.    Paragraph 556 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 556.

557.    Paragraph 557 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 557.

558.    Paragraph 558 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 558.

559.     Paragraph 559 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 559.

### Count XIV
### Cal. Civil Code § 52.1
### Tom Bane Civil Rights Act

560.     Defendants incorporate by reference their responses to the allegations in the preceding paragraphs of the First Amended Complaint as if set forth herein.

561.     Paragraph 561 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 561.

562.     Paragraph 562 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 562.

563.     Paragraph 563 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 563.

564.     Paragraph 564 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 564.

565.     Paragraph 565 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 565.

566.     Paragraph 566 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 566.

567.     Paragraph 567 contains argument, legal principles, or conclusions of law to which no response is required. Defendants deny the remaining allegations in paragraph 567.

### PRAYER FOR RELIEF

The Prayer for Relief contains argument, legal principles, or conclusions of law to which no response is required.

### JURY DEMAND

94

The Jury Demand contains argument, legal principles, or conclusions of law to which no response is required.

## **AFFIRMATIVE DEFENSES**

### **First Affirmative Defense**

Plaintiffs fail to state a claim upon which relief can be granted.

### **Second Affirmative Defense**

Plaintiffs' claims fail because they cannot demonstrate that the Palestine Solidarity or other anti-genocide protests excluded anyone due to their faith.

### **Third Affirmative Defense**

Plaintiffs' claims fail because Zionism is not a protected characteristic.

### **Fourth Affirmative Defense**

Plaintiffs' claims fail because support for genocide is not a protected characteristic.

### **Fifth Affirmative Defense**

Defendants reserve the right to amend their affirmative defenses.

## **DEMAND FOR JURY TRIAL**

In accordance with Fed. R. Civ. P. 38(b), Defendants demand a trial by jury on all issues so triable.

Dated:  June 2, 2025                          Respectfully submitted,


                                                          By: /s/ Thomas B. Harvey
                                                          THOMAS B. HARVEY
                                                          Attorney for Proposed Intervenors

## CERTIFICATE OF SERVICE

I am a resident of the State of California and over 18 years of age, and am not a party to this action. My business address is 365 E. Avenida de Los Arboles, #226, Thousand Oaks, CA 91360, which is located in the county where any non-personal service described below took place.

I hereby certify that on June 2, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF System.

Participants in the case who are registered CM/ECF Users will be served by the CM/ECF System.

On June 2, 2025, I also served a copy of the following document(s) on:
Eric C. Rassbach
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 tel.
202-955-0090 fax
erassbach@becketlaw.org
*Attorneys for Plaintiffs*

Jennifer Sokoler
Matthew Cowan
O'Melveny & Myers LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
212-326-2162
jsokoler@omm.com
*Attorneys for Defendants*

Service was accomplished **by e-mail**. By transmitting via e-mail or electronic transmission the document(s) listed above to the person at the e-mail address set forth above. Executed on June 2, 2025, at Thousand Oaks, California.

/s/ *Thomas B. Harvey*
Thomas. B. Harvey

LAW OFFICES OF THOMAS B. HARVEY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PROPOSED INTERVENORS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT Case No. 2:24-cv-04702-MCS