THOMAS B. HARVEY (SBN 287198)
Law Offices of Thomas B. Harvey
365 East Avenida de Los Arboles, #226
Thousand Oaks, CA 91360
Tel: (805) 768-4440
Email: tbhlegal@proton.me

Attorney for Proposed Intervenors

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YITZCHOK FRANKEL; JOSHUA GHAYOUM; EDEN SHEMUELIAN, and DR. KAMRAN SHAMSA<br><br>  Plaintiffs,<br><br>  vs.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA; MICHAEL V. DRAKE, President of the University of California; GENE D. BLOCK, Chancellor, University of California, Los Angeles; DARNELL HUNT, Executive Vice-President and Provost; MICHAEL BECK, Administrative Vice Chancellor; MONROE GORDEN, JR., Vice Chancellor; and RICK BRAZIEL, Assistant Vice Chancellor, each in both his official and personal capacities,<br><br>  Defendants. | Case No. 2:24-cv-04702-MCS-<br><br>**(1) REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR LEAVE TO INTERVENE**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Judge: Hon. Mark C. Scarsi** |

## I. INTRODUCTION

Plaintiffs' opposition confirms the imperative of Movants' motion: "No one admits fault for the systematic exclusion of Jews on UCLA's campus. Movants deny it happened; UCLA concedes it . . . ." (ECF 186 at 3). Plaintiffs explicitly accuse Movants alone of being "discriminators," not the UCLA Defendants. *Id*. Tellingly, Plaintiffs refuse to acknowledge that Movants are predominantly Jewish, as doing so would reveal the absurdity of Plaintiffs' heretofore unchallenged allegation that Jews created a "Jew Exclusion Zone." (ECF 89 at 2.) If, as Movants will prove, they (members of the Palestine Solidarity Encampment) ***did not exclude or otherwise discriminate against anyone for being Jewish***, 13 of Plaintiffs' 14 claims will fail as matter or law (all but Count II) and their entire lawsuit will be exposed as pretextual, a Trojan horse to foreclose protests against Israel's ongoing genocide in Palestine.

Plaintiffs' central premise is the false claim that ***Movants discriminated against them for being Jewish***. As the UCLA Defendants have demonstrated, they have no legal (or political) incentive to defend against this false claim and therefore have conceded it to focus their defense on denying responsibility for Movants' actions. Nor do the UCLA Defendants have any incentive to protect against Plaintiffs' overt efforts to redefine Judaism as Zionism and erase Jews who dissent. Far from seeking to obstruct this case, Movants seek to ensure this case produces an accurate record by testing Plaintiffs' false allegations and providing a complete record to prevent Plaintiffs from infringing on Movants' First Amendment rights by redefining their religion, forcing them to associate with supremacists, or punishing their protected speech.

Before moving on, a few corrections to the syllabus of errors in Plaintiffs' Introduction and Argument. Movants do not claim that the Court misunderstood the facts of the case. (ECF 186 at 1). Rather, Movants show that their initial absence forced the Court to rely on Plaintiffs' undisputed allegations: "Defendants do not place the key facts…in material dispute." (ECF 89 at n.1). Nor did Movants admit that checkpoints were designed to exclude based on views about Israel. (ECF 186 at 2). Plaintiffs conveniently removed phrases like "At most," "Plaintiffs might," and "grant for the sake of argument" that precede what they disingenuously characterize as an admission. (Id. at 2, 6, 9).

2

REPLY IN SUPPORT OF
MOTION FOR LEAVE TO INTERVENE

Movants never say they excluded anyone other than for their safety following a brutal, more than four-hour-long attack by people calling themselves Zionists, which hospitalized dozens. (ECF 178 at 13-15). Instead, Movants argue intervention is required to develop these essential facts, a case that Plaintiffs inadvertently strengthen in their Opposition. (*Id*. at 6).

This motion is not ideological theater. Movants' interests are concrete and under threat. Plaintiffs may prefer to litigate without opposition from those they accuse of discrimination, but the Court should not bar Movants from defending. Movants have a direct, protectable interest in contesting the distortions embedded in this case, and this Court should grant their motion to intervene.

## II.  ARGUMENT

### A. Movants meet the requirement for intervention as of right.

Movants provided the standard for intervention as of right under Rule 24(a) in their opening brief (ECF 178 21-22). As demonstrated below, Plaintiffs' opposition does not undermine Movants' showing under that standard. The Proposed Intervenors easily meet the four criteria for intervention as of right.

**1. Movants have significant protectable interests.**

**a. Movants' Fundamental First Amendment Rights are At Stake**

Here, three fundamental First Amendment interests of Movants, not the UCLA Defendants, are at stake.  First, Movants have a protectable First Amendment interest to practice their faith without the government redefining Judaism to mean supporting Zionism, Israel, and/or the Israeli government.  The Establishment Clause properly forbids federal courts from saying what the tenets of a religion are. *See, e.g., Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 737 (2020) ("The First Amendment protects the right of religious institutions 'to decide for themselves, free from state interference, matters of . . . faith and doctrine.'") (citation omitted).

Second, Movants have a protectable First Amendment interest to "not associate" with supremacists, irrespective of efforts to dress up supremacist ideologies in religious clothes.  The "First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with [citizens'] freedom to believe and associate, or to not believe and ***not***

*associate*." Rutan v. Republican Party of Illinois, 497 U.S. 62, 76 (1990) (emphasis added). Just as abolitionists could not be legally compelled to associate with enslavers and Klansmen simply because both those groups invoked Christianity to justify their abhorrent views and practices,[1] Movants have an interest in avoiding their compelled association with Zionists. Such compulsion would be equally coercive if it were explicit or implicit in an injunction that declares it to be anti-Jewish to exclude Zionists (regardless of their professed religion) from a meeting of anti-Zionists.

Movants' inability to rebut the charges of antisemitism or explain that anti-Zionism is not antisemitic produces reputational harm. Their protectable interest lies in affirming that Jewish identity is not monolithic, that many Jews oppose Zionism and Israeli state policy, and that conflating dissent with discrimination actively fuels antisemitism. This is not abstract. When UCLA enforces an injunction equating anti-Zionism with antisemitism, it denies Jewish students and faculty the ability to defend their identities and speak for themselves.

In *United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002), the court permitted a police union to intervene in a consent decree based on the anticipated reputational harm. The court emphasized that "the Police League claims a protectable interest because the complaint seeks injunctive relief against its member officers and raises factual allegations that its member officers committed unconstitutional acts in the line of duty. These allegations are sufficient to demonstrate that the Police League had a protectable interest in the merits phase of the litigation." Id. at 399.

Likewise, in *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983), the court granted intervention to an advocacy organization whose ideological interest in federal conservation policy was sufficient to justify participation. The court explained that "[a]s a matter of right, a public interest group… was entitled to intervene in an action challenging the legality of a measure which it had supported." *Id.* at 527–28.

---

[1] See, *e.g., Knights of Ku Klux Klan v. Bennett*, 29 F. Supp. 2d 576, 577 (E.D. Mo. 1998), aff'd sub nom. *Knights of Ku Klux Klan v. Curators of Univ. of Missouri*, 203 F.3d 1085 (8th Cir. 2000); https://time.com/5171819/christianity-slavery-book-excerpt/.

The preliminary injunction has already been used repeatedly to conflate anti-Zionism with antisemitism and thus paint movants, along with all other members of the Palestine Solidarity Encampment, as antisemites. Plaintiffs in *StandWithUs Center for Legal Justice v. CodePink Women for Peace* cite Frankel for the argument that anti-Zionism is antisemitic. No. 2:24-cv-06253-SVW-PVC (C.D. Cal. July 24, 2024)(FAC at 73). The plaintiffs in *Gartenberg v. Cooper Union* cite the injunction for the argument that "hate focused on Plaintiffs' shared Zionist ideology targets their identities as Jews; it is indistinguishable from antisemitism." 765 F. Supp. 3d 245, 268 (S.D.N.Y. 2025). The plaintiffs in *Weinberg* cite *Frankel* to show UCLA's encampment was antisemitic. *Weinberg v. Nat'l Students for Just. in Palestine*, No. 2:25-cv-03714, C.D. Cal. (filed May 20, 2025). The LA Times ran an article quoting the injunction saying that Zionism is key to Jewish identity.[2] If Plaintiffs' requested relief is accepted by the Court, it will codify a narrative that caused significant reputational harm to Intervenors.

And third, Movants have a protectable First Amendment interest in demonstrating and protesting free from governmental interference, including threatened adverse actions that would have a "chilling effect" on a "person of ordinary firmness." *See, e.g.,* <u>Collins v. Jordan</u>, 110 F.3d 1363, 1371 (9th Cir. 1996) ("It has been clearly established since time immemorial that city streets and sidewalks are public fora."); <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1270 (9th Cir. 2009). That such protests may result in minor fleeting inconveniences is no justification for preemptively prohibiting them. "Restrictions on First Amendment activities in public fora are subject to a particularly high degree of scrutiny." *Collins,* 110 F.3d at 1371 (citation omitted). Plaintiffs would be happy if all anti-genocide protest activities were banned altogether and the UCLA Defendants plainly are not part of any protest movement, which leaves Movants as the only potential check on the limits to any injunctive relief the Court considers here.

---

[2] Jaweed Kaleem, *Judge Orders UCLA to Ensure Equal Campus Access to Jewish Students After Pro-Palestinian Protests*, L.A. Times (Aug. 13, 2024), https://www.latimes.com/california/story/2024-08-13/judge-orders-ucla-to-give-jewish-students-equal-access-after-pro-palestinian-protests.

**b. Movants have a protectable interest in the privacy of their disciplinary records.**

Students have a privacy interest in their disciplinary and academic records, which are protected under the Family Educational Rights and Privacy Act (FERPA).[3] Plaintiffs argue FERPA cannot support intervention because it lacks a private right of action. But this is irrelevant. "An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002); *see also United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (permitting intervention by parties seeking to protect constitutional interests that not raised by the Department of Justice, even without a separate statutory claim).

Moreover, without input as to the redactions, this is no panacea. Redacted records may still reveal sensitive information, especially in high-profile campus incidents where details are publicly known. Intervenors seek to ensure their rights are proactively protected, not retroactively remedied.

**2. Disposition of this case practically impairs Movants' ability to protect their interests.**

Movants meet the standard for practical impairment outlined in their opening brief (ECF 178 at 23). If granted, Plaintiffs' relief would mischaracterize Movants' political and religious expression as bigotry, undermine their standing in the university community, and chill their participation in public discourse. Because the injunction would entrench a definition of antisemitism that delegitimizes their advocacy, it practically impairs Movants' ability to protect their reputational, ideological, and expressive interests—the type of harm Rule 24(a)(2) is designed to prevent.

Nor do Movants have adequate alternative remedies. Filing a new case after the harm occurs is no remedy at all where UCLA is already enforcing the injunction against Movants and where this Court may issue findings or permanent relief affecting Movants without their participation. Any new lawsuit would be assigned to this Court.

---

[3] The Family Educational Rights and Privacy Act of 1974 ("FERPA"), as amended, Pub. L. 93–380, 88 Stat. 1974, 20 U.S.C. § 1232g, and the implementing regulations thereunder, 34 C.F.R. Part 99

### 3. Movants' motion is timely.

Timeliness is assessed based on the totality of circumstances, as outlined in Movants' opening brief. (ECF 178 at 24–25.) Courts have long held that intervention timeliness is not judged by delay alone. See, e.g., *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) ("the mere lapse of time, without more, is not necessarily a bar to intervention" and "Timeliness is a flexible concept; its determination is left to the district court's discretion."). The timeliness clock starts when Movants become aware their interests will not be protected, not when the case was filed, and regardless of the stage of the litigation. Movants filed to intervene within two months of determining UCLA would not protect their interests.

Movants could not have foreseen UCLA's litigation posture, including its refusal to contest key facts and its decision to drop the appeal of the injunction (ECF 178 at 11, 25). The FERPA concerns academic freedom threats, and the Department of Justice Statement of Interest only became concrete in March 2025 (ECF 133 at 2)(ECF 139). Movants acted within two months of recognizing these threats.

Movants timing must also be understood in light of the intensifying political landscape surrounding discourse on Israel/Palestine in academia and the massive threats to universities by the federal government for engaging in alleged antisemitic practices. The injunction's framing of anti-Zionist organizing as a "Jew Exclusion Zone" collapses antisemitism and anti-Zionism and invites the Department of Justice to file a statement of interest in the case. With this additional pressure on UCLA, along with threats of litigation against UCLA made by a DOJ task force, Movants were aware their interests would not be protected, and they needed to intervene.

Plaintiffs face minimal, manageable prejudice. No dispositive ruling has been issued, summary judgment can be supplemented, and Movants only seek to protect constitutional and privacy rights implicated by the injunction.

Movants now seek to intervene to defend themselves in a shifting legal and political context that threatens their speech, free exercise, and academic freedom. Their delay reflects good-faith

reliance on UCLA to protect those interests—an assumption recent events have rendered untenable. Under Ninth Circuit precedent, their intervention is timely.

**4. UC Defendants do not adequately represent Movants.**

Movants meet the standard showing UC Defendants do not represent their interests as outlined in their opening brief (ECF 178 at 25).  The "most important factor" in assessing the adequacy of representation is "how the interest compares with the interests of existing parties." *Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F.3d 893, 898 (9th Cir. 2011).  UCLA's interest is to minimize exposure and protect institutional legitimacy. Movants' goal to contest the factual record, protect their reputations and records, and affirm the legitimacy of anti-Zionist, Palestinian, and allied dissent.

**a. UCLA fails to defend the case**

UCLA's litigation posture makes clear it does not—and cannot—adequately represent Proposed Intervenors. While Plaintiffs frame this as a Free Exercise case, Intervenors view it as a politically motivated attack on pro-Palestinian expression, academic freedom, and Jewish anti-Zionist identity. UCLA has declined to appeal the preliminary injunction (ECF 95); stipulated to disclosure of nonparty records (ECF 133); adopted policies based on the injunction that suppress Movants' speech; and failed to contest key factual allegations ((ECF 89 at 2, n.1). UCLA's willingness to compromise these privacy rights highlights the divergence of interests.

**b. Movants' Interests Are Different From UCLA's**

Plaintiffs claim intervention is improper because UCLA and Movants "share the same ultimate objective" in opposing liability. (ECF 186 at 20). Far from the "identical" objectives in *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997), Movants have demonstrated a clear divergence in their objectives versus the UCLA Defendants' objectives. Plaintiffs' argument flies in the face of their acknowledgment that UCLA Defendants have already ***conceded*** the most integral point of their case—that Plaintiffs were discriminated against for being Jewish—while Movants' "ultimate objective" is to prove no such discrimination occurred and that the Court should not redefine Judaism or interfere with other First Amendment activities.  Plaintiffs'

"ultimate objective" argument boils down to an inane point that would make defensive intervention impossible because all defendants and intervenors share the "ultimate objective" of defeating the plaintiffs.

### B. Movants meet the requirements for permissive intervention.

Plaintiffs incorrectly argue that Movants lack an independent basis for jurisdiction. (ECF 186 at 20). The Ninth Circuit holds that no separate jurisdictional basis is needed when intervenors raise no new claims in a federal question case. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473–74 (9th Cir. 1992); *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989); *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011).

Movants assert no affirmative claims and seek no relief beyond the existing case. They intervene only to protect their rights and contest legal and factual misrepresentations affecting them. These defenses fall squarely within the Court's subject matter jurisdiction under Plaintiffs' constitutional and civil rights claims.

### C. Plaintiffs' Opposition Ignores Their Own Proposed Order

Just a few examples from this proposed order put the lie to Plaintiffs' assertion that "it merely regulates the illegal conduct of restricting access to publicly available spaces and programs" (ECF 186 at 11), as it includes the following proposed *findings* for which there is no basis in fact:

> The Court finds that Defendants have made available certain of its programs, activities, and campus areas when Jewish students and faculty, including Plaintiffs, were excluded because of their genuinely held religious beliefs.

> The Court further finds that Defendants have facilitated and cooperated in the exclusion of Jewish students and faculty from those programs, activities, and campus areas, including by instructing the police and other security not to intervene and in installing metal bike racks around the perimeter of the encampment. In so doing, Defendants' actions had the effect of excluding individuals from public benefits based on their religious status.

> The Court further finds that Defendants treated comparable secular activities, namely supporting countries other than Israel, more favorably than Plaintiffs' religious exercise of supporting Israel's right to exist in its homeland.

(ECF 128-17 at 1-2). Moreover, the first five paragraphs of Plaintiffs' proposed injunction are explicitly limited to protecting "Jewish students," as if anyone suffered any discrimination or other harm for being Jewish (they did not), and explicitly conflates "religious beliefs" with "the Jewish state of Israel," as if a nation state formed over 3,400 years after Judaism was created could somehow retroactively become part of this millennia-old religion. (Id.) Such allegations are far too serious to leave untested by the adversarial process, and Plaintiffs' panic at the prospect of having to prove them should be a red flag for the Court's reliance on them.

By the Proposed Intervenors' Attorney,

DATED: June 23, 2025

BY: /s/ Thomas B. Harvey
THOMAS B. HARVEY (SBN 287198)
Law Offices of Thomas B. Harvey
Attorney for Proposed Intervenors

**CERTIFICATE OF SERVICE**

I am a resident of the State of California and over 18 years of age, and am not a party to this action. My business address is 365 E. Avenida de Los Arboles, #226, Thousand Oaks, CA 91360, which is located in the county where any non-personal service described below took place.

I hereby certify that on June 23, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF System.

Participants in the case who are registered CM/ECF Users will be served by the CM/ECF System.

On June 23, 2025, I also served a copy of the following document(s) on:
Eric C. Rassbach
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 tel.
202-955-0090 fax
erassbach@becketlaw.org
*Attorneys for Plaintiffs*

Jennifer Sokoler
Matthew Cowan
O'Melveny & Myers LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
212-326-2162
jsokoler@omm.com
*Attorneys for Defendants*

Service was accomplished **by e-mail**. By transmitting via e-mail or electronic transmission the document(s) listed above to the person at the e-mail address set forth above. Executed on June 23, 2025, at Thousand Oaks, California.

/s/ *Thomas B. Harvey*
Thomas. B. Harvey

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel Proposed Intervenors certifies that this Memorandum of Points and Authorities contains 2912 words, which complies with the word limit set by the Honorable Judge Mark Scarsi's Standing Civil Order for Civil Cases dated October, 2022.

Dated: June 23, 2025                LAW OFFICES OF THOMAS B. HARVEY

                    By:__/s/___Thomas B. Harvey_____
                            Thomas B. Harvey

                    Attorney for Proposed Intervenors